**quinn emanuel** trial lawyers | washington, dc

300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

January 13, 2023

**VIA ECF**

Honorable Gabriel W. Gorenstein
United States District Court
Southern District of New York
500 Pearl Street, Room 6B
New York, NY 10007

Re:   *Northwest Biotherapeutics Inc. v. Canaccord, et al.,* No. 1:22-cv-10185-GHW-GWG

Dear Magistrate Judge Gorenstein:

We represent Defendant Citadel Securities LLC and write on behalf of all Defendants pursuant to the Court's December 20, 2022 Order and Rule 2(A) of Your Honor's Individual Practices to request leave to move to dismiss the Complaint ("Compl."). Plaintiff's counsel has confirmed that Plaintiff will oppose the anticipated motion.

In its Complaint, Plaintiff Northwest Biotherapeutics Inc. ("NWBO") seeks to scapegoat Defendants for its faltering share price rather than address the corporate governance failures, financial improprieties, and disputed clinical results that have been the subjects of lawsuits and media reports. NWBO alleges, implausibly, that between December 5, 2017 and August 1, 2022 (the "Relevant Period"), each of the eight Defendants independently "spoofed" NWBO stock by placing fraudulent and manipulative "baiting orders" to sell NWBO stock, falsely signaling that investors wanted to dump NWBO stock to create downward pressure on the price of NWBO shares. *See, e.g.*, Compl. ¶¶ 1, 7–9. The Complaint asserts claims for violations of the Securities Exchange Act of 1934[1] and common law fraud. Defendants respectfully request leave to move to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Market manipulation under Section 10(b) of the Exchange Act "requires a plaintiff to allege (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). "Section 9(a)(2) requires plaintiffs to identify transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security with the intent to deceive or defraud investors." *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 424 (S.D.N.Y. 2010). Market manipulation must be pleaded with particularity under Rule 9(b) and the PSLRA. *ATSI*, 493 F.3d at 101–102. All of Plaintiff's allegations fail for multiple reasons, including those set forth below.

***Plaintiff's allegations do not create a strong inference of scienter.*** The Complaint fails to "plead with particularity facts giving rise to a strong inference that the defendant[s] intended to

---

[1] Plaintiff's claims are partially barred by the two-year statute of limitations. 28 U.S.C. § 1658(b).

deceive investors[.]" *ATSI*, 493 F.3d at 102.  Under the PSLRA, "the court must consider plausible nonculpable explanations for the defendant's conduct" at the motion-to-dismiss stage, and a plaintiff carries its pleading burden only where the inference of intent is "at least as compelling as any plausible opposing inference[.]" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310 (2007).  Plaintiff's allegations fail under this standard.

The Complaint acknowledges that Defendants are market makers or broker-dealers (Compl. ¶¶ 15–31), but does not allege that Defendants were trading on their own behalf, rather than **on behalf of clients**.[2]  That is fatal to the Complaint.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 2008 WL 850473, at *3 (S.D.N.Y. Mar. 27, 2008) (imposing Rule 11 sanctions where plaintiff asserted claims against market maker for merely processing allegedly improper client orders), *aff'd in relevant part*, 579 F.3d 143.  When a market maker displays bids and offers or executes trades for its client, it acts on behalf of its client and in accordance with regulatory obligations, meaning such trading is not driven by the market maker's intent, and cannot possibly provide a motive for manipulation by the market maker.  This nonculpable explanation is more plausible than any fraudulent inference here.  *ATSI*, 2008 WL 850473, at *3 ("hard to see how a market maker, by executing the transactions, thereby would have become a culpable participant in that scheme").[3]

Also absent from the Complaint is any coherent motive for the odd "scheme" alleged.  The Complaint alleges that each Defendant independently attempted to reduce the price of NWBO shares.  Compl. ¶ 258.  But, even assuming that all such trading activity was on behalf of each Defendant rather than their clients, the Complaint does not allege that Defendants subsequently profited from the alleged scheme by selling the shares after the price had rebounded from the alleged spoofing.  Instead, the Complaint claims the alleged spoofing had a "persistent and long-lasting" negative effect on NWBO's stock price, making it impossible for the Defendants to profit.  *Id.* ¶ 262.  This makes no economic sense, further undermining any inference of scienter.

Further, although the Complaint alleges 15 duplicative grounds for scienter, not a single Defendant is mentioned specifically.  Compl. ¶¶ 241–58.  Such "[c]onclusory statements of associations or generalized allegations of scienter against groups of defendants will not state a claim for securities fraud."  *Cohen*, 722 F. Supp. 2d at 428 (internal quotations omitted).  This deficiency is striking given that the Complaint does not allege that Defendants conspired or even communicated with each other at any time during the Relevant Period.

