# COHEN MILSTEIN

Laura Posner
(212) 220-2925
lposner@cohenmilstein.com

January 20, 2023

*Via ECF*

| | |
|---|---|
| Honorable Gregory H. Woods | Honorable Gabriel W. Gorenstein |
| United States District Court | United States District Court |
| Southern District of New York | Southern District of New York |
| 500 Pearl Street, Room 2260 | 500 Pearl Street, Room 6B |
| New York, NY 10007 | New York, NY 10007 |

Re:   *Northwest Biotherapeutics Inc. v. Canaccord, et al., No. 1:22-cv-10185*

Dear Judge Woods and Magistrate Judge Gorenstein:

We write on behalf of Plaintiff Northwest Biotherapeutics Inc. ("NWBO") in response to Defendants' pre-motion conference letters (ECF 69 and 70).

NWBO is a clinical stage biotechnology company developing promising treatments for solid tumor cancers. ECF 1 at ¶¶2, 3-4. As reported in a recent peer-reviewed article in the preeminent *JAMA Oncology Journal,* NWBO's key cancer vaccine has "an excellent safety profile" and provides a "clinically meaningful and statistically significant extension of overall survival." *Id.* at ¶5. However, the price of NWBO's shares has not accurately reflected the trial results and potential of NWBO due to Defendants' repeated manipulative spoofing of its shares, which has significantly harmed NWBO and hindered its ability to bring its life-extending product to market by artificially depressing the price at which the Company could sell its shares to the public. *Id.* at ¶¶1, 6, 9, 10, 44.

**The Complaint Adequately Alleges Scienter.**   Plaintiff adequately alleges facts that give rise to a strong inference of either knowledge or recklessness. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

Defendants do not dispute that they engaged in the spoofing transactions alleged in the Complaint.[1] Instead, Defendants argue that the Complaint fails to adequately allege scienter. They

---

[1] The technical differences between OTC markets and national exchanges raised by Defendants in a footnote are irrelevant. First, Global OTC, where many of the alleged manipulative spoofing transactions occurred, *does* provide a limit order book demonstrating that

COHENMILSTEIN

Page 2

are wrong.  *First*, Defendants argue that the Complaint fails to allege "that Defendants were trading on their own behalf, rather than on behalf of clients."  But whether or to what extent Defendants' trades were in their own accounts or client accounts[2] is irrelevant to their liability under the securities laws.  Indeed, Judge Schoenfeld recently rejected this very same argument in a nearly identical context in *Harrington Global Opportunity Fund, Limited v. CIBC World Markets Corp.*, 585 F. Supp. 3d 405 (S.D.N.Y. 2022) ("*Harrington*"), finding that such an argument was "unfounded" since the complaint alleged that Defendants "designed and implemented algorithmic trading programs that executed their spoofing schemes."  *Id.* at 416; *see also id.* (defendants' argument "does not undercut the Complaint's numerous allegations that Defendants designed and operated the algorithms that spoofed [the] stock.").[3]  This holding is consistent with established Second Circuit precedent that a broker can be primarily liable for manipulation-based securities law violations when executing trades *on behalf of clients*.  *S.E.C. v. U.S. Environmental, Inc.*, 155 F.3d 107, 112 (2d Cir. 1998) ("Even if [the broker] were motivated by a desire to obtain compensation rather than a desire to change [the stock's] market price, as [the client] was, [the broker] is liable under 10(b) if, with scienter, he effected the manipulative trades.").[4]  It is also consistent with rules from both the SEC and FINRA that make clear that engaging in manipulative conduct on behalf of a client does not shield market makers from liability.  *See* NASD IM-3350(c)(2); https://www.finra.org/rules-guidance/notices/06-53.

Defendants invent their requirement of proprietary trading from a misreading of *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, No. 02-cv-8726-LAK, 2008 WL 850473 (S.D.N.Y. Mar. 27, 2008) ("*ATSI*"), where, in addition to suing traders that *engaged in* the alleged market manipulation, the plaintiff sued Knight, alleging that Knight "must have" been *aware of* the manipulative intent of the trading defendants "*only*" because of its position as "the principal market maker" in plaintiff's stock.  The *ATSI* court held that a market manipulation claim cannot be based "only" on the allegation that a defendant is a market maker in that stock.  *Id.* at *3.  The Complaint makes clear that Defendants were not "only" market makers, and not merely aware of the

---

Defendants cancelled Baiting Orders.  Second, Plaintiff alleges that each of the cancelled OTC Link Baiting Orders left Defendants with a different position than prior to the cancellation.  Accordingly, the quote change does not reflect a "new quote," but instead a cancellation.

