# Exhibit F

# COHENMILSTEIN

Laura Posner<br>
(212) 220-2925<br>
lposner@cohenmilstein.com

February 27, 2023

**VIA EMAIL**
williamburck@quinnemanuel.com

William A. Burck
Quinn Emanuel
1300 I Street NW, Suite 900
Washington, DC  20005

   Re: *Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC, et al.,*
      No. 1:22-cv-10185 (S.D.N.Y.)

Dear Mr. Burck:

  We write in response to your letter dated February 26, 2023.[1]

  Your letter fails to identify any material inaccuracies in Plaintiff's complaint.  Instead, it offers only incorrect, immaterial, and/or irrelevant assertions that are properly the subject of discovery and expert opinion to be addressed at later stages of this litigation.  Notably, this is the second letter in which you have baselessly asserted grounds for sanctions exist, with the first letter falsely describing the extant case law, and this letter falsely describing the facts.  *See* December 6, 2022 letter.  This disturbing pattern is unprofessional and an improper attempt to threaten Plaintiff, and we sincerely hope it ceases before we are forced to bring it to the Court's attention.[2]

---

  [1] We note that your letter dated February 23, 2023 purported to be on behalf of all named Defendants in the above-captioned action, but this letter was only sent on behalf of one Defendant, Citadel.

  [2] It also bears noting that your vague references to a "forthcoming" motion for sanctions fail to meet any of the requirements to initiate or support Rule 11 proceedings.  *See* *Castro v. Mitchell*, 727 F. Supp. 2d 302, 307 (S.D.N.Y. 2010) ("[A] letter detailing the nature of the conduct which purportedly violates Rule 11 and threatening to file a motion for sanctions cannot constitute notice under Rule 11.").  Should Plaintiff be required to respond to any "forthcoming" motion for sanctions, it would seek and be entitled to attorneys' fees and costs from Defendants.  *See* *Baker*

COHENMILSTEIN

February 27, 2023
Page 2

      Although premature, below Plaintiff briefly responds to the five baseless assertions in your letter:

      First, your assertion that the "best bids, best offers, and volumes alleged by NWBO are simply incorrect," is based on a misunderstanding of the OTC Link data that you reference and, regardless, is immaterial to the claims in the case. The "inside quote" from OTC Link is not a reliable measure of the best bid or offer ("BBO"), which is why the Complaint calculates BBOs by utilizing the actual quotes and orders from both OTC Link and NYSE Global OTC. Moreover, even if the BBO in the Complaint was inaccurate – which it is not – it is used in the Complaint only to provide background regarding the state of the NWBO market prior to Defendants' misconduct, and any minor differences in BBOs would not undermine or materially affect in any way the Complaint's allegations regarding Defendants' trading activity that support its legal claims.

      Second, your challenge to Plaintiff's allegations regarding "parking" does not dispute the factual basis of those allegations, but merely disputes Plaintiff's characterization of certain trading activity as "parking," which is not an appropriate challenge at the pleading stage of litigation and will be the subject of expert opinion. Regardless, the trading records in Ex. 3 to your letter are entirely consistent with the allegations in the Complaint and demonstrate that Citadel did, in fact, "park" its order. At 2:20:12.492pm, Vertical Trading Group revised down its offer to $1.04 and thereafter Citadel parked its sell order at a price of $1.05 behind Vertical Trading Group's sell order of $1.04.

      Third, your letter asserts a *one cent differential* between your calculation of the range of prices for Baiting Orders for the two Citadel examples and the prices alleged in the Complaint. For the October 12, 2020 Spoofing Episode, Ex. 3 states that Citadel displayed a range of offers from *$1.05 to $1.02*, as opposed to *$1.05 to $1.03*, as alleged in the Complaint. For the May 10, 2022 Spoofing Episode, Ex. 4 states that Citadel displayed a range of offers from *$0.96 to $0.8701*, as opposed to *$0.95 to $0.8801*, as alleged in the Complaint. Not only are Plaintiff's allegations entirely consistent with the ranges you cite, but the one-cent purported differential is immaterial to the legal sufficiency of the allegations in the Complaint.

      Fourth, your letter asserts that Citadel sold "thousands" of shares within two time periods of two minutes each based on OTC Link data. This is a baseless assertion, as OTC Link is an interdealer quotation service that ***does not report executed trades***. Plaintiff conducted a thorough investigation of Citadel's trading activity based on the actual executed trade data publicly available

---

*v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 361 (S.D.N.Y. 2003) (awarding attorneys' fees and expenses incurred in opposing frivolous motion for sanctions).

COHENMILSTEIN

February 27, 2023
Page 3

to it. Moreover, even if true, this would not undercut the claims in the Complaint, which are based on detailed analysis of **tens of millions** of Defendants' trades over a period of more than four years. Indeed, if anything, such sale transactions would demonstrate that Citadel had an even stronger motive to spoof NWBO shares, as they would indicate that Citadel realized profits from spoofing down to buy shares at an artificially depressed price.

<u>Fifth</u>, your letter incorrectly calculates the relevant price change in NWBO stock in the referenced paragraph of the Complaint, as it again improperly relies on OTC Link "inside quote" data.[3] As explained above, any disagreements over the calculation of the BBO, as well as the precise calculation of price impact and damages will be the subject of expert opinion.

As you have put forward no facts which undermine the claims in the case, Plaintiff has no need for an extension of the schedule.

Regards,

*Laura Posner*

Laura H. Posner

---

[3] While your letter does not provide information that indicates a material deficiency in the allegations of the Complaint in this regard, we note that trading data shows that immediately prior to Citadel's Executing Purchase at $1.02 at 2:20:25pm on October 12, 2020, thousands of shares of NWBO traded at $1.03 and $1.04 per share. Specifically, at 2:20:24pm, 10,000 shares traded at a price of $1.03 per share; at 2:20:22pm, 10,000 shares traded at a price of $1.03 per share; and at 2:20:09pm, 100 shares traded at a price of $1.04 per share.