# EXHIBIT 4

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 87281 / October 10, 2019

ACCOUNTING AND AUDITING ENFORCEMENT
Release No. 4099 / October 10, 2019

ADMINISTRATIVE PROCEEDING
File No. 3-19582

| | |
|---|---|
| In the Matter of<br><br>NORTHWEST BIOTHERAPEUTICS, INC.<br><br>Respondent. | ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS, PURSUANT TO SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 21C of the Securities Exchange Act of 1934 ("Exchange Act") against Northwest Biotherapeutics, Inc. ("Respondent").

II.

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Cease-And-Desist Proceedings, Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-And-Desist Order ("Order"), as set forth below.

## III.

On the basis of this Order and Respondent's Offer, the Commission finds[1] that

### Summary

These proceedings involve violations of the federal securities laws in connection with the Respondent's Internal Control over Financial Reporting ("ICFR"). Respondent failed to create and implement effective ICFR for twelve consecutive annual reporting periods from 2007 through 2018.

### Respondent

1. Northwest Biotherapeutics, Inc. is a clinical stage biotechnology company, founded in 1996, headquartered in Bethesda, Maryland, and focused on developing cancer vaccines designed to treat a broad range of solid tumor cancers. NWBO has a class of securities registered pursuant to Section 12(g) of the Exchange Act and its common stock trades on the OTC market under the symbol NWBO. At all relevant times, Respondent filed periodic reports with the Commission, including Forms 10-K and 10-Q, pursuant to Section 13 of the Exchange Act and related rules thereunder.

### Background

2. Respondent publicly disclosed material weaknesses in each of its Forms 10-K over a period of twelve years, from 2007 through 2018. Respondent's disclosed material weaknesses often repeated year after year, relating to numerous areas of importance, including the review, supervision and monitoring of accounting operations throughout the organization.

3. In each of the most recent five fiscal years from 2014 through 2018, Respondent publicly disclosed that its policies and procedures with respect to the review, supervision and monitoring of accounting operations throughout the organization were either not designed and in place or not operating effectively. Similarly, Respondent disclosed in nine of the last twelve fiscal years that it lacked controls in place, including those surrounding related party transactions, to ensure that all material transactions and developments impacting the financial statements are reflected and properly recorded.

4. In its most recent Form 10-K filed for FY2018, Respondent continued to disclose material weaknesses, including two newly-identified weaknesses, one of which is the lack of formalized and implemented policy and procedure documentation to evidence a system of ICFR.

---

[1] The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

5. In addition, Respondent has failed to file timely its annual report on Form 10-K for sixteen consecutive years, which includes all twelve years (from 2007 through 2018) in which NWBO's management was required to perform an annual assessment of ICFR under SOX.

6. From 2012 through 2015, Respondent reported that the material weaknesses in its internal controls had not been resolved, though Respondent did take certain steps to attempt to improve controls. These remediation steps included hiring a Controller and a senior administrative staffer; outsourcing its accounting and financial reporting functions; and recruiting an in-house counsel.

7. Although Respondent hired a SOX consultant in spring 2016, there was limited progress in remediating material weaknesses prior to the staff's outreach. In 2016, the Respondent remediated certain material weaknesses, including those related to segregation of duties and its lack of an effective anti-fraud program designed to detect and prevent fraud. In 2017, the Respondent adopted enhanced governance guidelines and policies, among other improvements. In 2018, the Respondent remediated material weaknesses involving related party transactions. Despite these efforts, Respondent continues to report material weaknesses.

8. As a result of the conduct described above, Respondent violated Rule 13a-15(a) of the Exchange Act, which requires issuers with classes of securities registered pursuant to Section 12 to maintain ICFR.

9. As a result of the conduct described above, Respondent violated Section 13(b)(2)(B) of the Exchange Act, which requires Section 12 registrants to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurance that, among other things, transactions are recorded in accordance with GAAP.

### Northwest Biotherapeutics's Remedial Efforts

10. In determining to accept the Offer, the Commission considered remedial acts undertaken by Respondent and cooperation afforded the Commission staff.

### Undertakings

Respondent has undertaken to:

11. Retain, at its own expense, a qualified independent consultant (the "Consultant") not unacceptable to the Commission staff, to review and evaluate Respondent's ICFR and to provide recommendations for improvements as may be needed to complete its remediation plan and ensure compliance with ICFR requirements. This review and evaluation shall include an assessment of Respondent's policies and procedures involving the approval and recording of current and historic transactions with related parties, policies and procedures regarding public disclosures, and corporate governance matters.

12. The Consultant should not have provided legal, auditing, or other services to, or have had any affiliations with, the Respondent, or any related party, during the two years prior to the issuance of this Order.

13. Respondent and the Consultant shall agree that the Consultant is an independent third-party and not an employee or agent of the Respondent. In addition, Respondent and the Consultant agree that no attorney-client relationship shall be formed between them.

