UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTHWEST BIOTHERAPEUTICS, INC.,<br><br>　　　　　　　　　Plaintiff,<br><br>- against -<br><br>CANACCORD GENUITY LLC, CITADEL SECURITIES LLC, G1 EXECUTION SERVICES LLC, GTS SECURITIES LLC, INSTINET LLC, LIME TRADING CORP., SUSQUEHANNA INTERNATIONAL GROUP LLP, and VIRTU AMERICAS LLC,<br><br>　　　　　　　　　Defendants. | No. 1:22-cv-10185-GHW-GWG |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>CANACCORD GENUITY LLC'S MOTION TO DISMISS</u>**

Anthony S. Fiotto
Julia C. Koch
MORRISON & FOERSTER LLP
200 Clarendon Street
Boston, MA 02116
Telephone: 617-648-4700
Facsimile: 617-830-0142
Email: AFiotto@mofo.com
Email: JKoch@mofo.com

Eric D. Lawson
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: 212-336-4067
Facsimile: 212-468-7900
Email: ELawson@mofo.com

*Attorneys for Canaccord Genuity LLC*

March 20, 2023

Defendant Canaccord Genuity LLC ("Canaccord") joins Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss (the "Joint Motion") and submits this Memorandum of Law to address only allegations specific to Canaccord.

## PRELIMINARY STATEMENT

Plaintiff Northwest Biotherapeutics, Inc. ("NWBO") claims that Canaccord engaged in an implausible "spoofing" scheme to manipulate the price of NWBO's stock.  NWBO alleges that over nearly five years, Canaccord independently engaged in spoofing activity on a handful of occasions to drive down NWBO's stock price so that Canaccord could purchase shares at artificially deflated prices.  NWBO alleges that its share price never rebounded.  NWBO's theory is nonsensical.  Simply put, the combination of buying shares and then continuously driving down the share price is economically irrational.  In fact, NWBO does not allege that Canaccord ever sold NWBO shares, much less that it sold NWBO shares for a profit.  In addition, NWBO alleges only that Canaccord (and other Defendants) bought NWBO shares at prices *at or above* pre-"spoofing" bid prices.  But that is consistent with what market makers do every day: market makers earn profits by *buying at the bid price* and then selling at the offer price.  For these reasons, and those described below and in the Joint Motion, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

Despite its length, the Complaint asserts very few allegations specific to Canaccord. NWBO attempts to allege identifiable instances of spoofing as to Canaccord on only three days during the so-called Relevant Period.  (¶¶ 87–92, 151–56, 219–24.)[1]  On six other days, NWBO makes the conclusory allegation that Canaccord engaged in "spoofing" without alleging a single specific manipulative act.  (*See id.* ¶¶ 67–73, 93–99, 106–12, 132–38, 175–81, 188–93.)  That is

---

[1] NWBO defines the Relevant Period as December 5, 2017, to August 1, 2022.  (¶ 1.)  ¶ citations are to the Complaint.

the full extent of the factual allegations specific to Canaccord.

## ARGUMENT

**I. NWBO Does Not Adequately Allege Actionable Trading Activity.**

NWBO mentions Canaccord's trading on only nine dates during the Relevant Period. None of those allegations plead an Exchange Act violation. ***First***, for six dates during the Relevant Period, NWBO alleges that Canaccord engaged in "spoofing" without alleging a single specific manipulative act.[2] Instead, NWBO provides only conclusory and aggregated information, including allegations regarding "Defendants'" conduct collectively. These conclusory allegations do not meet the demanding pleading standard for market manipulation claims under the Private Securities Litigation Reform Act and Federal Rule of Civil Procedure 9(b). *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 103 (2d Cir. 2007).

***Second***, on the remaining three dates, the Complaint describes unremarkable trading activity by Canaccord, consistent with that of a typical market maker.[3] On these dates, NWBO alleges that, after the alleged spoofing, Canaccord purchased shares at or above the ***pre***-spoofing best bid price—that is, Canaccord matched (or exceeded) the highest price that any other market participant displayed to buy NWBO prior to any alleged spoofing activity.[4] Moreover, NWBO admits that the prevailing best offer price did not decline as a result of Canaccord's supposed spoofing.[5] In other words, NWBO fails to allege that Canaccord moved the market as a result of its purported "Baiting Orders." According to the Complaint:

- On October 15, 2020, the prevailing best bid price before Canaccord allegedly placed any "Baiting Orders" was $1.20. (¶ 87.) After supposedly spoofing NWBO's stock, Canaccord

---

[2] These six dates are: October 12, 20, and 27, 2020; November 18, 2020; May 17, 2021; and May 9, 2022. (*See supra*.)
[3] These three dates are: October 15, 2020; December 24, 2020; and May 10, 2022. (*See supra*.)
[4] And NWBO does not allege that market participants were unwilling to sell at that price before the purported spoofing.
[5] On October 15, 2020, the prevailing best offer remained $1.21 after the supposed spoofing. (¶¶ 87, 91.) On December 24, 2020, the prevailing best offer remained $1.72 after the supposed spoofing. (¶¶ 151, 155.) And on May 10, 2022, the prevailing best offer remained $1.44 after the supposed spoofing. (¶¶ 219, 223.)

