quinn emanuel trial lawyers | washington, dc

300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

June 12, 2023

Honorable Gabriel W. Gorenstein
United States District Court
Southern District of New York
500 Pearl Street, Room 6B
New York, NY 10007

Re:     *Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC*, 22-cv-10185-GHW-GWG

Dear Judge Gorenstein:

We represent Defendant Citadel Securities LLC ("Citadel Securities") in this action. Pursuant to Rule 2(A) of Your Honor's Individual Practices, we respectfully request a pre-motion conference regarding Citadel Securities' anticipated motion for Rule 11 sanctions against Plaintiff Northwest Biotherapeutics Inc. ("NWBO") and its counsel, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), which was served on May 19, 2023. As set forth in Citadel Securities' motion, NWBO's securities fraud claims rely on factually inaccurate allegations and so-called "trading records" that are directly contradicted by objective data. Rule 11 sanctions are necessary to remedy this misconduct and deter similarly frivolous claims.

The Initial Complaint And First Rule 11 Motion

On December 1, 2022, NWBO commenced this action, alleging that Citadel Securities and several other market-maker or broker-dealer Defendants each independently engaged in a five-year "spoofing" scheme to manipulate NWBO's stock price. Specifically, NWBO contends that each Defendant, over various two-minute periods, placed "Baiting Orders" to sell NWBO stock, which were supposedly "fictitious" because some of these alleged orders were at prices higher than some orders displayed by just one other market participant. NWBO also alleges that each Defendant did not sell NWBO shares during the two minutes following their alleged placement of these "Baiting Orders," which NWBO asserts is evidence the orders were manipulative and never intended to be executed. According to NWBO, these so-called Baiting Orders drove down the price of NWBO shares, followed by Defendants allegedly purchasing shares below the prevailing best offer, and finally cancelling the "fictitious Baiting Orders"—or some supposedly "equivalent order"—to complete the alleged scheme. As will be addressed in Defendants' separate motion to dismiss, NWBO's "Baiting Orders" theory is facially implausible and boils down to an improper attempt to transform routine over-the-counter market activity into securities fraud through labeling.

Significantly for the instant motion, NWBO's allegations of market manipulation rely on verifiable trading data: the prices, volumes, and timing of offers to buy, bids to sell, and executed trades of NWBO stock. Citadel Securities therefore provided NWBO with records directly from OTC Link—the only platform on which Citadel Securities trades NWBO stock—conclusively refuting them. NWBO admitted certain of its allegations were false but refused to withdraw the Complaint. Citadel Securities then served a Rule 11 motion on March 8, 2023. On March 25—

quinn emanuel urquhart & sullivan, llp

ATLANTA | AUSTIN | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

the Saturday before the Rule 11 "safe harbor" was set to lapse—NWBO informed Citadel Securities that it would "exercise its right to amend its complaint."

### The Amended Complaint And Withdrawal Of NWBO's "Trading Records"

NWBO filed its Amended Complaint on April 10, 2023, now citing a 208-page exhibit of "trading records" supposedly containing "thousands of spoofing episodes." Am. Compl. ¶ 61; ECF No. 95-1. The exhibit contradicts both the objective data and NWBO's own theory. And despite having been presented with verifiable data disproving its claims, and already admitting that its core allegations were false, NWBO's Amended Complaint was otherwise substantially the same as the initial Complaint, even relying on the same two "example episodes" of spoofing concerning Citadel Securities. On May 19, Citadel Securities served NWBO and Cohen Milstein with a second Rule 11 memorandum of law, addressing the Amended Complaint's factual errors and the exhibit's facial flaws. On May 25, NWBO claimed it first learned of "errors" in its exhibit (from this motion), and sought leave to replace the exhibit without amending its pleading, ECF Nos. 102, 105, which the Court granted, ECF No. 106. Significantly, NWBO's "corrected" exhibit made no changes to the Amended Complaint and failed to address many of the errors in the exhibit identified in Citadel Securities' Rule 11 memorandum. *See* ECF Nos. 105; 102-1.

