# COHENMILSTEIN

Laura Posner<br>
(212) 220-2925<br>
lposner@cohenmilstein.com

June 14, 2023

**<u>Via ECF</u>**

| | |
|---|---|
| Honorable Gregory H. Woods | Honorable Gabriel W. Gorenstein |
| United States District Court | United States District Court |
| Southern District of New York | Southern District of New York |
| 500 Pearl Street, Room 2260 | 500 Pearl Street, Room 6B |
| New York, NY 10007 | New York, NY 10007 |

   Re:  ***<u>Northwest Biotherapeutics Inc. v. Canaccord, et al., No. 1:22-cv-10185</u>***

Dear Judge Woods and Magistrate Judge Gorenstein:

  We represent cancer treatment company, Northwest Biotherapeutics, Inc. ("NWBO"), and write in response to Defendant Citadel Securities LLC's ("Citadel") request for a pre-motion conference on its anticipated motion for Rule 11 sanctions. As set forth below, Citadel's anticipated motion is baseless and is a transparent attempt to try to intimidate NWBO into dropping its lawsuit and improperly influence the Court, rather than litigate the claims on the merits.

  Since being served with the initial complaint in this matter, Citadel has relentlessly – and without any factual or legal basis – accused NWBO of violating Rule 11. It has sent three letters and two separate motions laying out the bases for NWBO's supposed violations. When, in response, NWBO made clear why Citadel's arguments are factually inaccurate or contrary to law, Defendant Citadel simply changed its theory to suit its goal – scaring NWBO into dropping its lawsuit.[1] Notably, not one of the arguments raised in any of those letters or motions – even if true, which as addressed below they are not – are even close to reaching the high standard for sanctions under Rule 11. *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) ("A statement of fact can give rise to the imposition of sanctions only when the 'particular allegation is utterly lacking in support.'"); *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387-88 (2d Cir. 2003) (Sotomayor, J.) (vacating order of sanctions because factual allegations were not "utterly lacking in support" and noting that any "sanctions decision" must be "made with restraint"); *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (affirming denial of sanctions where the district court found that "it

---

[1] Last week, Citadel claimed to need a 30-day extension of the deadline to file its motion to dismiss to "re-review the more than 2,800 alleged 'spoofing episodes'" in the corrected Exhibit 1. *See* Ex. 1. Without conducting that supposedly necessary review, and without serving a new Rule 11 motion on NWBO that is responsive to corrected Exhibit 1 in violation of Rule 11(c)(2), Citadel nevertheless filed this request, which leaves Plaintiff without notice of which of Citadel's asserted bases for sanctions it still intends to pursue.

could not be said that the claims were not only unsupported by legal authority but were absolutely beyond acceptance as a novel legal theory."); *The Carlton Group, Ltd. v. Tobin*, No. 02-Civ-5065-SAS, 2003 WL 21782650, at *2 (S.D.N.Y. July 31, 2003) ("Sanctions should only be imposed where it is patently clear that a claim has absolutely no chance of success….Furthermore, all doubts must be resolved in favor of the signer of the pleading.").[2] Citadel's six co-defendants even recognize as much, electing not to join Citadel in its utterly baseless motion and harassment. Regardless, and as will be fully addressed in opposition to Defendants' motion(s) to dismiss, Citadel's newest substantive arguments are wrong as well.

First, Citadel claims that "a core aspect of NWBO's theory" is wrong because it purportedly sold shares of NWBO during the two-minute windows following certain of its alleged Spoofing Episodes. However, despite providing substantial evidence – based on publicly available trading information[3] – that Citadel spoofed NWBO on ***671*** occasions during the Relevant Period, Citadel only even claims to have provided "data directly from OTC Link showing that Citadel Securities *did* sell shares of NWBO stock" during ***two*** of those Spoofing Episodes. Not only does Citadel provide no evidence whatsoever that it sold shares in the two-minute periods following 669 of its alleged Spoofing Episodes, but the supposed "evidence" it provides for the two episodes it does challenge are simply PDFs of what we must assume are internally created Excel spreadsheets. The PDFs bear no markings from OTC Link, much less order tickets or trade confirmations to prove that such sales took place. Furthermore, whether Citadel traded in the two minutes following certain of the alleged Spoofing Episodes is irrelevant. Indeed, the FAC acknowledges that Defendant Citadel may have sold shares during those windows, and pleads that such sales would be "consistent with Defendant CITADEL SECURITIES LLC's conversion of spoofing profits into cash" – a fact Citadel's letter ignores. FAC at ¶¶ 85, 236. Accordingly, even if Citadel did sell shares during certain of the other alleged Spoofing Episodes, that does not defeat NWBO's "theory" (which includes over 15 separate bases for inferring scienter), and it certainly does not meet the standard for Rule 11 sanctions – rather, it supports a finding that Citadel had both motive and opportunity to engage in fraud. *Set Capital LLC v. Credit Suisse Group AG*, 996 F.3d 64, 76, 81 (2d Cir. 2021) (finding scienter based, in part, on the profits the defendants were alleged to have earned from their manipulative scheme).

