**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NORTHWEST BIOTHERAPEUTICS, INC.,

Plaintiff,

- against-

CANACCORD GENUITY LLC, CITADEL
SECURITIES LLC, G1 EXECUTION
SERVICES LLC, GTS SECURITIES LLC,
INSTINET LLC, LIME TRADING CORP.,
and VIRTU AMERICAS LLC,

Defendants.

Case No:  1:22-cv-10185-GHW-GS

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO**
**MAGISTRATE JUDGE STEIN'S REPORT AND RECOMMENDATION**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................ 1

II.     STANDARD OF REVIEW ................................................................................................. 4

III.    THE R&R CORRECTLY FOUND THAT PLAINTIFF ADEQUATELY ALLEGES
        MANIPULATIVE ACTS ................................................................................................... 5

IV.     THE R&R CORRECTLY FOUND THAT PLAINTIFF ADEQUATELY ALLEGES SCIENTER9

        A.   The R&R Applied the Appropriate Pleading Standard and Considered Competing
             Inferences .................................................................................................................. 9

        B.   The Complaint Adequately Alleges Conscious Misbehavior or Recklessness ......................... 12

        C.   The Complaint Adequately Alleges Motive and Opportunity ................................................. 14

V.      THE R&R CORRECTLY FOUND THAT PLAINTIFF ADEQUATELY ALLEGES MARKET
        EFFECTS ............................................................................................................................ 15

VI.     THE R&R CORRECTLY FOUND THAT PLAINTIFF ADEQUATELY ALLEGES
        RELIANCE ......................................................................................................................... 16

VII.    THE R&R CORRECTLY FOUND THAT THE COMPLAINT PLED TEMPORAL PROXIMITY
        FOR CERTAIN OF PLAINTIFF'S SALES ..................................................................... 17

VIII.   THE R&R CORRECTLY DECLINED TO TAKE JUDICIAL NOTICE OF DEFENDANTS'
        PURPORTED TRADING RECORDS ................................................................................ 18

IX.     CONCLUSION ................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ..............................................................................................4

*Catania v. United Federation of Teachers*,
    No. 21-cv-1257, 2022 WL 767107 (S.D.N.Y. Mar. 12, 2022) (Woods, J.) ............................4

*CFTC v. Shak*,
    No. 2:22-cv-01258-GMN-NJK, 2023 WL 5717289 (D. Nev. Sept. 5, 2023) .........................5

*Chill v. Gen. Elect. Co.*,
    101 F. 3d 236 (2d Cir. 1996)........................................................................................20

*CP Stone Fort Holdings, LLC v. Doe(s)*,
    No. 16-cv-4991, 2017 WL 1093166, at *4 (N.D. Ill. Mar. 22, 2017) ...................................5

*Doe v. New York University*,
    No. 20-cv-01343 (GHW), 2021 WL 1226384 (S.D.N.Y. Mar. 31, 2021)
    (Woods, J.) ...............................................................................................................18

*Harrington Global Opportunity Fund, Ltd. v. CIBC World Markets Corp.*,
    585 F. Supp. 3d 405 (S.D.N.Y. 2022).................................................................11, 12, 15

*Harrington Global Opportunity Fund, Ltd. v. CIBC World Markets Corp.*,
    No. 21-cv-761 (LGS), 2023 WL 6316252 (S.D.N.Y. Sept. 28, 2023) ......................... *passim*

*Kessev Tov, LLC v Doe(s)*,
    No. 20-cv-4947, 2022 WL 2356626 (N.D. Ill. 2022) ...........................................................5

*Kessev Tov, LLC v. Doe(s)*,
    No. 20-cv-4947, 2023 WL 4825110 (N.D. Ill. July 27, 2023) ....................................... *passim*

*McIntire v. China MediaExpress Holdings, Inc.*,
    38 F. Supp. 3d 415 (S.D.N.Y. 2014) ...............................................................................17

*S.E.C. v. U.S. Environmental, Inc.*,
    155 F.3d 107 (2d Cir. 1998).....................................................................................11, 15

*Set Capital LLC v. Credit Suisse Group AG*,
    996 F.3d 64 (2d Cir. 2021)........................................................................................4, 10

*Sharette v. Credit Suisse Int'l*,
    127 F. Supp. 3d 60 (S.D.N.Y. 2015)........................................................................6, 13, 14

*In re Tufin Software Technologies Ltd. Sec. Litig.*,
   No. 20-cv-5646, 2022 WL 596861 (S.D.N.Y. Feb. 25, 2022) (Woods, J.)............................20

*U.S. v. Coscia*,
   866 F.3d 782 (7th Cir. 2017) ................................................................................................ 5

*Vega v. Artuz*,
   No. 97-cv-3775, 2002 WL 31174466 (S.D.N.Y. Sept. 30, 2002) .............................................4

*Xu v. Gridsum Holding, Inc.*,
   No. 18-cv-3655, 2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020)..............................................20

Plaintiff Northwest Biotherapeutics, Inc. ("NWBO" or "Plaintiff") respectfully submits its opposition to Defendants' objections (ECF 141) to Magistrate Judge Stein's Report & Recommendation ("R&R") (ECF 137).[1]

## I.   __INTRODUCTION__

In a detailed 85-page R&R, Magistrate Judge Stein found that Plaintiff adequately pled the elements of manipulative acts, scienter, market effects, and reliance.  Those findings are well-reasoned and meticulously cited.   Nonetheless, Defendants submit *pro forma* objections to virtually every statement in the R&R, many with just a mere sentence stating their disagreement and the overwhelming majority without a single case citation.  And while the R&R is replete with references to other spoofing and market manipulation cases, including cases from this District, that support each of those conclusions, Defendants cannot distinguish these cases or discredit their relevance, so instead they simply ignore them.  For example, while the R&R references on point cases upholding spoofing complaints such as *Kessev Tov* eleven times and *CP Stone* five times, Defendants' objections do not mention either case even once.

