# EXHIBIT 8

EFiled:  Mar 03 2022 02:10PM EST
Transaction ID 67363800
Case No. 2022-0193-JTL

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

SHIVA STEIN, Derivatively on behalf of : 
NORTHWEST BIOTHERAPEUTICS, :
INC., :
                     :
         Plaintiffs, :
                     :
       v. :
                     :
J. COFER BLACK, ALTON L. :
BOYNTON, JERRY JASINOWSKI, :
NAVID MALIK, LINDA F. POWERS, :
LESLIE J. GOLDMAN and MARNIX :
L. BOSCH, :
                     :
       Defendants, :
                     :
       and :
                     :
NORTHWEST BIOTHERAPEUTICS, :
INC., a Delaware corporation, :
                     :
       Nominal Defendant. :

C.A. No. 2022-0193-JTL

Original Version Filed: February 28, 2022

Public Version Filed: March 3, 2022

**<u>VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT</u>**

Plaintiff Shiva Stein, individually and derivatively on behalf of Northwest Biotherapeutics, Inc., brings this Verified Stockholder Derivative Complaint against Northwest Biotherapeutics, Inc. ("NW Bio" or the "Company") and Linda F. Powers ("Powers"), J. Cofer Black ("Black"), Dr. Alton L. Boynton ("Boynton"), Jerry Jasinowski ("Jasinowski"), Dr. Navid Malik ("Malik"), Leslie J. Goldman ("Goldman"), and Marnix L. Bosch ("Bosch").

Plaintiff's allegations are based upon her own knowledge as to those facts concerning herself and otherwise upon information and belief as to allegations developed through the investigation conducted by her undersigned attorneys, including but not limited to a review of corporate books and records produced pursuant to 8 *Del. C.* § 220, news reports, documents filed with the SEC, and other public information.

## NATURE OF THE ACTION

1.     This is a stockholder derivative action brought on behalf of nominal defendant NW Bio to remedy breaches of fiduciary duty by, as well as unjust enrichment of, certain of NW Bio's directors and executives.

2.     In July and September of 2020, the nonemployee members of NW Bio's board of directors (the "Board") issued excessive and unfair compensation to: (i) Powers, the Company's chief executive officer ("CEO"), Chairperson, and President, who controlled between 91% and 21% of outstanding NW Bio stock

between 2004 and 2019; (ii) Boynton, the Company's co-founder, Chief Scientific Officer, director, former CEO, and former President; (iii) Goldman, the Company's Senior Vice President and General Counsel; and (iv) Bosch, the Company's Chief Technical Officer. In total, the Board gave these executives options to purchase **135,792,072 shares** of NW Bio common stock. The grant date fair value of these option awards was more than **$40 million**.

3.    In return, Powers and Boynton awarded nonemployee directors Malik, Jasinowski, and Black options to purchase **26,212,612 shares** of NW Bio common stock. As a result, these three nonemployee directors received option awards worth **$6,870,000** or an average of **$2,290,000 per director**. In comparison, nonemployee directors of Apple Inc., one of the largest companies in the world with a market capitalization nearly 3,134,711 times that of NW Bio, received $249,923 worth of restricted stock units in 2020.

4.    As of February 15, 2020, the executive and director options were worth more than **$75 million and $15 million**, respectively.

5.    By acceding to management's excessive compensation demands, the Company's nonemployee directors breached the fiduciary duties they owe to NW Bio and its stockholders. The grossly unfair and excessive compensation awarded to NW Bio's executives and directors is precisely the type of corporate looting that an independent board is supposed to prevent.

6.    Plaintiff brings this action on NW Bio's behalf for the harm caused to the Company and its stockholders.

## PARTIES

7.    Plaintiff Stein has continuously held shares of NW Bio stock since June 2014.

8.    Nominal Defendant NW Bio is a Delaware corporation with its principal executive offices located at 4800 Montgomery Lane, Bethesda, Maryland 20814. NW Bio is a development-stage pharmaceutical company focused on developing immunotherapies against different types of cancer.

9.    Defendant Black has served as a director since January 2016.

10.    Defendant Jasinowski has served as a director since April 2012.

11.    Defendant Malik has served as a director since April 2012.

12.    Defendant Powers has served as the Chairperson of the Board since May 2007, CEO and President since June 2011, and Chief Financial and Accounting Officer since June 2020.

13.    Defendant Boynton co-founded NW Bio and has served as a director and an executive since 1998. He currently serves as the Company's Chief Scientific Officer, having held that position since June 2011. Prior to that, he was appointed as the Company's Chief Scientific Officer in 1998, Secretary in August 2001, Chief Operating Officer in August 2001, President in May 2003, and CEO in June 2007.

In June 2011, Powers replaced him as CEO and President and he returned to his position as Chief Scientific Officer.

