# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHUNWARE, INC.,

                Plaintiff,

v.

UBS SECURITIES LLC,

                Defendant.

23 Civ. 6426 (DEH)

**OPINION AND ORDER**

DALE E. HO, United States District Judge:

On April 23, 2024, this Court issued an Opinion and Order dismissing Plaintiff Phunware, Inc.'s Complaint for failure to adequately plead loss causation. *See* Opinion and Order ("Order") at 13-16, ECF No. 30. The parties' familiarity with the facts and allegations in this matter is assumed. Now before the Court is Plaintiff's motion for leave to file an amended complaint. *See* Pl.'s Apr. 17, 2024 Letter Mot. ("Pl.'s Mot."), ECF No. 31. For the reasons stated below, Plaintiff's motion is **GRANTED**.

## LEGAL STANDARDS

Under Rule 15(a),[1] leave to amend should generally be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). This is particularly true where, as here, the district court has granted a defendant's motion to dismiss. *See, e.g.*, *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."). A court's refusal to grant leave to amend must be based on a valid ground, such as where there is "evidence of undue delay, bad faith, [or] undue prejudice to the non-movant." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *see also Forman v. Davis*, 371

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

U.S. 178, 182 (1962).  A court may also deny leave "in cases of futility of amendment," *Meyer v. Seidel*, 89 F.4th 117, 140 (2d Cir. 2023), meaning that the proposed amended complaint "fails to cure prior deficiencies . . . [and] does not contain enough factual allegations, accepted as true, to state a claim for relief that is plausible on its face."  *Dobryakov v. Brickhouse Food LLC*, No. 22 Civ. 1390, 2024 WL 218441, at *3 (S.D.N.Y. Jan. 19, 2024).

## APPLICATION

Plaintiff alleges that Defendant UBS Securities, LLC engaged in "spoofing" of Plaintiff's stock, a practice in which a market participant first places numerous false orders to artificially inflate or depress a security's price, then takes advantage of the impact to transact at the affected price, and finally cancels the initial false orders.  *See* Pl.'s Mot.  Plaintiff's spoofing claims arise under Sections 9(a)(2) and 10(b) of the Securities Exchange Act of 1934 as well as New York common law.  *See id.*  For all of Plaintiff's causes of action, Plaintiff must adequately plead: (1) a manipulative act, (2) facts to support a strong inference of scienter, and (3) loss causation.  *See* Order at 4-6; *see also Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 102 (2d Cir. 2022) (Section 10(b)); *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 80 (S.D.N.Y. 2015) (Section 9(a)); *Greentech Rsch. LLC v. Wissman*, 961 N.Y.S.2d 406, 407 (App. Div. 2013) (New York common law).  This Court dismissed Plaintiff's Complaint because, though it adequately pled a manipulative act and scienter, Plaintiff failed to adequately plead loss causation.  *See* Order at 6.  Thus, the question currently before the Court is whether Plaintiff's Proposed Amended Complaint ("PAC") sufficiently cures the deficiencies in Plaintiff's loss causation pleading.

At the outset, the Court notes that the Second Circuit has not decided whether loss causation pleadings are evaluated under Rule 9(b) or 8(a).  *See Abramson v. Newlink Genetics*

*Corp.*, 965 F.3d 165, 179 n.65 (2d Cir. 2020).  If they are evaluated under Rule 9(b)'s "heightened pleading standard," *id.*, "[t]he complaint must simply give Defendants some indication of the actual loss suffered and of a plausible causal link between that loss and the alleged misrepresentations," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 187 (2d Cir. 2015).  If Rule 9(b)'s "heightened pleading standard" does not apply, Plaintiff's allegations must meet the standard articulated in Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See, e.g., Gru v. Axsome Therapeutics, Inc.*, No. 22 Civ. 3925, 2023 WL 6214581, at *4 (S.D.N.Y. Sept. 25, 2023).  Ultimately, the applicable pleading standard is not dispositive here, because Plaintiff pleads with enough specificity to satisfy the more rigorous Rule 9(b) standard.

In *Gamma Traders*, the Second Circuit recognized two ways to plead loss causation in a spoofing case.  *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022).  Plaintiff may plead loss causation under (1) a temporal proximity theory, where "its trades occurred so close in time to [Defendant's] spoofing as to permit [the court] to infer as a matter of common sense that the market prices were artificial when [Plaintiff] traded," or (2) a long-term price impact theory, where the market price takes a protracted period of time to "return to a non-artificial level after a spoof," justifying an inference of "price artificiality during the time in which plaintiff was trading."  *Id.*; *accord Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 22 Civ. 10185, 2023 WL 9102400, at *29 (S.D.N.Y. Dec. 29, 2023*), report and recommendation adopted*, 2024 WL 620648 (S.D.N.Y. Feb. 14, 2024).  Defendant argues that Plaintiff fails to sufficiently plead loss causation under either theory.  Def.'s Apr. 26, 2024 Opp'n Letter ("Def.'s Opp'n"), ECF No. 33.  Plaintiff argues that it sufficiently pleads under both

3

theories. Pl's Mot. The Court concludes that Plaintiff has sufficiently alleged loss causation under the temporal proximity theory.