Plaintiff may assert that the Complaint passes muster in light of *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 585 F. Supp. 3d 405 (S.D.N.Y. 2022), which denied a motion to dismiss spoofing allegations against certain market makers.  However, as Judge Schofield recently noted in denying plaintiff's motion for discovery into customer trading activity,

---

[2]  The Complaint fails to make any substantive allegations as to Susquehanna International Group LLP ("SIG"), mentioning it only in the paragraphs identifying the parties and even there alleging only that SIG is a large proprietary trading firm that traded in NWBO stock and purchased defendant G1 Execution Services LLC from E*Trade in 2014.  Compl. ¶¶ 27, 29.

[3]  Similarly, Instinet LLC and Lime Trading Corp. are agency broker–dealers (not market makers) that do not engage in proprietary trading for profit.  *Cf.* Compl. ¶ 21 (Instinet), ¶ 23 (Lime Trading).

plaintiff had not "articulated any plausible theory under which any currently named Defendant is liable for their customers' trading activity," nor alleged "that those [customer] trades give rise to liability." Order at 4, *Harrington*, No. 21 Civ. 761 (LGS) (Dkt. No. 120) (S.D.N.Y. Aug. 15, 2022). Additionally, the complaint in Harrington at least alleged a conceivable economic basis for the alleged spoofing: that defendants supposedly used their spoofing to drive down the share price to cover for short sales. *Id.* at 412. Here, by contrast, there is no allegation that the Defendants engaged in short selling or held shares long enough to sell at a meaningful profit. Indeed, Plaintiff does not allege that Defendants *ever* sold—on their own behalf or otherwise.[4]

***Plaintiff does not plausibly allege that it suffered damages attributable to Defendants' alleged conduct.*** On certain dates, Plaintiff alleges spoofing but not that it sold any shares, let alone at prices depressed by alleged spoofing. Perhaps most notably, Plaintiff alleges a "particularly egregious example" of alleged spoofing on May 10, 2022 (Compl. ¶ 64) but alleges it last sold shares in March 2022—two months earlier. *Id.* ¶ 259. Even when Plaintiff does allege it sold stock, it does not allege, as it must, that those sales occurred ***after*** the alleged spoofing on that date. *See In re Merrill, BofA, and Morgan Stanley Spoofing Litig.*, 2021 WL 827190, at *12 (S.D.N.Y. Mar. 4, 2021); *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022). Even if Plaintiff had pleaded it traded ***after*** the alleged spoofing, more detail is required because the Court "cannot reasonably infer that spoofing's effects last throughout the day." *Id.* Plaintiff's theory that its sales might have been affected by alleged spoofing days or weeks earlier is implausible because spoofing schemes "depend for their profitability on a reversion of prices to the market-level, meaning that the period of artificiality may be brief." *In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 923 (S.D.N.Y. 2018). Plaintiff's loss-causation theory makes no sense either. Although it alleges that spoofing "had the cumulative effect of driving NWBO's share price down during the Relevant Period" (Compl. ¶¶ 262–65), in reality, the share price for NWBO *nearly tripled* during the Relevant Period.

Plaintiff's Section 9(a)(2) and common law fraud claims fail for the same reasons as its Section 10(b) claim, among others. *See Cohen*, 722 F. Supp. 2d at 428, 436.

\*   \*   \*

For these reasons, and others that Defendants intend to set forth in their anticipated motion(s) to dismiss, the Complaint fails to state a claim. Defendants respectfully propose that

---

[4] The Complaint also incorrectly presumes that the over-the-counter ("OTC") markets where NWBO shares trade operate like a national exchange such as NASDAQ (which was the basis of the trading in *Harrington*). Specifically, the Complaint relies on the presumption that certain sell orders were canceled by Defendants, and alleges that these orders were manipulative because they were not intended to be executed. Compl. ¶¶ 7–9. However, unlike on NASDAQ, when a quote no longer appears on OTC Link, that does not mean the underlying order has been cancelled. OTC Link only permits a market maker to display ***one*** quote per security at a time. Thus, when a quote no longer appears, it could simply be the result of a new client order for a better price that must be displayed instead. The previous order is not canceled and would be re-displayed if it again becomes the market maker's best bid or offer. This fundamental misunderstanding of this platform further reinforces that there is no plausible basis to infer manipulative intent.

they file their motion(s) to dismiss within 45 days of the premotion conference; Plaintiff file its opposition, if any, 45 days thereafter; and Defendants file reply briefing, if any, within 30 days of Plaintiff's opposition. Defendants further respectfully propose to submit a principal joint motion to dismiss, with each Defendant being permitted to submit a supplemental submission if it determines it is necessary to set forth unique arguments applicable only to that Defendant.

Respectfully Submitted,

*/s/ Willam Burck*
William Burck


cc:  All counsel of record via ECF