[2] While Defendants Instinet and Lime assert that they only trade on behalf of clients, the remaining Defendants are silent, indicating that at least certain of their alleged spoofing transactions were made on behalf of their own proprietary trading desks.

[3] The two-paragraph *Harrington* discovery order relied on by Defendants is irrelevant to the standard on a motion to dismiss.  Furthermore, the order only held that plaintiff's request for *all* of the trading records concerning trades in the plaintiff's securities was too broad and "speculative" because the plaintiff's complaint did not allege facts sufficient to demonstrate that the trade information being sought "give[s] rise to liability."  Here, by contrast, the Complaint details how each of the transactions at issue were manipulative and in violation of the law.

[4] *U.S. Environmental* is notably absent from Defendants' pre-motion letter, despite the fact that Plaintiff directed Defendant Citadel to the case in a letter dated December 9, 2022.

manipulation, but rather were active participants in it. There is no suggestion in *ATSI* that being a market maker confers blanket immunity from such well-pled manipulation claims.

*Second*, Defendants argue that Plaintiff fails to adequately allege motive. Although not required, *Tellabs* at 325, the Complaint does adequately allege motive: that Defendants sought to purchase NWBO shares at artificially depressed prices, and by spoofing they drove down the price and thus saved themselves (and, in some cases, clients) hundreds of millions of dollars. ¶258. The *Harrington* court found such motive allegations adequate, holding that "when a Spoofing Defendant sold that stock, their profits would be increased, or losses decreased, by the difference of the price they paid versus the price they would have paid had they not engaged in spoofing." 585 F.Supp.3d at 418. And, counter to the assertion by Defendant Lime that it has no financial incentive to engage in spoofing because it was executing orders on behalf of clients, ECF 70, Lime had a financial motivation to provide clients with better prices than a fair market would afford.[5]

*Finally,* contrary to Defendants' assertion, the Complaint does not engage in group pleading; it is replete with specific allegations about each Defendant's manipulative conduct.[6] Regardless, group pleading is permitted where each defendant acted similarly, *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F. 3d 160, 172, n.7 (2d Cir. 2015).

**The Complaint Plausibly Alleges Damages Attributable to Defendants' Conduct.** The Complaint alleges 97 specific transactions in which Plaintiff sold shares proximate in time to spoofing episodes and that the spoofing scheme had the cumulative long-term and persistent effect of depressing the price of NWBO. *See e.g.,* ¶¶259, 262-263.[7] This is sufficient for pleading purposes. *Cf. Gamma Traders – I LLC v. Merrill Lynch Commodities, Inc*. 41 F. 4th 71, 80 (2d Cir. 2022) (Plaintiff did not plead … that its trades "occurred so close in time to Defendants' spoofing as to permit us to infer as a matter of common sense that the market prices were artificial when [plaintiff] traded.").[8] Moreover, "[a] plaintiff's burden in alleging loss causation is not a heavy one," and whether and when the "effects of the alleged market dissipated is a question of fact" that cannot be answered at the pleading stage. *Harrington*, at 419-420.

---

[5] This is confirmed by Lime's advertisement on its website that it "aim[s] to fill [clients'] orders quickly and at the best price possible," and its "unbiased algorithm can help [clients] find the best price." *See* https://lime.co/why-lime/.

[6] Defendants' letter states that the Complaint does not contain any substantive allegations against Defendant Susquehanna, but the Complaint sues Defendant Susquehanna as the parent of Defendant G1 (¶¶27, 29), and alleges multiple detailed spoofing transactions by G1 after its acquisition by Susquehanna.

[7] Defendants' observation that the price of NWBO increased during the Relevant Period is irrelevant to whether Defendants' conduct artificially depressed that price.

[8] Indeed, numerous examples (indicated by an asterisk) in the Complaint demonstrate that Defendants engaged in spoofing within the final hour of trading followed by a sale by Plaintiff at a price equal to the artificially depressed closing price that day. ¶259.

COHENMILSTEIN

Page 4

Accordingly, Defendants' forthcoming motion to dismiss is without merit and should be denied.[9]

        Respectfully submitted,

        By: /s/ Laura H. Posner
        Laura H. Posner
        Michael B. Eisenkraft
        Jessica (Ji Eun) Kim
        **COHEN MILSTEIN SELLERS & TOLL PLLC**
        88 Pine Street, 14th Floor
        New York, NY 10005
        Tel: (212) 838-7797
        Fax: (212) 838-7745

        *Counsel for Plaintiff*

cc: Counsel of record (via ECF)

---

[9] Contrary to Defendants' unsupported claim (ECF 69 fn. 1), Plaintiffs' claims are timely as they are brought within five years of the relevant conduct and within two years of when the conduct could have been discovered.