14. The Consultant shall be required to enter into an agreement that provides that for the period of engagement and for a period of two years from completion of the engagement, the Consultant shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with the Respondent, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity. The agreement will also provide that the Consultant will require that any firm with which he/she is affiliated or of which he/she is a member, and any person engaged to assist the Consultant in performance of his/her duties under this Order shall not, without prior written consent of the staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Respondent, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two years after the engagement.

15. The reports by the Consultant will likely include confidential financial, proprietary, competitive business or commercial information. Public disclosure of the reports could discourage cooperation, impede pending or potential government investigations or undermine the objectives of the reporting requirement. For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except (1) pursuant to court order, (2) as agreed to by the parties in writing, (3) to the extent that the Commission determines in its sole discretion that disclosure would be in furtherance of the Commission's discharge of its duties and responsibilities, or (4) is otherwise required by law.

16. Respondent shall provide, within sixty (60) days of the issuance of this Order, a copy of the engagement letter detailing the Consultant's responsibilities to Melissa Hodgman, Associate Director, Division of Enforcement, Securities and Exchange Commission, 100 F St., NE, Washington, DC 20549-5553.

17. Respondent shall cooperate fully with the Consultant, including providing the Consultant with access to its files, books, records, and personnel as reasonably requested for the above-referenced review, and obtaining the cooperation of respective employees or other persons under Respondent's control.

18. Respondent shall require the Consultant to report to the Commission staff on its activities as the Commission staff may request.

19. Respondent shall require the Consultant, within thirty (30) days of being retained (unless otherwise extended by the Commission staff for good cause), to provide Respondent and the Commission staff with (i) an estimate of the time needed to complete the review and analysis,

and (ii) a proposed deadline, subject to the approval of the Commission staff, for the preparation of a written report describing the review and analysis ("Report").

20.     Respondent shall require the Consultant to issue the Report by the approved deadline and provide the Report simultaneously to Respondent and the Commission staff. The Report shall evaluate the adequacy of Respondent's ICFR, including controls over related party transactions, as well as controls over public disclosures, and corporate governance matters, and make recommendations for improvements, as may be needed.

21.     Within thirty (30) days of the issuance of the Report, Respondent and the Consultant shall advise the staff of the date by which Respondent will adopt and implement any recommendations in the Report. As to any recommendation that Respondent considers to be, in whole or in part, unduly burdensome or impractical, Respondent may submit in writing to the Consultant and the Commission staff a proposed alternative reasonably designed to accomplish the same objectives, within thirty (30) days of the Consultant's issuance of the Report. Respondent shall then attempt in good faith to reach an agreement with the Consultant relating to each disputed recommendation and request that the Consultant reasonably evaluate any alternative proposed by Respondent. If, upon evaluating Respondent's proposal, the Consultant determines that the suggested alternative is reasonably designed to accomplish the same objectives as the recommendations in question, then the Consultant shall approve the suggested alternative and make the recommendations. If the Consultant determines that the suggested alternative is not reasonably designed to accomplish the same objectives, the Consultant shall reject Respondent's proposal. The Consultant shall inform Respondent and the Commission staff of the Consultant's final determination concerning any recommendation that Respondent considers to be unduly burdensome or impractical within fourteen (14) days after the conclusion of the discussion and evaluation by Respondent and the Consultant. Within fourteen (14) days after the final determination of any disputed recommendation, Respondent shall submit to the Consultant and the Commission staff the date by which Respondent will adopt and implement the recommendation, subject to the approval of the Commission staff.

22.     Respondent agrees that the Commission staff may extend any of the dates set forth above at the direction of the Commission staff.

23.     Within thirty (30) days after Respondent notifies the Consultant that the recommendations have been implemented, Respondent shall certify, in writing, compliance with the undertakings set forth above. The certification shall identify the undertaking(s), provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The Commission staff may make reasonable requests for further evidence of compliance, and Respondent agrees to provide such evidence. The certification and supporting material shall be submitted to Melissa Hodgman, Associate Director, with a copy to the Office of Chief Counsel of the Enforcement Division, no later than sixty (60) days from the completion of the undertakings.

**IV.**

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in Respondent's Offer.

Accordingly, it is hereby ORDERED that:

A. Pursuant to Section 21C of the Exchange Act, Respondent cease and desist from committing or causing any violations and any future violations of Sections 13(b)(2)(B) of the Exchange Act and Rule 13a-15(a), thereunder.

B. Respondent shall comply with paragraphs 11 through 23 above.

C. Respondent shall, within 10 days of the entry of this Order, pay a civil money penalty in the amount of $250,000 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3). If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

Payment must be made in one of the following ways:

(1) Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2) Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3) Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Respondent as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Melissa Hodgman, Associate Director, Division of Enforcement, Securities and Exchange Commission, 100 F St., NE, Washington, DC 20549-5553.

D. Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondent agrees that in any Related Investor

Action, it shall not argue that it is entitled to, nor shall it benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondent agrees that it shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

By the Commission.

Vanessa A. Countryman
Secretary