2

- ultimately purchased 100 NWBO shares for *the same price*—$1.20.  (¶ 91.)

- On December 24, 2020, the prevailing best bid price before Canaccord allegedly placed any "Baiting Orders" was $1.69.  (¶ 151.)  After supposedly spoofing NWBO's stock, Canaccord purchased 1,306 NWBO shares for one penny *more*—$1.70.  (¶ 155.)

- On May 10, 2022, the prevailing best bid price before Canaccord allegedly placed any "Baiting Orders" was $1.43.  (¶ 219.)  After supposedly spoofing NWBO's stock, Canaccord purchased 100 NWBO shares for *the same price*—$1.43.  (¶ 223.)

NWBO alleges that, after buying NWBO shares, Canaccord canceled its existing orders and placed new orders.  (*See* ¶¶ 92, 156, 224.)  But that trading activity reflects legitimate market making.  There is nothing unusual about a market maker purchasing at the bid price—market makers provide liquidity to markets by actively providing both bids to buy and offers to sell a security.  *See Kessev Tov, LLC v. Doe(s)*, 2022 WL 2356626, at *8 (N.D. Ill. June 30, 2022).  Given modern market dynamics, there is also "nothing improper or illegitimate about placing passive orders in the order book and then reversing position," *CP Stone Fort Holdings, LLC v. Doe(s)*, 2016 WL 5934096, at *5–6 (N.D. Ill. Oct. 11, 2016), and "placing rapid orders and cancelling them does not necessarily evince illegal market activity," *Kessev*, 2022 WL 2356626, at *9.  In sum, NWBO's allegations show innocent market making activity.  And these are the only Canaccord-related allegations pleaded with any attempt at specificity.  That should be dispositive.

## II.     NWBO Does Not Adequately Allege Scienter.

The Joint Motion explains in detail the myriad of flaws in NWBO's scienter allegations.  Canaccord emphasizes that, even under NWBO's flawed theory, Canaccord allegedly netted a grand total of ***$28.12*** in unrealized benefit from its supposedly elaborate and illegal scheme.  Specifically, NWBO alleges that, as a result of placing and cancelling tens-of-thousands of dollars of orders, Canaccord saved one cent on 100 shares on October 15, 2020, two cents on 1,306 shares on December 24, 2020, and one cent on 100 shares on May 10, 2022, by purchasing shares at the bid price instead of the offer price.  (¶¶ 91, 155, 223.)  Again, Canaccord is never alleged to have

3

sold shares for a profit. Regardless, NWBO represented to the Court that this type of "one-cent purported differential" in the price of its shares "is immaterial" when considering "the legal sufficiency of the allegations in the Complaint." (*See* Dkt. No. 78-6, at 2.) Further, Canaccord's $28.12 in supposed benefit over nearly five years is too small to evidence scienter.

### III. NWBO Does Not Adequately Allege Loss Causation.

To establish loss causation, "plaintiffs must distinguish the alleged fraud from the tangle of other factors that affect a stock's price." *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 229 (S.D.N.Y. 2009) (alteration omitted). Although NWBO alleges that "Defendants *directly impacted* the price of NWBO's shares in the market" (¶ 10 (emphasis added)), its claim fails because NWBO does not allege a connection between Canaccord's alleged trading and the prices at which NWBO sold its shares. ***First***, allegations as to Canaccord after March 14, 2022 (*i.e.*, Canaccord's trading on May 9 and 10, 2022) are not actionable because they occurred months *after* NWBO states that it last sold shares. (*See* ¶¶ 188–93, 200–06, 219–24, 259); *In re Merrill, Bofa, & Morgan Stanley Spoofing Litig.*, 2021 WL 827190, at *12 (S.D.N.Y. Mar. 4, 2021) ("[I]f [plaintiff's] trades all occurred before the spoof, there is no plausible inference that the trade took place at a price that was artificially impacted as a result of the spoof.").

***Second***, six of the seven remaining allegations as to Canaccord (*i.e.*, Canaccord's trading on October 12, 15, and 20, 2020; November 18, 2020; December 24, 2020; and May 17, 2021) occurred days—and sometimes weeks and months—before dates on which NWBO states that it sold shares. (*See* ¶¶ 67–73, 80–92, 93–99, 132–38, 145–56, 175–81, 259.) The large temporal gaps between Canaccord's alleged market activity and NWBO's trading make it impossible to infer loss causation. *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022) ("Even pleading same-day, post-spoof trades does not justify an inference of injury without any factual allegations to support the inference that the effects of the spoof linger. . . .").