### The Instant Rule 11 Motion

Rule 11(b)(3) of the Federal Rules of Civil Procedure requires a signing attorney to certify—"after an inquiry reasonable under the circumstances"—that a pleading's "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). "Since the inquiry must be 'reasonable under the circumstances,' liability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009). Allegations that are "utterly lacking in support" are "objectively unreasonable." *In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 263 (S.D.N.Y. 2010).

In enacting the Private Securities Litigation Reform Act ("PSLRA"), Congress sought "to increase the frequency of Rule 11 sanctions in the securities context," *ATSI*, 579 F.3d at 152, and "tilt the 'balance' toward greater deterrence of frivolous securities claims," *In re Austl. & N.Z.*, 712 F. Supp. 2d at 263. The PSLRA thus provides that when Rule 11(b) is violated, sanctions are "mandatory," and the court "shall adopt a presumption" of awarding "the opposing party [its] reasonable attorney's fees and other expenses." 15 U.S.C. § 78u-4(c).

Citadel Securities' Rule 11 motion sets forth in detail numerous false contentions in NWBO's Amended Complaint and exhibit, each of which alone would warrant sanctions. And while Cohen Milstein is likely to assert that it requires an "expert" to determine whether NWBO's allegations are false, that is wrong. The contentions in dispute—such as whether Citadel Securities sold or did not sell shares of NWBO in a two-minute period, or whether the price of NWBO went up or down—are simple and straightforward.

For example, a core aspect of NWBO's theory is that during each spoofing "example episode," there was a two-minute period where Citadel Securities "did not sell any shares of

2

NWBO." Am. Compl. ¶¶ 85 & 236.  These allegations are material—NWBO expressly relies on the purported lack of sales in certain periods as supposed proof that Citadel Securities' "Baiting Orders" were "fictitious."  *Id.*  In February, Citadel Securities provided NWBO and Cohen Milstein with data directly from OTC Link showing that Citadel Securities *did* sell shares of NWBO stock during the alleged periods of no sales.  Having been presented with such data by Citadel Securities, NWBO and Cohen Milstein knew when they filed the Amended Complaint that their allegations were false.  Yet they repeated them anyway, in violation of Rule 11.

As another example, NWBO made false allegations regarding the prices of its stock during one of the two "example episodes" of purported spoofing by Citadel Securities.  Am. Compl. ¶¶ 83-89.  NWBO and Cohen Milstein knew at the time they filed the Amended Complaint—again, because Citadel Securities had already provided them with verifiable market data in February—that the price of NWBO shares *went up* during the purported October 12, 2020 "episode."  NWBO was thus aware that its "example episode" did not show Citadel Securities "driving the price of NWBO shares downward," "taking advantage of [] artificial downward pressure," or purchasing NWBO shares "below the prevailing best offer."  Am. Compl. ¶ 87.  Yet NWBO repeated these false allegations in its Amended Complaint—in violation of Rule 11—apparently because this "example episode" was NWBO's strongest "evidence" of purported spoofing.

In addition to many false allegations that NWBO originated in its initial Complaint and repeated in the Amended Complaint, the "trading records" included for the first time as an exhibit to NWBO's Amended Complaint contradict NWBO's own claims of securities fraud.  As just one example, for 378 of the 671 alleged "spoofing episodes" concerning Citadel Securities, the purported "Baiting Orders" are not "Baiting Orders" even under NWBO's own definition—these so-called Baiting Orders were at prices better than the alleged "Best Offer" displayed in the market. If, as alleged in NWBO's exhibit, Citadel Securities' "Baiting Orders" were the best in the market, then they could not have been manipulative "fictitious" orders designed to mislead the market and drive down the price of NWBO shares, as required for NWBO's spoofing theory.  And even putting aside these contradictions, NWBO's "trading records" are also just wrong.  For example, the "records" allege that Citadel Securities drove down the price of NWBO shares through spoofing when data directly from the source—OTC Link—shows in many instances that the price of NWBO shares actually went up.  Even if NWBO believed at the time of filing that its trading records were correct, Rule 11 required it to withdraw the pleading after service of Citadel Securities' Rule 11 motion.

The above examples are only illustrative and intended to set forth briefly the nature of Citadel Securities' Rule 11 motion, on which the Rule 11(c)(2) "safe harbor" has run.  We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ William A. Burck*
William A. Burck

cc:     All counsel of record (via ECF)

3