---

[2] Both *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) and *In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 263 (S.D.N.Y. 2010), cited by Citadel, make this abundantly clear as well. In *In re Austl.*, the Court explained that "the court's task must nevertheless be undertaken with great caution," quoting approvingly the standards referenced above from *Kiobel* and *Kropelnicki*, and finding a Rule 11 violation only because the factual allegation at issue was "the pleading's single most important factual allegation" and "the crux of the entire complaint." *Id.* at 263-264. Similarly, in *ATSI*, the subject factual allegations were the only basis on which the plaintiff asserted scienter and, therefore, the plaintiff "could not have sued" the defendant otherwise. *ATSI*, 579 F. 3d at 153. Neither is the case here.

[3] As explained in the First Amended Complaint ("FAC"), "[t]he data utilized by Plaintiff to support the allegations in this Complaint consist of the complete stream of order book messages on NYSE ARCA Global OTC, including cancellations and executions, provided directly by NYSE Data Services, as well as the complete stream of historical Level II quotes and executed trades reported to FINRA, provided directly by OTC Markets Group." FAC at ¶ 61, n. 10.

COHENMILSTEIN

Second, Defendant Citadel claims that **one** of the 671 Spoofing Episodes alleged in the FAC against Citadel is inaccurate because "the price of NWBO shares *went up*" during that alleged Spoofing Episode.  Putting aside the fact that Defendant Citadel's argument is notably silent about the other 670 Spoofing Episodes alleged against it, whether Citadel engaged in fraudulent spoofing of NWBO does not depend on whether NWBO's share price went up or down during a given Spoofing Episode. Rather, NWBO's allegation is simply that the "but for" price of its shares would have been higher absent Citadel's fraudulent spoofing: if the price went up during the spoofing episode, it would have gone up by more; and if the price went down, it would have gone down by less.  Such allegations are routinely accepted in securities fraud cases. *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 38 (2d Cir. 2012) (securities fraud damages are "the difference between the fair value of all that the [plaintiff] received and the fair value of what he would have received had there been no fraudulent conduct"). Furthermore, as the Second Circuit has explained, "the fact that the price rebounded does not, at the pleading stage, negate the plaintiff's showing of loss causation." *Id.* at 39. As the FAC alleges, Citadel's fraudulent spoofing drove down the price of NWBO's shares as measured by the peak-to-trough decline in the price of executed transactions.  *See* ECF No. 102-1, Ex. 1, fn. 1. If Citadel believes it is inappropriate to measure the deflationary effect of spoofing through a peak-to-trough price decline, the time to make that argument is during the expert phase of this litigation, not at the pleading stage, and it certainly cannot form the basis of a Rule 11 finding.

Finally, Citadel argues that approximately half of the Spoofing Episodes alleged against it do not meet the definition of spoofing because the Baiting Orders were purportedly "at prices better than the alleged 'Best Offer' displayed in the market."  Again, the FAC is replete with hundreds of examples where Defendant Citadel engaged in spoofing at or above the Best Offer displayed in the market, which Defendant Citadel simply ignores.  But regardless, it has long been recognized that manipulative spoofing may consist of orders placed at prices "better than the alleged Best Offer displayed in the market." For example, FINRA's anti-spoofing rule, Rule 5210, defines "Disruptive Quoting and Trading Activity Type 2" as "narrow[ing] the spread for a security by placing an order inside the national best bid and national best offer" followed by an execution on the opposite side of the market by that party.  FINRA's own rules thus contemplate the very scenario that Citadel baselessly rules out.  Moreover, the Department of Justice ("DOJ") has pursued criminal spoofing cases for placing orders at prices better than the "Best Offer" in the market.  In the *Coscia* spoofing case, for example, DOJ described the defendant's behavior as placing orders "***to sell contracts at a price lower than the prevailing bid***." Indictment, *U.S. v. Coscia*, No. 14-CR-551, 2014 WL 10584583 (N.D. Ill.), at ¶ 9.  Notably, Coscia was convicted by a jury and sentenced to three years in jail for his conduct.

Accordingly, not only are Citadel's arguments wrong on both the facts and the law, they are frivolous.[4]  As such, Defendants' anticipated Rule 11 motion should be denied.

---

[4] In the event that Defendant Citadel is permitted to move ahead with the filing of its anticipated Rule 11 motion and does so, NWBO will cross-move for sanctions against it and its counsel, Quinn Emanuel Urquhart & Sullivan, LLP.

COHENMILSTEIN

Respectfully submitted,

By: /s/ Laura H. Posner
Laura H. Posner
Michael B. Eisenkraft
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Tel:  (212) 220-2925
Fax:  (212) 838-7745

Raymond M. Sarola
**COHEN MILSTEIN SELLERS & TOLL PLLC**
100 N. 18th Street, Suite 1820
Philadelphia, PA 19103
Tel:  (267) 479-5706
Fax:  (267) 479-5701

*Counsel for Plaintiff*

cc:  Counsel of record (via ECF)