Instead, in their objections, Defendants trod out again the very same strategy that failed below – isolate every allegation in the Complaint and argue that it is not sufficient standing alone to state a spoofing claim.  The R&R properly rejected this approach, correctly concluding that the Complaint alleges a comprehensive pattern of spoofing conduct that closely aligns with the type of allegations that courts repeatedly find sufficient both in this District and elsewhere.

***Manipulative Acts:***  The R&R correctly concluded that the Complaint adequately pled manipulative acts, relying on the same five common "indicia" of spoofing repeatedly relied on by

---

[1] Citations to the Report & Recommendation are set forth as "R&R p. __" and citations to Defendants' objections are set forth as "Obj. p. __."   References to "¶ __" are to paragraphs of the First Amended Complaint (ECF 95) (the "Complaint").   Unless otherwise indicated, emphasis is added, quotation marks and citations are omitted, and alterations are adopted.

courts both within and outside of this District.   These detailed factual allegations, which demonstrate that Defendants' repeated patterns of placement and cancellation of Baiting Orders is contrary to legitimate market making behavior, are exactly the type of allegations that have been consistently held to adequately plead manipulative acts.   Defendants restate a long list of bald objections to this conclusion, but each of their arguments was carefully considered by Magistrate Judge Stein, who rejected them all with citation to persuasive decisions in *Harrington*, *Kessev Tov*, and other spoofing cases that similarly disposed of these same purported defenses.   Defendants do not cite a single spoofing case agreeing with *any* of their objections to this element and offer no reason why this Court should depart from all others that have considered and rejected these same arguments or how Magistrate Judge Stein's reasoning ignored contrary information or caselaw.

     *Scienter:*   The R&R correctly concluded that the Complaint adequately pled scienter under both of two independently sufficient methods – "conscious misbehavior or recklessness" and "motive and opportunity."   The R&R held, as numerous other courts have, that conscious misbehavior in spoofing cases is supported by the same factual allegations that support manipulative acts.   But the R&R went even further, finding that the Complaint pled additional facts about Defendants' spoofing activity that make the inference of scienter even stronger, including the fact that they each signed yearly certifications in accordance with FINRA rules attesting to the fact that they had sufficient policies in place to detect and prohibit manipulative trading.   The R&R also held that the Complaint adequately pled "motive and opportunity" through the same type of factual allegations held sufficient in *Harrington* and in other market manipulation cases, and properly rejected Defendants' attempt to write their own calculations of their spoofing profits into the Complaint.   Again, each of the objections that Defendants now present were carefully considered and analyzed in the R&R, and again Defendants cite to no spoofing case to

support their position.

**_Market Effects:_**  The R&R correctly concluded that the Complaint adequately pled that Defendants' spoofing had a negative price impact on NWBO stock relying on both the specific representative examples and extensive trading data analysis contained therein, as well as the actual measurement of price decline caused by Defendants' spoofing.  The R&R considered and properly rejected Defendants' suggestion that a plaintiff can only allege spoofing claims with before-and-after prices, since manipulative conduct (like any securities fraud) can cause a negative price impact by depressing the price below the level it would have attained but for the manipulation, even if the stock price rises in absolute terms over certain periods.

**_Reliance:_**  The R&R correctly concluded that the Complaint adequately pled reliance. Defendants still are unable to point to a single factual allegation in the Complaint that is insufficient on this score or even suggest any additional factual allegations that they believe would be necessary.

**_Loss Causation:_**  Defendants argue that the R&R improperly considered all of the allegations in the Complaint when assessing loss causation, rather than limiting its analysis to only the specific representative examples of Spoofing Episodes, and that the 30 instances in which Plaintiff's sales were priced within one hour of Defendants' spoofing are insufficient to allege loss causation.  Magistrate Judge Stein was right to consider the allegations as a whole, and for the reasons set forth in Plaintiff's Limited Objection (ECF 142), this Court should hold that those allegations are sufficient to plead loss causation for all Spoofing Episodes during the Relevant Period.

*     *     *

Defendants' true objection is, thus, not with the R&R's application of the law to the

Complaint's allegations, but rather with the law governing spoofing and market manipulation cases more generally. The same objections that Defendants now raise, and that they raised originally, have been presented and rejected in numerous spoofing cases that mirror the allegations in the Complaint. The R&R carefully considered Defendants' arguments and rejected them in a manner consistent with these cases. As such, its conclusions regarding the elements of manipulative acts, scienter, market effect and reliance should be adopted by this Court.

## II.   **STANDARD OF REVIEW**

When reviewing a magistrate's report and recommendation, the District Court has full discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). However, where, like here, "the party makes only frivolous, conclusory, or general objections, *or simply reiterates her original arguments*, the Court reviews the report and recommendation only for clear error." *Catania v. United Federation of Teachers*, No. 21-cv-1257, 2022 WL 767107 at *1 (S.D.N.Y. Mar. 12, 2022) (Woods, J.). *See also Vega v. Artuz*, No. 97-cv-3775, 2002 WL 31174466, at *1-2 (S.D.N.Y. Sept. 30, 2002) ("rehashing" the same arguments would reduce the magistrate's work to a "meaningless dress rehearsal" and require "the district court to duplicate every effort made by the Magistrate Judge.").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor." *Set Capital LLC v. Credit Suisse Group AG*, 996 F.3d 64, 75 (2d Cir. 2021) (citation omitted). "While a claim for market manipulation must be pled with particularity under Rule 9(b), the pleading can involve facts 'solely within the defendant's knowledge' and need not, at the early stages of litigation, 'plead manipulation to the same degree of specificity as a plain misrepresentation claim.'" *Harrington Global Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, No. 21-cv-761 (LGS), 2023 WL 6316252, at *5 (S.D.N.Y. Sept. 28, 2023) ("*Harrington*

*II*") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007)).