14.    Defendant Goldman joined the Company in 2011 and currently serves as Senior Vice President and General Counsel.

15.    Defendant Bosch joined the Company in 2000 and serves as Chief Technical Officer.

16.    The Defendants described in paragraphs 9 through 11 are collectively referred to herein as the "Director Defendants".

17.    The Defendants described in paragraphs 12 through 15 are collectively referred to herein as the "Executive Defendants".

18.    The Defendants described in paragraphs 9 through 13 are collectively referred to herein as the "Board Defendants".

19.    The Director Defendants and Executive Defendants are collectively referred to herein as the "Individual Defendants".

## JURISDICTION

20.    This Court has subject matter jurisdiction over this action pursuant to 10 *Del. C.* § 341.

21.    Pursuant to 10 *Del. C.* § 3114, this Court has personal jurisdiction over Defendants Black, Boynton, Jasinowski, Malik, Powers, Goldman and Bosch because they have consented to jurisdiction in this Court when agreeing to serve as

officers and directors of NW Bio.

22.     Pursuant to 8 *Del. C.* § 321, this Court has personal jurisdiction over NW

Bio because it is a Delaware corporation.

## SUBSTANTIVE ALLEGATIONS

I.  **POWERS AND THE BOARD HAVE A HISTORY OF IMPROPER RELATED-PARTY TRANSACTIONS INVOLVING NW BIO.**

A. **Powers Becomes Involved with NW Bio.**

23.     Defendant Boynton co-founded NW Bio in 1996.  The Company was

reincorporated in Delaware in July 1998 and conducted its initial public offering in

December 2001.

24.     In January 2003, Toucan Capital Fund II, L.P. (together with certain

related funds, "Toucan"), led by defendant Powers, its managing director and

controller, contacted the Company through a letter expressing interest in investing.

Though the Company's then-business managers, who left the Company in 2003, did

not engage with Toucan, Toucan hired a former employee of NW Bio and retained

external advisers who conducted due diligence on the Company.

25.     In January 2004, Toucan pursued investment discussions with the

Company at an investment conference. Those discussions led to an initial investment

by Toucan in February 2004, followed by a recapitalization of the Company

pursuant to an agreement entered into on April 26, 2004, which was amended ten

times before being terminated in June 2007.

26.     Through this recapitalization and other financing and debt arrangements, Toucan and its related entities collectively secured beneficial ownership of approximately 396.8 million shares of NW Bio capital stock as of March 5, 2007, representing approximately **86%** of the Company's outstanding common stock on an as converted-to-common-stock basis at the time.

27.     In May 2007, the Company appointed Powers as Chairperson and Boynton as President and CEO. Boynton continued to serve as the Company's Chief Science Officer.

28.     Toucan and NW Bio engaged in various other financing arrangements in the years that followed. Eventually, Powers, in her capacity as controlling stockholder, decided to step up her role at the Company.  In June 2011, in addition to continuing to serve as Chairperson of the Board, Powers became the Company's President and CEO. Boynton returned full-time to his position as Chief Scientific Officer, and the Company brought on Goldman as Senior Vice President, Business Development.

29.     In 2012, Powers, who controlled approximately 56% of the Company at the time, had Malik and Jasinowski appointed to the Board. In turn, Malik and Jasinowski comprised a majority of the Board's Nominations Committee when Black was appointed to the Board in January 2016.

**B. NW Bio Pays Millions to Powers's Companies.**

30.     In 2004, NW Bio entered into a service agreement with Cognate Bioservices, Inc. (f/k/a Cognate Therapeutics, Inc., "Cognate"), which was owned by Toucan and thus, in turn, controlled by Powers. Pursuant to the agreement, NW Bio engaged Cognate for purposes of manufacturing its DCVax technology, performing research and development, and managing clinical trials.  Under this agreement, which was renewed in 2007, 2011, and 2014, the Company built up substantial debts to Cognate.

31.     In lieu of paying back the debt owed to Cognate, NW Bio undertook a series of debt-to-equity conversions, issuing millions of shares of its stock.  These and other related party transactions gave rise to four lawsuits, including *Tharp v. Cognate Bioservices, Inc., et al.*, C.A. No. 11179-SG (Del. Ch.) ("*Tharp*"), which was filed in June 2015. The *Tharp* action settled in 2017, with NW Bio agreeing to implement certain corporate governance reforms for at least five years.

32.     The SEC likewise contacted the Company about Cognate's ownership of NW Bio stock because Powers and Cognate were violating SEC disclosure rules: "We note that Cognate BioServices owns more than 10 percent of your common stock, yet it does not appear to have filed any Section 16 ownership reports. Please advise."  Thereafter, Cognate filed an ownership report reflecting that it owned 19.9% of NW Bio shares. In other words, notwithstanding that the law required Cognate, which was controlled by Powers, to file an ownership report once it owned

10% of outstanding NW Bio shares, Cognate did not do so even though it owned roughly double the minimum disclosure amount – until it was caught by the SEC.