Plaintiff pleads that **on January 26, 2021**, Plaintiff sold 36,157 shares of PHUN[2] from 09:30:01.265 A.M. to 09:30:51.329 A.M., within seconds of Defendant's alleged spoofing activity, at prices ranging from $2.12 to $2.22 per share, a decline of 5% from the pre-spoofing level of $2.14 per share. Proposed Am. Compl. ¶¶ 118, 139, ECF. No. 31-3. Among these sales, Plaintiff specifically made one sale transaction at 09:30:01.265 A.M. less than one second from Defendant's spoofing activity; six executing sales at 09:30:04 A.M. within four seconds of Defendant's spoofing activity; seven executing sales at 09:30:06 A.M. within six seconds of Defendant's spoofing activity; and nine executing sales at 09:30:10 A.M. within ten seconds of Defendant's spoofing activity. PAC ¶ 118. Plaintiff further pleads that, on **October 26, 2021**, three minutes after Defendant's spoofing activity, Plaintiff sold 1200 shares of PHUN at $6.29 per share, a decline of 8.3% from the pre-spoof level. PAC ¶¶ 144-45.

Viewed in the light most favorable to Plaintiff, the instances of sales within seconds of Defendant's spoofing activity are sufficient to plead loss causation under the temporal proximity theory using a common-sense inference. *See Nw. Biotheraputics, Inc.*, 2023 WL 9102400, at *30 (holding that the 30 instances of trading within an hour of the spoofing activity were temporally proximate enough to justify a common-sense inference that plaintiff's stock sales occurred at an artificially depressed price). In contrast to *Gamma Traders*, where the plaintiff was unable to identify when it traded its stocks, here, Phunware states that it traded stocks within seconds of the spoofing, supporting a common-sense inference of loss. *Gamma Traders*, 41 F.4th at 80-81.

---

[2] PHUN is Phunware, Inc.'s stock symbol on Nasdaq. *See* https://perma.cc/977Z-5W6R.

4

Defendant argues that Plaintiff's PAC does not contain sufficient factual allegations to substantiate the claim that "the immediate price impact of the spoofing lasted long enough to have impacted Plaintiff's Same-Day Sales." Def.'s Opp'n 2. However, "a factual pleading about how long the effects of spoofing last" is not required here, because Plaintiff pleaded trades within seconds of Defendant's spoofing, which is enough to justify a common-sense inference of artificial price decline. *Gamma Traders*, 41 F.4th at 80, *see also Irrera v. Humpherys*, 859 F.3d 196, 198 (2d Cir. 2017) (explaining that "[j]udges . . . rely on their 'experience and common sense'" in "draw[ing] the line between speculative allegations and those of sufficient plausibility to survive a motion to dismiss" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009))).

Defendant also argues that Plaintiff has failed to plead loss causation as to any of its sales because it fails to explain why Plaintiff's share price declines are not caused by other events, such as Plaintiff's sale of its own shares on the same day. Def.'s Opp'n 4. In light of the discussion above, however, this argument fails because "[t]he effects of spoofing pose questions of fact," and a plaintiff at this stage is only required to "allege *some* facts that support an inference of actual injury." *Gamma Traders*, 41 F.4th at 80. Defendant's proposed alternative explanations for PHUN's share price decline poses a fact question, and a plaintiff need not disprove alternative theories at this stage.

Defendant further argues that Plaintiff's factual allegations are internally conflicting and thus entitled to no weight because Plaintiff alleges the stock price to be "continually declining yet trending up on the Same-Day sales," and that Defendant was selling shares when the stock price was artificially deflated. Def.'s Opp'n 3. However, Plaintiff pleads that Defendant's spoofing episodes caused "a price decline followed by a *partial* reversion that provided Defendant an opportunity to profit from its purchases (including Executing Purchases) at

5

depressed prices. Following the *partial* reversion, PHUN's share price stabilized, but at a *still depressed* level." PAC ¶ 125. "In reviewing a decision to dismiss a complaint on Rule 9(b) grounds, [the court] assume[s] the truth of plaintiffs' allegations." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676-77 (2d Cir. 1991). Granted, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001). However, Plaintiff's partial rebound theory is based on plausible factual allegations, and the Court's ability to take notice of conflicting statements does not extend to resolving fact questions against the Plaintiff at this stage. Plaintiff's PAC sufficiently pleads loss causation.

Accordingly, because Plaintiff sufficiently pleads loss causation under the temporal proximity theory, the Court concludes that leave to amend is proper. As this stage, however, the Court finds it unnecessary to determine whether the Plaintiff sufficiently pleads long-term price impact. The Court's decision is therefore without prejudice to motions practice with respect to any alleged injury under the long-term price impact theory (or any other issues not addressed in this Opinion).

For the reasons stated above, Plaintiff's motion for leave to amend is **GRANTED**. Plaintiff shall file an Amended Complaint by **December 2, 2024**. Parties shall appear at an initial pretrial conference with the Court on **January 15, 2025, at 11:00 A.M**. **EST** and shall file a joint status letter and proposed Civil Case Management Plan by **January 8, 2025**. A Notice of Initial Pretrial Conference containing details for joining the conference and directions for the joint status letter shall issue separately.

6

The Clerk of the Court is respectfully directed to terminate ECF No. 31.

Dated: November 26, 2024
       New York, New York

                                        DALE E. HO
                              United States District Judge