*Finally*, in only one instance does NWBO allege that it traded its own stock using pricing from a day on which Canaccord allegedly traded: October 27, 2020.  (*Compare* ¶¶ 106–12 *with* 259 at 75.)  NWBO appears to allege that it sold shares on November 10, 2020, based on pricing from October 27 and four other dates.  But the pricing allegations make no sense.  NWBO claims that the closing price for NWBO shares on October 27 was $1.13 and that the four other relevant pricing dates had similar closing prices.  (¶ 259.)  However, it also claims that it sold shares on November 10 for $2.08 and $2.15—nearly *double* the October 27 closing price.  There is no apparent connection between NWBO's closing share price on October 27 and the price at which NWBO ultimately sold shares on November 10.

There are other fatal problems with NWBO's October 27 loss causation allegation.  Most significantly, NWBO fails to allege *any specifics* regarding Canaccord's trading on that date.  NWBO alleges only that Canaccord supposedly engaged in what NWBO vaguely calls "Spoofing Episode[s.]"  (¶¶ 106–12.)  This falls well short of NWBO's high pleading burden under Rule 9(b) and the PSLRA.  Moreover, NWBO's loss causation table does not allege whether NWBO priced its sales before or after Canaccord's supposed spoofing on October 27, which is fatal.  *See Gamma Traders*, 41 F.4th at 80 (dismissing complaint because plaintiffs "steadfastly avoid[ed] pleading that, on the dates there were spoof trades, they traded *after* the spoof"); *In re Merrill*, 2021 WL 827190, at *12.  NWBO also does not indicate to what extent, if at all, *Canaccord's* (as opposed to the other Defendants') October 27 market activity supposedly affected the price of NWBO's stock sales on November 10.  Finally, NWBO relies on an undefined "average return to spoofing" metric in its loss causation allegations, which appears to be the alleged result of the Defendants' combined and aggregated conduct.  This type of statistical analysis, which relies on "'averages' and medians among . . . market makers," should be rejected as "simply group pleading in another

5

form." *See In re Mex. Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 389–90 (S.D.N.Y. 2019).

## IV. Most of NWBO's Allegations Violate the Applicable Statute of Limitations.

The statute of limitations for federal securities fraud claims is two years from when "the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation—whichever comes first." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (alterations omitted). Here, most of the spoofing allegations as to Canaccord[6] occurred more than two years before NWBO filed the Complaint on December 1, 2022. NWBO does not (and cannot) allege that the relevant facts could not have been discovered earlier. NWBO relies exclusively on trading data for its ***own stock***, including data for its ***own trades***. Further, NWBO alleges that Defendants' conduct began in 2017 and was "relentless," "repeated," and "brazen[]." (¶¶ 1, 10, 56.) It also alleges that it was actively trading its shares during the period when the Defendants were supposedly engaged in this "brazen[]" market manipulation. Further, NWBO has represented to the Court that its factual investigation for the Complaint involved simply reviewing "trade data publicly available to it." (*See* Dkt. No. 78-6, at 2–3.) If Canaccord's alleged conduct had been as "relentless" (¶ 66) or "brazen[]" (¶ 10) as alleged, a reasonably diligent plaintiff in NWBO's position would have investigated the trading activity ***in its own stock*** in these ***publicly available*** sources and, if they bore out the allegations in the Complaint—which they do not—brought this action not long after the supposed "repeated[]" and "brazen[]" alleged conduct is supposed to have begun. Claims based on trading before December 1, 2020—two years before the filing of the Complaint—are thus barred by the applicable two-year statute of limitations.

## CONCLUSION

This Court should dismiss the claims against Canaccord with prejudice.

---

[6] These Trading Dates are October 12, 15, 20, and 27, 2020 and November 18, 2020. (¶¶ 68, 81, 94, 107, 133.)

Dated:  New York, New York
        March 20, 2023

MORRISON & FOERSTER LLP

By: /s/ Anthony S. Fiotto
    Anthony S. Fiotto
    Julia C. Koch
    200 Clarendon Street
    Boston, MA 02116
    Telephone: 617-648-4700
    Facsimile: 617-830-0142
    Email: AFiotto@mofo.com
    Email: JKoch@mofo.com

    Eric D. Lawson
    250 West 55th Street
    New York, NY 10019
    Telephone: 212-336-4067
    Facsimile: 212-468-7900
    Email: ELawson@mofo.com

    *Attorneys for Canaccord Genuity LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2023, a true and correct copy of the foregoing was electronically filed and served on all parties of record via the Court's CM/ECF system.

/s/ Anthony S. Fiotto
Anthony S. Fiotto