### III.   THE R&R CORRECTLY FOUND THAT PLAINTIFF ADEQUATELY ALLEGES MANIPULATIVE ACTS

The R&R correctly found that the Complaint alleges the same five indicia of spoofing that courts, including Judge Schofield in the *Harrington* case, consistently find sufficient to plead manipulative acts.  R&R p. 33 (citing *Harrington Global Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, 585 F.Supp.3d 405 at 417 ("*Harrington I*"); *Harrington II*, 2023 WL 6316252 at *6; *Kessev Tov, LLC v Doe(s)*, No. 20-cv-4947, 2022 WL 2356626, at *8 (N.D. Ill. June 30, 2022)("*Kessev Tov I*"); *Kessev Tov, LLC v. Doe(s),* No. 20-cv-4947, 2023 WL 4825110, at *4 (N.D. Ill July 23, 2023)("*Kessev Tov  II*"); *CP Stone Fort Holdings, LLC v. Doe(s)*, No. 16-cv-4991, 2017 WL 1093166, at *4 (N.D. Ill. Mar. 22, 2017); *U.S. v. Coscia*, 866 F.3d 782 at 797 (7th Cir. 2017); *CFTC v. Shak*, Case No. 2:22-cv-01258-GMN-NJK, 2023 WL 5717289, at *7 & n.8 (D. Nev. Sept. 5, 2023)).  The R&R cited to numerous paragraphs contained in the Complaint in support of each of the five common indicia – the placing of Baiting Orders (¶¶ 62, 69), cancelling those orders after executing purchases (¶¶ 64, 70), short periods of time between placement and cancellation of Baiting Orders (¶¶ 64, 276), parking (¶¶ 262-263, 86, 100, 114, 142, 156, 169, 182, 189, 203, 216, 230, 237, 244, 251, 258, 262), and conduct contradictory to market making (¶¶ 82, 96, 110, 124, 138, 152, 199, 226, 283-84).  R&R p. 33-35.[2]

In addition to the above Defendant-specific allegations, the Complaint also contains corroborative allegations based on extensive econometric analysis demonstrating that all Defendants engaged in spoofing on a massive and persistent basis.  *See, e.g.,* ¶ 69 (average number

---

[2] The Complaint contains additional allegations for these five indicia beyond those specifically identified in the R&R.  *See e.g.,* ¶¶ 8, 77, 90, 91 (Baiting Orders); 67, 74, 76, 79, 93 (cancelled); 71, 74, 88, 102 (quickly); 86, 100 (parking); 69, 86 (not market making).

of total Baiting Orders per Spoofing Episode and ratio to sell orders during non-spoofed periods), ¶ 70 (average cancellations of total Baiting Orders per Spoofing Episode and ratio to cancellations during non-spoofing periods).

The pattern of spoofing conduct pled in the Complaint involves Defendants' Baiting Orders for tens of millions of NWBO shares, making the Complaint's combination of specific representative examples with aggregate data points a uniquely appropriate approach. *Harrington II*, 2023 WL 6316252 at *6 ("The SAC alleges the occurrence of over 900 spoofing episodes.  It would be both unwieldy and unreasonable to require Plaintiff to proffer detailed descriptions of each alleged episode in order to plead a sufficient claim.")

In response, Defendants repeat the same very arguments they made below challenging the Complaint's allegations of baiting orders, cancellations, OTC Link order handling, and aggregate trading data – all properly considered by Magistrate Judge Stein and all rejected in the R&R.  In not one of their objections to the R&R's conclusion on manipulative acts do Defendants cite to a single spoofing decision in support of their position, nor do they make any attempt to distinguish the many spoofing cases on which the R&R relied.  As the R&R concluded, at best, Defendants' arguments "merely raise[] a factual dispute inappropriate for resolution at the pleading stage." R&R p. 37 (quoting *Sharette v. Credit Suisse Int'l.*, 127 F.Supp.3d 60 at 84 (S.D.N.Y. 2015)).

<u>First</u>, contrary to Defendants' assertion, the Complaint does not improperly engage in group pleading (Obj. p. 15), but rather offers specific representative examples *for each Defendant*. ¶¶ 83-89 (Citadel on October 12, 2020), ¶¶97-103 (Canaccord on October 15, 2020), ¶¶ 111-117 (Instinet on October 20, 2020), ¶¶ 125-131 (Virtu on October 27, 2020), ¶¶ 139-145 (G1 on November 2, 2020), ¶¶ 153-159 (G1 on November 18, 2020), ¶¶ 166-172 (Canaccord on December 24, 2020), ¶¶ 179-185 (GTS on February 1, 2021), ¶¶ 186-192 (Lime on February 1, 2021), ¶¶

200-206 (Virtu on May 17, 2021), ¶¶ 213-219 (Instinet on May 9, 2022), ¶¶ 227-233 (GTS on May 10, 2022), ¶¶ 234-240 (Citadel on May 10, 2022), ¶¶ 241-247 (Canaccord on May 10, 2022), ¶¶ 248-254 (G1 on May 10, 2022), ¶¶ 255-261 (Virtu on May 10, 2022). *See Harrington II*, 2023 WL 6316252 at *6 ("Contrary to Defendants' contention that 'Harrington fails to associate any order with a specific Defendant,' the SAC provides seven illustrative examples of specific Defendants engaged in spoofing cycles involving Concordia shares.").