33.     The transactions between Cognate and NW Bio also prompted Nasdaq, on which NW Bio shares were then traded, to act.  In April 2016, Nasdaq sent the Company a letter informing it that it had violated a Nasdaq rule applicable to share issuances to substantial stockholders. Specifically, Nasdaq identified certain stock issuances to Cognate at less than market value in 2014 and 2015 that violated Nasdaq Rule 5635(d), which requires that a company obtain stockholder approval prior to the issuance of shares equaling 20% or more of common stock or 20% or more of the voting power outstanding at a price less than the greater of book or market value.

34.     On September 6, 2016, NW Bio announced that Nasdaq had accepted its proposed remediation plan pursuant to which Cognate:

- returned 8,784,072 shares;

- returned a net amount of 2,574,802 warrants, agreeing to the cancellation of 6,880,574 warrants it received under certain 2014 agreements while receiving 4,305,772 new warrants with an exercise price $.27 higher; and

- deleted the most favored nations provisions in the controlling agreements.

35.     In February 2018, Cognate announced that it had "completed a

management buyout…and raised capital from a group of global investment firms[.]" Around this time, NW Bio had already started using another entity related to Powers instead of Cognate, Advent BioServices, Ltd. ("Advent"), which had been spun off Cognate before the buyout. Pursuant to two service and manufacturing agreements between NW Bio and Advent concerning DCVax®-L, the Company paid Advent approximately $2.3 million in 2018, approximately $6 million in 2019, and approximately $5.28 million in 2020. In the annual report NW Bio filed with the SEC on March 31, 2021, it disclosed that as of December 31, 2020 the Company still owed $5.3 million to Advent, and that it anticipates to pay $10.3 million to Advent "for the next 2 years' obligation."

36.    These related party transactions were not limited to Powers. On December 30, 2010, Toucan Fund II transferred 6,433,162 shares and 7,345,030 warrants, together then worth approximately $5 million, to Regen Med Acquisition Corp., a company incorporated by Malik of which Powers was majority owner. After the circumstances of this transfer were publicized in 2015, Malik was suspended by his employer, Cenkos Securities PLC ("Cenkos"), where he had worked from January 2012 until his resignation on December 8, 2015. According to documents filed before a British employment appeal tribunal, Cenkos suspended Malik on November 4, 2015, and subsequently received a report that confirmed certain allegations about Malik and his wife's dealings with NW Bio and Regen Med

made public in October 2015.

37.    Jasinowski and Black have also engaged in related-party transactions. During the three months ended June 30, 2017, they, along with another member of the Board, loaned the Company an aggregate amount of $300,000 pursuant to multiple Demand Promissory Notes (the "Board Notes").[1]  The Board Notes bear interest at 10% per annum, and are payable upon demand, with 7 days' prior written notice to the Company. Additionally, Jasinowski entered into a Stock Purchase Agreement on February 3, 2020 (the "SPA"), pursuant to which he purchased 526,316 shares of NW Bio stock at a price per share of $0.19, for an aggregate purchase price of approximately $100,000.

**C. Powers Lends Funds to the Company and Almost Doubles Her Money.**

38.    Between February 2018 and April 2018, Powers loaned the Company $5.4 million pursuant to convertible notes (the "Convertible Notes"). The Convertible Notes bore an interest rate at 10% *per annum* and were repayable upon 15 days' notice from Powers, and in any event no later than five years from the date of the respective notes. Although the Company would repay the $5.4 million

---

[1]    Goldman also loaned the Company $315,000 pursuant to various convertible notes (the "Goldman Notes") bearing an interest rate at 10% per annum and fifty percent warrant coverage.  The Company has since claimed to have "made full repayment of $0.3 million to Mr. Goldman, including all outstanding interest". Powers has likewise continued to loan money to NW Bio at significant interest rates.

principle and $0.8 million interest by September 2019, Powers nonetheless used the Convertible Notes to extract much more from the Company's coffers.

39.    On November 11, 2018, the Company and Powers agreed to extend the notes to a maturity of one year following respective funding dates; *i.e.*, to February-April of 2019. In return, Powers was to be issued warrants representing 50% of the amounts due under the Convertible Notes (the "Forbearance Warrants"). The Company also said that the Forbearance Warrants would have an exercise price of $0.35 and an exercise period of two years; *i.e.*, the same exercise price and exercise period as the warrants issued to third-party investors on November 7, 2018. The Company repeatedly disclosed these terms in its annual and quarterly reports filed with the SEC in 2019:

| Form 10-K filed on April 2, 2019 | The warrants will have exercise price at $0.35 per share, and have an exercise period of 2 years. However, the Company has not finalized the terms of the warrant agreement. |
|---|---|
| Form 10-Q filed on May 10, 2019 | The warrants were anticipated have exercise price at $0.35 per share, and have an exercise period of 2 years. However, the Company has not finalized the terms of the warrant agreement. |
| Form 10-Q filed on August 9, 2019 | The warrants were anticipated have exercise price at $0.35 per share, and have an exercise period of 2 years. However, the Company has not finalized the terms of the warrant agreement. |

40. 