The Complaint also contains a chart stating the number of Spoofing Episodes, the share volume of Baiting Orders, the share volume of Executing Purchases, and the Average Price Decline over Spoofing Episodes during the Relevant *by each Defendant*.  ¶ 68.  It also contains charts showing these same metrics *for specific Defendants* for each of the representative example Spoofing Episodes.  ¶¶ 77, 91, 105, 119, 133, 147, 161, 174, 194, 208, 221.

True to form, Defendants attack certain other aggregate data points as if they were the only allegations in the Complaint, ignoring the many pages of minute detail regarding each Defendants' spoofing activity.  *Cf.* Obj. p. 15 ("These superficial aggregates cannot fulfill the particularity requirement.")  Defendants offer no reason why a complaint that contains additional detail about every single one of the thousands of Baiting Orders would provide them any greater or more meaningful particularity regarding the nature of the claims alleged.

Second, Defendants quibble with how the Complaint categorizes and describes Defendants' cancellation of Baiting Orders.  Obj. p. 15.  But, the R&R correctly refused Defendants' attempt to re-write the Complaint in a manner that contradicts the plain language of its allegations.  For example, Defendants assert that the Complaint "fails to identify even one specific order that was cancelled" (Obj. p. 15), when the Complaint in fact asserts, for *each representative example*, the *exact time* (to fractions of a second) when that Defendant first

cancelled a Baiting Order.  R&R p. 35 (citing as examples ¶¶ 88, 102, 116); *see also* ¶¶ 130, 144, 158, 171, 184, 191, 205, 218, 232, 239, 246, 253, 260 (same).

 <u>Third</u>, Defendants take issue with the Complaint's categorization of the manner in which they cancelled certain orders on OTC Link, one of the two venues on which Defendants spoofed NWBO stock.  The R&R considered Defendants' argument and responded to it in detail, correctly noting that the Complaint defined "cancellation" to include certain modifications to orders on OTC Link that resulted in a reduction in the volume of shares displayed, and quoted Plaintiff's counsel at oral argument explaining that a modification of an order in such a manner sends the same signal to the marketplace as a cancellation of an order in the amount of the reduction.  R&R p. 36 (quoting Oral Arg. Tr. At 60:13-24); *see also* Oral Arg. Tr. At 27:16-28:23 (Magistrate Judge Stein observing that spoofing is possible on OTC Link even accepting Defendants' argument).[3]  And while Defendants now claim that they make a "wholly separate point that was unaddressed by the R&R"– referring to their factual assertion that changes to their OTC Link quotes were "simply fulfilling its obligation" to "update" a "client order" (Obj. p. 18) – the R&R also expressly considered exactly this point, referencing the precise pages in Defendants' motion to dismiss and reply briefs where it was earlier made.  R&R p. 35-36 ("Defendants reason that because 'a participant on OTC Link can only display one order at a time,' a broker-dealer will update its quote if it receives a better priced client order (which it is generally required to display) and may also update the quote when a display order is filled.")  As the R&R explained, "to construe the FAC as

---

[3] Defendants confusingly suggest that the R&R considered a wholly different scheme than pled in the Complaint, which it refers to as "flashing," even though that concept appears nowhere in the Complaint nor was it described in the R&R.  Obj. p. 17.  And the language cited by Defendants on this point was taken out of context from a portion of the R&R that was responding to Defendants' own speculation of how it traded on OTC Link.  In any event, Defendants do not explain how the application of any law that regards "flashing" would differ from or lead to a different conclusion here, and they outright concede that "flashing" is "a form of spoofing." *Id.*

alleging that Baiting Orders were *only* modified, and *never* deleted (as Defendants' argument posits), is to view Plaintiff's allegations in the light most favorable to Defendants, rather than to Plaintiff as required." R&R p. 36. And, as the R&R notes, Defendants' definitional disputes relating to the specifics of OTC Link order handling do not even apply to the Complaint's allegations of Defendants' spoofing on Global OTC. R&R p. 20 n.13 ("Defendants do not provide trading data from Global OTC, nor do they argue that Plaintiff's conclusions drawn from the Global OTC trading data are refuted by any record extraneous to the FAC.").

Finally, Defendants reassert their argument that the Complaint does not plead the "parking" indicium (Obj. p. 18-19), but fail to identify any reason to reject the R&R's conclusion, bolstered by relevant caselaw, that allegations that *some* of Defendants' baiting orders were "parked" is a factor indicative of spoofing. R&R p. 42 ("But even if 'many' Baiting Orders were not parked, that does not defeat Plaintiff's allegations that other Baiting Orders *were* parked.") Defendants claim that viewing all orders in an order book that are not at the best price as being "parked" would be overinclusive, Obj. p. 18, but this merely illustrates that neither the Complaint nor those upheld in other spoofing cases rest *exclusively* on parking to establish manipulative conduct. Indeed, Defendants cite to no case (because there is none) that limits "parking" allegations in the way they suggest, and the R&R is correct that "it is not essential for a spoofing complaint to include allegations of 'parking' in order to survive a motion to dismiss" in the first place. R&R p. 43 (citing *Kessev Tov II*, 2023 WL 4825110, at *4 (while "'parking' bids may be one way of proving spoofing, there is no case law that holds it is the only way to do so")).