41.    On July 2, 2020, Powers filed a Form 4 with the SEC in which she reported that, for "partial consideration of [the Convertible Notes] and forbearance on the repayment of those loans," she was issued Forbearance Warrants to purchase 15,249,474 shares of NW Bio common stock. The Forbearance Warrants have an exercise price of $0.21 per share, a 5-year contractual term, and a purported fair value of approximately $4.3 million on the grant date, which was recognized as an additional interest expense.  They became exercisable as of November 1, 2020 and have an expiration date of November 1, 2025. In its public filings NW Bio discloses that the Forbearance Warrants were initially approved in 2018 and were re-approved by the Board in January 2020. Specifically, the Form 10-k filed with the SEC on

March 31, 2021, states:

> On July 2, 2020, the Company issued approximately 15.2 million warrants (the "Forbearance Warrants") to Ms. Powers in consideration for Ms. Powers' previously reported forbearance and extension of loans of $5.4 million from Ms. Powers to the Company. These warrants were approved by the Board in November 2018 when the loans were long overdue, as previously reported, and the warrants were re-approved in January 2020, but were not issued until July 2, 2020.
>
> The Forbearance Warrants have an exercise price of $0.21 per share with 5-year contractual term. The fair value of the Forbearance Warrants was approximately $4.3 million on the grant date, which was recognized as an additional interest expense.

42.    Accordingly, by manipulating the terms of the Convertible Notes, which were outstanding for just 18 months, as well as the subsequent extension and repricing of the Forbearance Warrants, Powers extracted $0.8 million in interest and $4.3 million worth of warrants from the Company. To put it another way, she made $5.1 million from the $5.4 million loan – an outrageous 94.4% return on her investment. The Board apparently did not see anything unusual in approving these transactions.

## II.    THE EXECUTIVE DEFENDANTS RECEIVE OUTSIZED OPTION AWARDS.

43.    On July 2, 2020, the Executive Defendants received outsized awards of stock options far beyond what they had received in prior years (the "July Executive Options"). In total, 118,107,254 options were granted to the Executive Defendants:

| Option Recipient | Exercise Price from Forms 4 | Exercise Price from the 2021 Proxy | Transaction Date | # of Options | Expiration Date |
|---|---|---|---|---|---|
| Powers (1) | $0.25 | $0.35 | 7/2/2020 | 32,558,724 | 12/1/2030 |
| Powers (2) | $0.25 | $0.35 | 7/2/2020 | 2,104,905 | 7/2/2030 |
| Powers (3) | $0.21 | $0.35 | 7/2/2020 | 8,665,524 | 7/2/2030 |
| Boynton (1) | $0.25 | $0.35 | 7/2/2020 | 15,697,693 | 12/1/2030 |
| Boynton (2) | $0.25 | $0.35 | 7/2/2020 | 605,160 | 7/2/2030 |
| Boynton (3) | $0.21 | $0.35 | 7/2/2020 | 2,491,338 | 7/2/2030 |
| Bosch (1) | $0.25 | $0.35 | 7/2/2020 | 16,630,726 | 12/1/2030 |
| Bosch (2) | $0.25 | $0.35 | 7/2/2020 | 7,549,157 | 7/2/2030 |
| Bosch (3) | $0.21 | $0.35 | 7/2/2020 | 3,249,572 | 7/2/2030 |
| Goldman (1) | $0.25 | $0.35 | 7/2/2020 | 21,822,937 | 12/1/2030 |
| Goldman (2) | $0.25 | $0.35 | 7/2/2020 | 1,315,566 | 7/2/2030 |
| Goldman (3) | $0.21 | $0.35 | 7/2/2020 | 5,415,952 | 7/2/2030 |

44.    The options initially had different exercise prices because the Board purportedly used different metrics for each set notwithstanding the options were awarded on the same date. Per the respective Forms 4:

1) The $0.25 exercise price was determined with reference to the pricing for unrelated investors at the time of approval.

2) The $0.25 exercise price was determined with reference to the pricing for unrelated investors at the time of approval, which purportedly was in 2018.[3]

---

[3] Notwithstanding Defendants' assertions in their respective Forms 4, Plaintiff could not find any public filing in 2018 that referenced the specific number of options identified in the Forms 4.

3) The $0.21 exercise price was determined in January 2020 based upon the pricing of year-end financings with unrelated investors.

45.    Notwithstanding the disclosures in the Forms 4, the Company, in its Definitive Schedule 14A Proxy Statement filed with the SEC on April 16, 2021 (the "2021 Proxy"), lists a different, $0.35 exercise price for the options underlying each award.