## IV.   THE R&R CORRECTLY FOUND THAT PLAINTIFF ADEQUATELY ALLEGES SCIENTER

### A.   The R&R Applied the Appropriate Pleading Standard and Considered Competing Inferences

The R&R correctly concluded that the Complaint adequately alleges scienter both because

it pleads "conscious misbehavior" and "motive and opportunity." Defendants assert that Magistrate Judge Stein applied the wrong standard in finding the Complaint's allegations of scienter sufficient, but the only basis for their assertion is that the Magistrate Judge Stein rejected their arguments.  The R&R thoughtfully and expressly considered each of Defendants' arguments and rejected them in line with the applicable standard for scienter under Supreme Court and Second Circuit precedent.   R&R p. 53 ("To satisfy the PSLRA's scienter requirement in a market manipulation case, the plaintiff must plead with particularity facts giving rise to a strong inference that the defendant intended to deceive investors by artificially affecting the market price of securities"); *id.* ("In determining whether the inference of scienter is strong—*i.e.*, cogent and at least as compelling as any opposing inference—the court must evaluate the complaint's allegations holistically, considering all of the facts alleged, taken collectively, rather than any individual allegation, scrutinized in isolation.") (quoting *Set Capital*, 996 F.3d at 78 and *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 at 323, 326).

They also assert that the R&R failed to consider competing *inferences*, but what they really mean is that the R&R failed to adopt their version of the *facts* instead of presuming the well-pled allegations in the Complaint to be true, as the Court must on a motion to dismiss.   Obj. p. 4-7. The "competing inferences" that Defendants assert the R&R "disregarded" were all considered and properly rejected, as they have been in every other spoofing case in which they were considered.  First, Defendants argue again that they were "routinely … displaying and executing orders for their clients, on terms set by those clients," Obj. p. 5, but the Complaint nowhere alleges this, and the R&R rightly declined to adopt Defendants' unsupported assertion over those actually pled.  R&R p. 39-40 ("Defendants' argument that their clients 'set the terms of those orders' is Defendants' version of the facts and raises a dispute that cannot be resolved on a motion to

dismiss.")  *See also Harrington I*, 585 F.Supp.3d at 416 ("That the complaint mentions that Defendants trade for their own proprietary accounts and the accounts of their customers does not undercut the Complaint's numerous allegations that Defendants designed and operated the algorithms that spoofed Plaintiff's stock").  And, regardless, even if they were trading on behalf of customers, the R&R correctly found that Defendants are still liable for trading activity that they conducted, regardless of whether some portion (or even all) of the spoofing trades were for client accounts or their own accounts. R&R at 58-59.  *See also S.E.C. v. U.S. Environmental, Inc.*, 155 F.3d 107, 112 (2d Cir. 1998) ("Moreover, as long as [defendants], with scienter, effected the manipulative buy and sell orders, [defendants'] personal motivation for manipulating the market is irrelevant in determining whether he violated § 10(b)."); *Harrington II*, 2023 WL 6316252 at *7 (*U.S. Environmental* "gives teeth to the spoofing theory of liability").

Next, Defendants observe that most orders placed in securities markets are cancelled, Obj. p. 6, but as the R&R points out, the Complaint goes far beyond that, alleging a specific pattern of placing and cancelling orders to induce others to sell NWBO stock and identifying cancellation rates for spoofed orders that were significantly higher than non-spoofed orders.  R&R pp. 41-42; *see also Harrington I*, 585 F.Supp.3d at 418; *Kessev Tov II*, 2023 WL 4825110 at *5.

Lastly, Defendants argue that the R&R erred by dismissing Defendants' speculation that it is somehow implausible that they would all engage in spoofing NWBO stock.  Obj. at 7.  The R&R considered and properly rejected the logical fallacy that multiple defendants being alleged to have committed the same violation must mean than none of them did.  R&R p. 63 ("It is not implausible that multiple sophisticated broker-dealers, all operating algorithmic trading programs, could independently spoof the same issuer's stock.")

**B.**     **The Complaint Adequately Alleges Conscious Misbehavior or Recklessness**

The R&R correctly stated that in spoofing cases, the factual allegations supporting manipulative acts "overlap" with those that support scienter.  R&R p. 60 (citing *S.E.C. v. Hwang*, No. 22-cv-3402, 2023 WL 612041, at *11 (S.D.N.Y. Sept. 19, 2023); *CP Stone Fort Holdings*, 2017 WL 1093166, at *3-4; *Harrington II*, 2023 WL 6316252, at *6-7; and *Kessev Tov II*, 2023 WL 4825110, at *6).  Defendants do not dispute this legal proposition.

The R&R further concluded that the Complaint alleged *additional* facts supportive of scienter – including that Defendants knew spoofing was unlawful and affirmed they had policies to detect and prevent it.  R&R p. 60-61; ¶ 269 (Defendants "knew and/or were required to know that it was unlawful to place Baiting Orders to sell in a Limit Order Book or IQDS that were never intended to be executed in order to trick market participants into selling shares of NWBO stock"), ¶ 270 (Defendants were required to have policies to detect and prohibit manipulative trading schemes under FINRA Rules 2020 and 5210, Supplementary Material .02, Rule 1220 and Exchange Rule 575), *id.* (Defendants filed annual certifications of compliance with these requirements, ¶ 271 (Citadel developed an algorithm to detect spoofing by other market participants as early as 2015).  Similar allegations also supported an inference of scienter in *Harrington*. *See Harrington II*, at *7 (allegations that "strongly suggest[] Defendants shirked these duties," as "gate keepers" of trading on exchanges support a finding of scienter).