46.    In its response to Plaintiff's demand for books and records pursuant to 8 *Del. C.* § 220 (the "220 Demand") via letter dated July 9 2021 (the "Response Letter"), the Company claimed that this difference in exercise price was "not remarkable" and that "[t]he Form 4 exercise prices were those allotted when the options were initially approved, but had to be adjusted for tax law purposes by the time awarded." None of the Executive Defendants have filed an amended Form 4 to reflect the new, purported exercise price.

47.    ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████.

48.    On September 2, 2020, Powers and Goldman were granted additional

awards of 11,789,879 and 5,894,939 options, respectively (the "September Executive Options" and, together with the July Executive Options, the "2020 Executive Options"). According to the 2021 Proxy, the September Executive Options are exercisable at a price of $0.55 per share[4] and have a 10-year exercise period. As of March 31, 2021, the September Executive Options were fully vested.

49.     The 2020 Executive Options constituted a massive increase in the value of compensation paid to each of Powers, Goldman, Bosch, and Boynton:

| Name | Year | Salary | Bonus | Option Awards | Total |
|------|------|--------|-------|---------------|-------|
| Powers | 2020 | $700,000 | - | $17,317,000 | $18,017,000 |
| | 2019 | $502,000 | $300,000 | - | $802,000 |
| | 2018 | $502,000 | - | $6,698,000 | $7,200,000 |
| Goldman | 2020 | $525,000 | - | $10,548,000 | $11,073,000 |
| | 2019 | $375,000 | $200,000 | - | $575,000 |
| | 2018 | $375,000 | - | $4,186,000 | $4,561,000 |
| Bosch | 2020 | $480,000 | - | $7,494,000 | $7,974,000 |
| | 2019 | $397,000 | $100,000 | - | $497,000 |
| | 2018 | $375,000 | - | $260,000 | $635,000 |
| Boynton[5] | 2020 | $325,000 | - | $5,134,573 | $5,459,573 |
| | 2019 | $325,000 | $20,000 | - | $345,000 |
| | 2018 | $325,000 | - | $1,528,000 | $1,853,000 |

---

[4] ███████████████████████████████████████████

[5] The 2021 Proxy did not disclose information concerning compensation paid to Boynton in 2020. Boynton's 2020 compensation was calculated based on assumptions that (i) he received the same salary as in 2019 and (ii) the grant date fair value of the 18,794,191 options he was awarded on July 2, 2020, was $0.2732 per share. The $0.2732 per-share value was based on the value of Bosch's 2020 options.

50.    The Company's claim that these awards "were granted for employee performance during 2018, 2019 and 2020" (2021 Proxy at 15) fails for numerous reasons.

51.    First, as demonstrated by the above table, the Executive Defendants were already handsomely rewarded in 2018.

52.    Second, the trading price of NW Bio stock did not reflect any outstanding "performance" from 2018 until the grant date of the July Executive Options. The closing prices of NW Bio stock on January 2, 2018, and July 2, 2020, were $0.25 and $0.34, respectively, and shares consistently traded within the $0.15-$0.38 price range during this period.

53.    Third, the Company continuously failed to generate sizable revenue and operated at a loss under the management of the Executive Defendants. The Company booked its biggest loss in 2020; *i.e.*, the same year it decided to excessively remunerate the Individual Defendants:

|      | Total Revenue ($ in thousands) | Net Loss ($ in thousands) |
|------|-------------------------------:|--------------------------:|
| 2012 | 772 | 67,320 |
| 2013 | 809 | 65,789 |
| 2014 | 1,454 | 135,634 |
| 2015 | 1,739 | 114,741 |
| 2016 | 623 | 80,124 |
| 2017 | 336 | 73,143 |
| 2018 | 412 | 35,794 |
| 2019 | 2,410 | 20,812 |
| 2020 | 1,291 | 529,821 |

54.     Furthermore, the highest paid executives at NW Bio's peer companies—*i.e.*, clinical and commercial stage pharmaceutical companies—received significantly less compensation in 2020 than NW Bio's executives, even though those companies had significantly greater revenue:

| Company | 2020 CEO total compensation | 2020 Revenue (in millions) | Market Capitalization as of 2/14/2022 (in millions) |
|---|---|---|---|
| Northwest Biotherapeutics, Inc. (NWBO) | $18,017,000 | $1.3 | $894 |
| Eagle Pharmaceuticals, Inc. (EGRX) | $9,469,433 | $187.8 | $623 |
| Y-mAbs Therapeutics, Inc. (YMAB) | $8,192,780 | $20.7 | $323 |
| Deciphera Pharmaceuticals, Inc. (DCPH) | $7,794,944 | $42.1 | $531 |
| Intercept Pharmaceuticals, Inc. (ICPT) | $6,427,005 | $312.7 | $468 |
| Arcus Biosciences, Inc. (RCUS) | $5,683,300 | $77.5 | $2,067 |
| Fate Therapeutics, Inc. (FATE) | $5,600,167 | $31.4 | $3,656 |
| Molecular Templates, Inc. (MTEM) | $4,509,277 | $18.8 | $153 |

55.     As such, the compensation paid to Defendants Powers, Goldman, Boynton, and Bosch was excessive and unfair to the Company.