These allegations strengthen and corroborate those held sufficient to plead manipulative conduct; they are not, as Defendants claim, the *only* allegations on which the R&R's conclusion on conscious misbehavior relied.  *Cf.* Obj. p. 12 ("the R&R erred in finding that conscious misbehavior or recklessness is appropriately pled *merely because* Defendants knew that spoofing was unlawful and were required by FINRA to have policies and procedures to prevent fraudulent trading.")

Defendants then claim that the Complaint's allegations about Defendants' use of high speed trading algorithms are insufficient; but again, those very same type of allegations supported an inference of scienter in *Harrington I*, 585 F.Supp.3d at 418 (S.D.N.Y. 2022) (rejecting as "unfounded" Defendants' argument that "the Complaint needs to plead additional facts regarding Defendants' algorithmic trading programs and the corporate officials who designed or oversaw those programs….If Defendants' argument were correct, it is hard to fathom how any plaintiff could plead a market manipulation claim based on spoofing through high-frequency trading algorithms.")  The Complaint alleges that Defendants used trading algorithms to engage in the conduct and for the purposes specifically identified in the Complaint, or the "how and why the algorithms were designed and implemented to engage in illegal conduct."  *Cf.* Obj. p. 13.  *See, e.g.,* ¶ 267 ("each Defendant specifically designed and implemented algorithmic trading programs to execute their spoofing schemes.  Their algorithms were programmed to, and did, generate trading patterns that involved the placement and cancellation of tens of millions [of shares in] Baiting Orders to sell in the Limit Order Book and/or IQDS on OTC Link LLC and NYSE ARCA Global OTC that were never intended to executed during the Relevant Period.")

Lastly, Defendants offer irrelevant musings about things a plaintiff might plead on information and belief, and argue that a spoofing complaint must identify corporate employees by name – something not required by any spoofing case and which would make little sense given that trading by algorithm, not a person, is generally at issue.  *Compare* Obj. p. 13 n.7, 14; *with Harrington II*, 2023 WL 6316252 at *8 (Defendants' characterization of allegations that trading activities were "approved by corporate officials" was "unfounded" since "a claim of manipulation can involve facts solely within the defendant's knowledge and a plaintiff therefore need not plead manipulation to the same degree of specificity as a plain misrepresentation claim"); *see also*

*Sharette*, 127 F.Supp.at 100 (scienter adequately pled without identifying corporate officials by name).

### C.   **The Complaint Adequately Alleges Motive and Opportunity**

Defendants argue that the Complaint only alleges a "generic" motive to make money, but that is not the case.  Obj. p. 8.  The R&R correctly held that the Complaint alleges specifically how the exact manipulative scheme engaged in by Defendants provided them a strong motive to commit these violations.  R&R p. 54 ("But Plaintiff alleges more than a mere generic profit motive here.  Plaintiff alleges that Defendants engaged in a form of illegal market manipulation, spoofing, for the specific purpose of generating profits by purchasing NWBO stock at artificially depressed prices and, once the market rebounded, selling it at a higher price.")  This is the same type of motive allegation held sufficient in *Harrington I*, over the same objections that Defendants now present. *Harrington II*, 2023 WL 6316252 at *8*.  *See also Sharette*, at 95-96 ("Furthermore, it is not unreasonable to infer, as Plaintiffs' allegations suggest, that the fraud claimed … could have been seen by the [defendants] as … opening the door for more and more lucrative business from that market in the future – business that may [have] been unattainable by them without the manipulation and deception Plaintiffs describe….").

The R&R properly rejected the Defendants' attempt to re-write the Complaint with their own factual assertions and methodologies to quantify their profits to the dollar.  R&R p. 56-58.  Not only are Defendants' calculations inaccurate (R&R p. 57-58) and not alleged in the Complaint, but the exact measure of profit is a matter for discovery and damages.  *Harrington II*, 2023 WL 6316252 at *8 ("[w]hether Defendants' alleged misconduct was ultimately economically rational is a matter to be explored at summary judgment or trial.");  *see also Kessev Tov II*, 2023 WL 4825110, at *6 ("In the end, Plaintiff's claims may be doomed if they are unable to prove

Defendants profited from the alleged market manipulation," but denying motion to dismiss on that ground). Furthermore, as Magistrate Judge Stein noted, the nature of high-frequency spoofing is such that relatively small gains on individual transactions can generate substantial profits when repeated over long periods. R&R p. 56-57, *id.* n. 26 (the spoofing transactions upheld in *Harrington* "generated similarly small price variations and profits as those alleged here.")

Lastly, Defendants again restate their unfounded assertion that they sometimes may trade for clients, but it fares no better against Plaintiff's scienter than it does when directed at any other element of spoofing claims. R&R p. 59. *See Harrington I*, 585 F.Supp.3d at 416 (that Defendants may have traded for clients does not "undercut the [complaint's] numerous allegations that Defendants designed and operated the algorithms that spoofed [plaintiff's] stock."); *Harrington II*, 2023 WL 6316252 at *7 (Second Circuit's decision in *S.E.C. v. U.S. Environmental* "gives teeth" to the complaint's allegations of scienter as against brokers that trade for client accounts).

## V.   THE R&R CORRECTLY FOUND THAT PLAINTIFF ADEQUATELY ALLEGES MARKET EFFECTS

The R&R thoroughly considered Defendant's arguments that the Complaint failed to allege a negative market effect and found each of them "unpersuasive." R&R p. 46.