## III.     THE DIRECTOR DEFENDANTS ALSO RECEIVE UNFAIR OPTION AWARDS.

56.     On August 5, 2020, each of the nonemployee directors received option

grants resulting in compensation worth millions of dollars (the "2020 Director Options"):

| Name | Options | Exercise Price | Grant Date Value |
|------|---------|----------------|------------------|
| Malik | ███ | $0.34 | $ 4,123,000 |
| Jasinowski | ███ | $0.34 | $ 1,497,000 |
| Black | ███ | $0.34 | $ 1,250,000 |
| | | Average per director | $ 2,440,000 |

57.    The 2020 Director Options, which were granted in addition to the $150,000 in fees that each director receives annually, had a grant date fair value substantially larger than any compensation package the directors had received in prior years:

| Director | Year | Fees Earned or Paid in Cash | Option Awards | Total |
|----------|------|------------------------------|---------------|-------|
| Malik | 2020 | $150,000 | $4,123,000 | $4,273,000 |
| | 2019 | $150,000 | - | $150,000 |
| | 2018 | $150,000 | $1,549,000 | $1,699,000 |
| | 2017 | $150,000 | - | $150,000 |
| | 2016 | $150,000 | - | $150,000 |
| | 2015 | $150,000 | - | $150,000 |
| | 2014 | - | - | - |
| | 2013 | - | - | - |
| | 2012 | - | - | - |
| Jasinowski | 2020 | $150,000 | $1,497,000 | $1,647,000 |
| | 2019 | $150,000 | - | $150,000 |
| | 2018 | $150,000 | $837,000 | $987,000 |
| | 2017 | $150,000 | - | $150,000 |
| | 2016 | $150,000 | - | $150,000 |
| | 2015 | $150,000 | - | $150,000 |
| | 2014 | $150,000 | - | $150,000 |

| | | | | |
|---|---|---|---|---|
| | 2013 | $100,000 | - | $100,000 |
| | 2012 | $50,000 | - | $50,000 |
| **Black** | 2020 | $150,000 | $1,250,000 | $1,400,000 |
| | 2019 | $150,000 | - | $150,000 |
| | 2018 | $150,000 | $293,000 | $443,000 |
| | 2017 | $150,000 | - | $150,000 |
| | 2016 | $141,000 | - | $141,000 |

58.    The nonemployee directors' 2020 compensation vastly exceeds what similarly situated nonemployee directors are paid. Steven Hall & Partners LLP ("Steven Hall"), a compensation advisory firm, published a 2021 Director Compensation Study in which it analyzed proxy statements filed between June 1, 2020, and May 31, 2021, including those filed by a "Small Cap 200" group comprising 200 companies in the S&P SmallCap 600, which had a median market capitalization of $1.782 billion as of January 31, 2022. As of August 5, 2020, NW Bio had a market capitalization of approximately $249 million. Steven Hall found that the median compensation of a "Pro Forma Director"—*i.e.*, a director who was a chair of one committee and member of a second committee and receives both general board- and committee-related compensation—for Small Cap companies was $197,477. As such, notwithstanding that NW Bio had a market capitalization equal to only 14% of the Small Cap 200 median, it paid to its nonemployee directors *1,236% as much as what the median director in the Steven Hall study received.*

59.    In November 2021, Frederic W. Cook & Co., Inc. ("F.W. Cook"), another compensation advisory firm, published a different director compensation

report evaluating nonemployee director compensation at 300 companies of various sizes in various industries. For Small-Cap companies (*i.e.*, those with a market capitalization less than $2 billion), as NW Bio was in August 2020, F.W. Cook reported that the median nonemployee director compensation was $185,833. Accordingly, the mean compensation that the Company paid to its nonemployee directors was ***1,313% as much as what the median director in the F.W. Cook report received.***

60.    As such, the compensation paid to NW Bio's nonemployee directors in 2020 was unfair and excessive.

## IV.    THE PROCESS OF APPROVING THE UNFAIR OPTION AWARDS WAS FLAWED.

61.    It is not surprising that the unfair compensation paid to NW Bio's directors and officers was the result of a deeply flawed process, through which the Company's insiders dictated their own compensation without reference to other companies or regard for what was right for NW Bio.

62.    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



."

63. ██████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████:

██████████████████████████████████████████████████
██████████████████████████████████████████████████.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████.

64. ██████████████████████████████████████████

███████████████████████████████████████████████████

---

[6] Samuel has served as Associate Counsel of the Company since 2019 and is likely
Powers's nephew. Samuel was listed among "family members and relations" who
received common stock gifts from Powers on July 24, 2012.

███████████████████████████████████████████:



█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████.

65.    ████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████:



66.

.

67.

:



68. ████████████████████████████

69. ████████████████████████████

70. ████████████████████████████



71. ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████.