First, the R&R observed that because "the very purpose of the spoofing behavior alleged by Plaintiff … was to artificially depress NWBO's share price so that Defendants could then purchase shares at reduced prices," it is naturally the case that "sufficient allegations of a spoofing scheme necessarily tend to show an effect on the market." R&R p. 46 (citing *Coscia* and *S.E.C. v. Hwang*). The R&R expressly considered and persuasively rejected Defendants' argument, repeated now, that a spoofing complaint must contain additional detail about the price of the stock at the start of each spoofing episode. R&R p. 52 ("even without a specific allegation as to the prevailing best offer at the moment a Spoofing Episode began, Plaintiff's allegations support the

inference that the spoofing drove down the stock price during the Spoofing Episodes and therefore had an effect on the stock.")

Next, in addition to its well-plead allegations of Defendants' spoofing behavior, the Complaint also pleaded in detail a price decline formula, which quantifies the "average price decline" for each of the representative spoofing examples in the Complaint and each of the thousands of Spoofing Episodes in Exhibit 1 to the Complaint.  R&R p. 47.  Defendants take issue with this formula, claiming that it "always yields a negative number," which, as Judge Stein held, is both mathematically incorrect (the formula will yield the number zero if the stock price stayed the same or increased – meaning zero price decline) and irrelevant since, as quoted in the R&R, Plaintiff's counsel explained at oral argument that the particular Spoofing Episodes included in the Complaint were plead explicitly because there was a negative price impact from the spoofing. R&R p. 48 (citing Oral Arg. Tr. At 89:7-17).

Lastly, the R&R was correct to note that "[a]s with any other factual assertion in a pleading, if a statistical analysis is pled with the requisite specificity, it must be accepted as true on a motion to dismiss," and therefore the ultimate determination of "the validity of Plaintiff's price decline formula is best left to expert analysis and should not be resolved by the Court at the motion to dismiss stage."  R&R p. 49 (citing to cases in this Circuit that "routinely rely" on statistical analysis in pleadings).

## VI.   THE R&R CORRECTLY FOUND THAT PLAINTIFF ADEQUATELY ALLEGES RELIANCE

The R&R did not conclude, as Defendants claim, that "the reliance element was not properly decided on a motion to dismiss."  Obj. p. 24.  To the contrary; the R&R analyzed the Complaint's allegations and found them sufficient at the pleading stage to allege reliance.  R&R p. 81 ("[W]hether reliance has been pled turns on the sufficiency of the FAC's factual

allegations.") Specifically, the R&R concluded that Plaintiff alleged sufficient facts demonstrating that the Plaintiff "relied on an assumption of an efficient market free of manipulation." R&R p. 79. *See* ¶¶ 301, 308. In addition, the R&R found that the Complaint sufficiently pled the "*Cammer* factors*,*" which courts evaluate in securities actions to determine whether the market for the given security was efficient and, therefore, whether the plaintiff is entitled to a presumption of reliance. R&R p. 82. These factual allegations include that Plaintiff filed periodic public reports with the SEC, was eligible to file registration statements with the SEC on Form S-3, its shares traded at high weekly volumes, the market reacted promptly to public information disseminated by Plaintiff, Plaintiff regularly communicated with public investors through established mechanisms that it was regularly covered by the financial press, and that the price of its shares promptly reflected current information. ¶¶ 297-98. The R&R also noted that the Complaint alleged that market makers (including some Defendants) actively traded in NWBO stock (¶ 283) and quantitative information regarding its market capitalization and bid-ask spread was public. ¶¶ 15, 83, 97, 111.

Defendants ignore Plaintiff's allegations of actual reliance and do not indicate in their Objections which of the Complaint's *Cammer* allegations are insufficient or what more a plaintiff would need to allege under Rule 8, nor can they since "[t]he *Cammer* factors 'are not a rigid checklist' and not 'every factor needs to be established.'" R&R p. 84 (quoting *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 432 (S.D.N.Y. 2014)).

## VII. THE R&R CORRECTLY FOUND THAT THE COMPLAINT PLED TEMPORAL PROXIMITY FOR CERTAIN OF PLAINTIFF'S SALES

The R&R concluded that Plaintiff's sales of its stock that were priced within one hour of Defendants' spoofing would satisfy the "temporal proximity" theory for pleading loss causation under *Gamma Traders– I LLC v. Merrill Lynch Commodities, Inc.*, 41 F. 4th 71 (2d Cir. 2022), so long as the Complaint were amended to add detail regarding the formulas by which those sales

were priced.  R&R p. 71-72.

Plaintiff has separately objected to the R&R's conclusion that it has not adequately pled loss causation.  (ECF 142)  The Complaint contains sufficient allegations to establish loss causation for all Plaintiff's sales of NWBO stock during the Relevant Period.  This includes those sales that were priced within one hour of a Spoofing Episode, those sales priced within 6.5 hours of Spoofing Episodes, and the remainder of Plaintiff's sales, which are sufficiently linked to Defendants' spoofing due to the well-established long-term price impact of market manipulation such as spoofing.

Defendants take issue with one particular aspect of the R&R's loss causation conclusion – that the Complaint's 30 instances of Plaintiff's sales within one hour of a spoofing episode are sufficiently proximate in time to satisfy *Gamma Traders*.  R&R p. 70.  Defendants' argument begins and ends with the false premise that the Complaint only alleges 16 instances of spoofing, rather than thousands.  Obj. p. 25 ("None of these 30 instances in NWBO's chart are connected to the 16 Example Episodes in the Complaint.")  However, the 16 representative examples are just that – examples – of Defendants' multi-year pattern of spoofing NWBO stock, which are provided in Exhibit 1 to the Complaint.  *Harrington II*, 2023 WL 6316252 at *6 ("These illustrative examples represent the hundreds of manipulative spoofing episodes identified over the Relevant Period.")  Again, Defendants cite to no case that follows their suggested approach.  All of the allegations in the Complaint are properly considered for all elements of its claims, including the element of loss causation.