72. ███████████████████████████████

████████████████████████████████████

███████████████:

████████████████████████████████████

██████████████████████.

73. ████████████████████████████████████████████

████████████████████████████████████████████████:



████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████.

74. ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████.”

75. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



76.

77.

78.

79.

████████████████████████████████████████████████

████████████████████. The 2021 Proxy—which was filed with the SEC in April 2021, *i.e.* eight months after the 2020 Director Options were issued—also contains no indication that these awards were subject to approval by NW Bio stockholders. In contrast, the disclosures in the 2021 Proxy suggest that as of December 31, 2020, the Director Defendants already "held" 2020 Director Options.

80.    On September 3, 2020, one day after the September Executive Options were issued, ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████.

81.    ████████████████████████████████████

████████████████████████████████████████████████,
the Company had already announced the Flaskworks acquisition news, and the news that the database for the Phase III trial of DCVax®-L for Gliobastoma had been

locked was announced just a month later, on October 5, 2020. ████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████.

82.    ██████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████.

83.    As the Company disclosed in the 2021 Proxy, the September Executive Options "provided for vesting upon the earlier of March 31, 2021 or the achievement of certain performance milestones." The 2021 Proxy further confirmed that "[a]s of March 31, 2021, such options were fully vested."

84.    ██████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████.

## DEMAND FUTILITY ALLEGATIONS

85.    Plaintiff has not made a demand on the Board to institute this action because, for the reasons detailed below, any such demand would have been futile.

86.    Plaintiff has owned Company stock continuously during the time of the wrongful course of conduct and continues to hold Company stock.

87.    Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and have retained competent counsel experienced in stockholder derivative litigation.

88.    At the time this action was filed, NW Bio's Board consisted of Powers, Boynton, Malik, Jasinowski, and Black.

89.    Demand is excused as futile because each member of the Board received a material personal benefit from the challenged 2020 Executive Options and 2020 Director Options.

90.    ***Powers*** received $20,191,441 in compensation from NW Bio from the time she was promoted to CEO in 2011 through 2019. Her 2020 compensation package of $18,017,000 was, in other words, just over $2 million shy of the total compensation she received for her preceding nine years of employment. To put it another way, Powers's 2020 raise constituted a 700% increase from her $2,243,493 average annual compensation for 2011-19.

91.    ***Boynton***, similarly, materially benefited from the outsized 2020 Executive Options. His total compensation for a ten-year period between 2010-2020 was $6,547,583; *i.e.*, an average of $654,758 *per annum*. Boynton's 2020 compensation, worth $5,459,573, constituted a 734% increase over his average compensation for the prior decade.

92.    Defendants Malik, Jasinowski, and Black also received unprecedented

and excessive compensation packages for their service as nonemployee members of the Board in 2020.

93. *Malik* joined the Board in 2012 and received $2,299,000 in compensation for eight years of service until 2019. In 2020 alone, he received cash and options with a grant date fair value of $4,273,000 or almost twice as much of what he had received in the prior years. Based on the closing price of NW Bio common stock on February 7, 2022, the 2020 Director Options granted to Malik are worth $8,967,404.

94. Malik currently serves as Executive Director at The Life Science Division Ltd ("TLSD"). On May 16, 2021, TLSD filed its financial statements with United Kingdom authorities, which had been "prepared in accordance with the micro-entity provisions" applicable the companies that size. To qualify as a micro-entity at least 2 of the following conditions shall be met: (i) turnover must be not more than £632,000; (ii) the balance sheet total must be not more than £316,000; and (iii) the average number of employees must be not more than 10. According to TLSD's 2020 financial statements, its total net assets as of August 31, 2020, were £9,231, and the average number employees in 2020 "amounted to Nil". The report also lists no advances made to Malik by TLSD in 2020.

95. *Jasinowski* also joined the Board in 2012, and as of 2019 he had received $1,887,000 in total compensation. His single year compensation in 2020,

worth $1,647,000, was equal to 87% of his total prior Board compensation. Based on the closing price of NW Bio common stock on February 7, 2022, the 2020 Director Options granted to Jasinowski are worth $3,255,208.

96.     In its 2021 Proxy, the Company disclosed that Jasinowski retired in 2007. He is currently listed as an advisor to the Washington Tennis and Education Foundation. According to the tax filings of this non-profit organization, the only paid employees in 2020 were its president and chief operating officer, who received $152,859 and $5,192 in reportable compensation. Thus, it is reasonable to infer that Jasinowski receives no income from this position.  The 2021 Proxy also discloses that Jasinowski "currently serves on the board[] of directors of Procurian." While Plaintiff was not able to find any publicly available information about his compensation at Procurian, it is highly unlikely that a director compensation package at a private company would render his 2020 compensation at NW Bio immaterial.