## VIII.   THE R&R CORRECTLY DECLINED TO TAKE JUDICIAL NOTICE OF DEFENDANTS' PURPORTED TRADING RECORDS

Relying, in part, on this Court's decision in *Doe v. New York University*, No. 20-cv-01343

(GHW), 2021 WL 1226384 (S.D.N.Y. Mar. 31, 2021) (J. Woods)[4] and with the benefit of supplemental briefing on the subject (ECF 133, 136), Magistrate Judge Stein engaged in a thorough and persuasive analysis, stretching over 10 pages of the R&R, ultimately concluding that the exhibits of purported trading records that Defendants submitted with their motion to dismiss (Exhs. 11-28) should not properly be considered.[5]  The R&R specifically considered and rejected the three arguments that Defendants repeat in their Objections – that there is no purported dispute over the "accuracy and completeness" of their exhibits (*cf.* R&R p. 23-24); that the exhibits are suitable for judicial notice (*cf.* R&R p. 24-26); and that they fall under the "integral-to-the-complaint" doctrine (*cf.* R&R p. 21-23).

Quizzically, in the same brief in which Defendants attempt to manufacture a dispute over how to interpret quotes on OTC Link, arguing that "modifications of orders" cannot be considered as "cancellations," they also argue that OTC Link *quote* data is as free from dispute as the *price* of publicly-traded stocks.  R&R p. 26 ("Here again, Defendants cite to cases which do not support their position.  [Defendants'] cases involve courts taking judicial notice of readily ascertainable and understandable *price* data, typically stock prices of publicly traded securities, without objection from the plaintiff.")[6]

This Court should also reject Defendants' objection here for the independently sufficient reason that the arguments for which Defendants seek to rely on this trading data are not dispositive

---

[4] Defendants ignore this decision.

[5] R&R p. 20 n.16 ("Defendants request that, if the Court concludes it cannot consider the trading data 'without converting the instant motion to one for summary judgement,' it should 'disregard the information and treat the motion as a motion to dismiss,' (Def. Br. 36 n.17).  The Court will do just that.").  The R&R did consider other types of exhibits submitted by Defendants with their motion to dismiss, and found others to be irrelevant.  R&R p. 27-28.

[6] The R&R found that NWBO *price* data was properly considered.  R&R p. 27 ("The Court will consider Defendants' Exhibit 6, showing NWBO's historical prices at the beginning and end of the Relevant Period, which Plaintiff does not contest, and which are regularly considered on a motion to dismiss.")

of any issue.[7]  *Compare* R&R p. 22-23 ("According to Defendants, the data show that the Baiting Orders 'were always competitively priced,' that there was no 'parking' at all, and that the price of NWBO stock 'actually went up during many of NWBO's alleged Spoofing Episodes'") *with* R&R p. 33-38 (Baiting Orders properly defined in Complaint); p. 42-43 (parking is not necessary); 46-53 (Defendants' conduct depressed price of NWBO stock).

As explained above and in the R&R, a spoofing plaintiff does not have to plead that the price of the stock declined in absolute terms over any particular time interval.  This is because the overarching theory of spoofing is that it artificially depresses the price below the level it would have been but for the manipulation, not that it invariably causes an absolute decrease in the price over a given period.  This artificial depression of a stock's price may occur when the price rises during the spoofing episode from, say, $5 to $6 but absent the spoofing would have risen to $7.

## IX.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should adopt Magistrate Judge Stein's Report & Recommendation as to the elements of manipulative acts, scienter, market effects, and reliance, and should find Plaintiff has adequately pled loss causation for the reasons set forth in Plaintiff's Limited Objection.[8]

---

[7] Defendants' arguments on this score are also incomplete.  R&R p. 20 n.13 ("Defendants do not provide trading data from Global OTC, nor do they argue that Plaintiff's conclusions drawn from the Global OTC trading data are refuted by any record extraneous to the FAC.")

[8] Should the Court dismiss the Complaint, Plaintiff respectfully requests leave to amend and is fully prepared to, *inter alia*, add the factual allegations Magistrate Judge Stein requested or any others that the Court finds necessary.  *See Chill v. Gen. Elec. Co.*, 101 F. 3d 236, 271 (2d Cir. 1996) ("In the securities litigation context, leave to amend is particularly appropriate[.]"); *In re Tufin Software Technologies Ltd. Sec. Litig.*, No. 20-cv-5646, 2022 WL 596861, at *11 (S.D.N.Y. Feb. 25, 2022) (Woods, J.) (granting leave to amend for a second time); *Xu v. Gridsum Holding, Inc*., 2020 WL 1508748, at *9 (S.D.N.Y. Mar. 30, 2020) (same).  In the Second Circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead*." In re Tufin*, at *11.

Dated:  January 26, 2024
       New York, New York

Respectfully submitted,

By:  *Laura H. Posner*           
  Laura H. Posner
  Michael B. Eisenkraft
  COHEN MILSTEIN SELLERS & TOLL PLLC
  88 Pine Street, 14th Floor
  New York, New York 10005
  Tel: (212) 838-7797
  Fax: (212) 838-7745
  lposner@cohenmilstein.com
  meisenkraft@cohenmilstein.com

  Raymond M. Sarola
  COHEN MILSTEIN SELLERS & TOLL PLLC
  100-120 N. 18th Street, Suite 1820
  Philadelphia, PA 19103
  Tel: (267) 479-5700
  Fax: (267) 479-5701
  rsarola@cohenmilstein.com

  *Counsel for Plaintiff*