97.     ***Black*** joined the Company in 2016 and his total compensation for 2016-2019 years was $884,000. His 2020 compensation package, worth $1,400,000, was equal to 158% of his prior years' compensation. Based on the closing price of NW Bio common stock on February 7, 2022, the 2020 Director Options granted to Black are worth $2,718,577.

98.     Black currently serves as an independent consultant in cybersecurity. He also serves as a member of the Supervisory Board of the Baltic International

Bank in Latvia. As it is the case with Malik and Jasinowski, it is highly unlikely that his compensation from these sources would render options worth $2.7 million immaterial.

99.    The 2020 Executive Options should not be separated from the 2020 Director Options for demand futility purposes. It appears that the 2020 Executive Options and 2020 Director Options were part of a *quid pro quo* scheme in which the entire Board was interested. As described above, the 2020 Executive Options and 2020 Director Options were discussed and approved at the same Board meetings.

100.    2020 was not the first time that the Executive Defendants and Director Defendants engaged in a *quid pro quo* arraignment. They engaged in the same massive stock option swap in 2018. Indeed, the only time that NW Bio's nonemployee directors get massive option awards is when they agree to give the Executive Defendants massive awards at the same time.

101.    In 2018, the Executive Defendants received the following compensation, with most of their compensation issued in the form of options:

| Name | Salary | Option Awards | Total |
|---|---|---|---|
| Powers | $502,000 | $6,698,000 | $7,200,000 |
| Goldman | $375,000 | $4,186,000 | $4,561,000 |
| Bosch | $375,000 | $260,000 | $635,000 |
| Boynton | $325,000 | $1,528,000 | $1,853,000 |

102.    In turn, each of the nonemployee directors received the following

34

compensation, with most of their compensation also issued in the form of options:

| Name | Cash | Option Awards | Total |
|---|---|---|---|
| Malik | $150,000 | $1,549,000 | $1,699,000 |
| Jasinowski | $150,000 | $837,000 | $987,000 |
| Black | $150,000 | $293,000 | $443,000 |

103.    The timing of the 2018 director options was also suspiciously linked to the Convertible Notes and subsequent Forbearance Warrants. The 2018 director options were approved by Powers and Boynton in February and October 2018. The Convertible Notes were issued between February and April of 2018 and the Forbearance Warrants were initially approved in November 2018.

104.    Accordingly, as a result of this scheme, pursuant to which the Individual Defendants profited at the Company's expense, the entire Board is interested in the 2020 Executive Options and Director Options. Demand is excused.

## CLAIMS FOR RELIEF

### COUNT I
BREACH OF FIDUCIARY DUTY
*(Derivatively against the Board Defendants)*

105.    Plaintiff realleges each allegation pleaded above.

106.    By virtue of their positions on the Board, the Board Defendants owe the Company and its stockholders fiduciary duties, including the duty of loyalty.

107.   The Board Defendants breached their duty of loyalty by arranging and approving the unfair and outsized 2020 Executive Options and 2020 Director Options. As a result of these transactions each of the Board Defendants were unjustly enriched.

108.   NW Bio has been and will continue to be damaged because of the Board Defendants' actions.

109.   The Company has no adequate remedy at law.

## COUNT II
### UNJUST ENRICHMENT
*(Derivatively against all Individual Defendants)*

110.   Plaintiff incorporates by reference and realleges each allegation set forth above.

111.   The Individual Defendants received excessive and unfair equity because of the unfair and outsized 2020 Executive Options and 2020 Director Options.

112.   Accordingly, this Court should order the Individual Defendants to disgorge the proceeds obtained because of the transactions described herein.

113.   The Company has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of an order:

A.     Declaring that the arranging and approving of the transactions

described herein constituted a breach of fiduciary duties;

B.      Disgorging the unfair and excessive benefits received by the Individual

Defendants;

C.      Awarding the Company the amount of damages it sustained as a result

of the Individual Defendants' breaches of fiduciary duties, as well as pre- and post-

judgment interest;

D.      Awarding Plaintiff her costs and disbursements in this action,

including reasonable allowance of fees and costs for attorneys, experts, and

accountants; and

E.  Granting such other relief as the Court may deem just and appropriate.

> HEYMAN ENERIO
> GATTUSO & HIRZEL LLP
>
> */s/ Gillian L. Andrews*
> Kurt M. Heyman (# 3054)
> Gillian L. Andrews (# 5719)
> 300 Delaware Avenue, Suite 200
> Wilmington, DE 19801
> (302) 472-7300
>
> *Attorneys for Plaintiff Shiva Stein*

OF COUNSEL:

FIELDS KUPKA & SHUKUROV LLP
William J. Fields
Christopher J. Kupka
Samir Shukurov

1441 Broadway, 6th Floor #6161
New York, New York 10018
(T) 212.231.1500

POMERANTZ LLP
Gustavo F. Bruckner
Daryoush Behbood
600 Third Avenue, 20th Floor
New York, New York 10016
(T) 212.661.1100


Dated: February 28, 2022