UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTHWEST BIOTHERAPEUTICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CANACCORD GENUITY LLC, CITADEL SECURITIES LLC, G1 EXECUTION SERVICES LLC, GTS SECURITIES LLC, INSTINET LLC, LIME TRADING CORP., AND VIRTU AMERICAS LLC,<br><br>Defendants. | Case No. 1:22-cv-10185 (GHW) (GS) |

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants respectfully submit this response to Plaintiff Northwest Biotherapeutics, Inc.'s ("NWBO") Notice of Supplemental Authority (ECF No. 166, the "Notice") regarding Judge Ho's order granting plaintiff's motion to amend in *Phunware, Inc. v. UBS Securities LLC*, No. 1:23-cv-06426-DEH, ECF No. 34 (S.D.N.Y.) (Ho, J.) ("*Phunware II*").

NWBO's reading of *Phunware II* is exactly wrong. Rather than supporting NWBO's theory of loss causation, it directly undermines it. In *Phunware I*, Judge Ho considered spoofing allegations materially identical to NWBO's—that were authored by the same attorneys—and dismissed the complaint because the alleged rapid price reversion after the spoofing episodes foreclosed any plausible theory of loss causation. 2024 WL 1465244, at *7 (S.D.N.Y. Apr. 4, 2024). Only after the *Phunware* plaintiff amended to specifically allege what NWBO could not—

sales "within seconds" of alleged spoofing episodes—was Judge Ho able to find loss causation adequately pled under *Gamma Traders*' temporal proximity requirement. *Phunware II* at 4.[1]

*Phunware II* affirms a central premise outlined in Defendants' motion to dismiss—"that spoofing's effects last seconds"—and both before and after *Phunware II*, no court has ever accepted NWBO's theory that the price impact of spoofing lasts an entire hour. Judge Ho's careful analysis thus further exposes the fundamental defects in NWBO's theory of loss causation, and why its Second Amended Complaint should be dismissed.

**First,** *Phunware II* found that sales "within seconds" of the alleged spoofing established loss causation under a temporal proximity theory. And the precision and immediacy of *Phunware*'s amended allegations were critical to the court's analysis. The *Phunware* plaintiff did not merely allege trades occurred within an hour or within a trading day of the alleged spoofing. Instead, Phunware provided a detailed chronology of sales and spoofs occurring in rapid succession:

> "Plaintiff sold 36,157 shares of PHUN from 09:30:01.265 A.M. to 09:30:51.329 A.M., ***within seconds*** of Defendant's alleged spoofing activity . . . Plaintiff specifically made one sale transaction at 09:30:01.265 A.M. ***less than one second*** from Defendant's spoofing activity; six executing sales at 09:30:04 A.M. ***within four seconds*** of Defendant's spoofing activity; seven executing sales at 09:30:06 A.M. ***within six seconds*** of Defendant's spoofing activity; and nine executing sales at 09:30:10 A.M. ***within ten seconds*** of Defendant's spoofing activity." *Phunware II* at 4 (emphasis added).

---

[1]   Phunware's proposed amended complaint included a table identifying these alleged sales "within seconds" of defendant's purported spoofing, and did not even attempt to allege loss causation for plaintiff's sales more than five minutes after the alleged "Executing Purchase." *See* Proposed First Am. Compl. ¶¶ 118-19, *Phunware*, No. 23-cv-06426, ECF No. 31-3 (S.D.N.Y. Apr. 17, 2024).

2

Citing specifically to these allegations of near-simultaneous sales "within seconds" of the spoof, Judge Ho found plausible a common-sense inference that artificial prices persisted when plaintiff traded. *Id.*

NWBO makes no such allegations. Instead of sales "within seconds," of a spoof, NWBO tries to conjure "temporal proximity" for sales at prices determined an *entire hour* after the spoof. ECF No. 150 ¶ 307. Unlike the *Phunware* plaintiff, out of thousands of claimed spoofing episodes alleged by NWBO, only thirty-one occurred within the last hour of trading, and just *three* occurred in the last five minutes of the day. ECF No. 157-9. NWBO does not allege a single spoofing episode occurred within the critical seconds-long window that *Phunware II* found necessary to establish loss causation. *See id.*; *Phunware II* at 4. This is dispositive.

NWBO's assertion that *Phunware II* "directly rejected" any requirement of near-simultaneous trading (Notice at 2-3) is wrong. Nothing in Judge Ho's opinion suggests that allegations of trades separated by minutes, hours, or days could satisfy *Gamma Traders*' temporal proximity requirement. Though Phunware alleged a sale three minutes after purported spoofing, Judge Ho found that it was the "instances of sales *within seconds* of Defendant's spoofing activity" that permitted a finding of loss causation. *Phunware II* at 4 (emphasis added). As Defendants here explained in their motion to dismiss, this is precisely in line with the uniform finding of courts and academics: that spoofing's effects last seconds—not longer. Defs.' Mem. of Law, ECF No. 156, "MTD" at 12-13, 15. Accordingly, NWBO's inability to allege sale prices determined "within seconds" of the purported spoofing is fatal to its complaint.

**Second**, NWBO argues that *Phunware II* supports a finding that "partial reversion" is compatible with its allegations that Defendants profited after NWBO's price quickly reverted. Notice at 3-4. Not so for NWBO, which has attempted to allege both that the market for NWBO

3

stock was efficient and that the price did not fully revert after the spoofing was over. This inherent contradiction dooms NWBO's claims but was not at issue in *Phunware II*.

In *Phunware II*, Judge Ho did not need to—and did not—resolve any contradiction between efficient market allegations and "partial reversion" allegations, because the efficiency of the market was not at issue in that action. *See generally* Mem. of Law in Support of Mot. to Dismiss, *Phunware*, 23-cv-06426, ECF No. 22 (S.D.N.Y. Oct. 6, 2023). But here, NWBO's allegations that it trades in an efficient market are irreconcilable with its claim that the price reverted partially from the purported spoofing in the minutes, hours, and days between the alleged spoofing and when its sale price was determined. MTD at 10. Simply put, while Judge Ho may have found allegations of partial price reversion compatible with an efficient market in the "seconds" after the spoofing in *Phunware II*, the same cannot be said for prices that remained depressed minutes, hours, or days later.

In any event, while Judge Ho found the partial reversion theory in *Phunware II* was "based on plausible factual allegations" (*Phunware II* at 6), NWBO's own allegations conclusively refute any plausible claim of persistent artificial pricing in this case (*see* MTD at 11-12, 16-17), because it consistently alleged that its stock price did not revert only "partially" but instead to prices at or better than the alleged pre-spoofing price. *See id.*

**Third**, NWBO argues *Phunware II* found that the plaintiff need not account for potential alternative causes of the stock price declines—specifically, Phunware's own sales of shares—at the pleading stage. Notice at 4. But in *Phunware II*, Judge Ho declined to analyze alternative explanations for price movements precisely because plaintiff had established the prerequisite showing of loss causation through specific allegations of trades executed within seconds of the alleged manipulation—an allegation wholly absent from the Second Amended Complaint here.

4

*Phunware II* at 5.  Because NWBO did not (and cannot) allege trades "within seconds" of alleged spoofing, its allegations make no plausible connection between the alleged spoofing and NWBO's sale prices, as it must to establish loss causation.  The Court should consider the complete factual context here—including NWBO's well-documented operational challenges, regulatory issues, and dilutive share issuances—in assessing whether NWBO has alleged a cognizable theory of loss causation.  MTD at 5 & n.5.

Indeed, the broader context powerfully reinforces why NWBO's claims fail as a matter of law.  While Phunware's stock price declined during the relevant period, NWBO's stock price more than doubled despite the alleged manipulation—a fact fundamentally at odds with any claim of artificial price suppression.  This price appreciation occurred against a backdrop of significant corporate developments that provide obvious explanations for NWBO's stock price movements, none of which NWBO attempts to disentangle from its theory of spoofing-induced harm.

**Finally**, *Phunware II* cannot help NWBO overcome the other fatal flaws identified in Defendants' Motion to Dismiss, including that (i) its own alleged Spoofing Episodes show its stock price reverting prior to close and reflect facial deficiencies (MTD at 20-21); (ii) the "formulas" NWBO alleges connect the closing price to its sale price are insufficiently alleged (*id.* at 22); (iii) not a single alleged spoofing episode satisfies every element of a market manipulation claim (*id.* at 23-24); and (iv) NWBO's loss causation allegations undermine its reliance and scienter allegations (*id.* at 24-25).  Nor can *Phunware II* support NWBO's long-term price impact allegations (MTD at 15-20), as Judge Ho made no determination regarding that theory (*Phunware II* at 6).[2]

---

[2]  Judge Ho previously found such a theory was at "odds with the Complaint's allegations of how Defendant profited from its spoofing activity during the episodes." *Phunware I* at *7.

\*                             \*                             \*

The procedural history of *Phunware* powerfully demonstrates why NWBO's Second Amended Complaint fails to plead loss causation. *Phunware II*'s holding that sales "within seconds" of spoofing are sufficient to establish temporal proximity is consistent with academic literature and what NWBO's lawyers themselves call the "methodology utilized by the government and accepted by the courts to analyze loss causation in spoofing cases." MTD at 13-14. NWBO urges this Court to be the first to find that the effects of spoofing last an entire hour, when no court has ever found the effects of spoofing last more than a few seconds. Because NWBO has had three attempts to allege such temporally proximate sales and has failed to do so, *Phunware II* further supports dismissal with prejudice.

| | |
|---|---|
| Dated: December 6, 2024<br>New York, New York | Respectfully submitted,<br><br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br><br> /s/ *William A. Burck* <br>William A. Burck<br>Christopher G. Michel (admitted *pro hac vice*)<br>1300 I Street NW, Suite 900<br>Washington, D.C. 20005<br>Tel: 202-538-8000<br>Fax: 202-538-8100<br>williamburck@quinnemanuel.com<br>christophermichel@quinnemanuel.com<br><br>Christopher D. Kercher<br>Daniel R. Koffmann<br>Jesse Bernstein<br>Peter H. Fountain<br>Leigha Empson<br>51 Madison Ave., 22nd Floor<br>New York, New York 10010<br>Tel: 212-849-7000<br>Fax: 212-849-7100<br>christopherkercher@quinnemanuel.com<br>danielkoffmann@quinnemanuel.com<br>jessebernstein@quinnemanuel.com<br>peterfountain@quinnemanuel.com<br>leighaempson@quinnemanuel.com<br><br>*Attorneys for Defendant Citadel Securities LLC* |

**MORRISON & FOERSTER LLP**

 /s/ *Anthony S. Fiotto* (with permission)
Anthony S. Fiotto
Julia C. Koch
200 Clarendon Street
Boston, MA 02116
Telephone: 617-648-4700
Facsimile: 617-830-0142
Email: AFiotto@mofo.com
Email: JKoch@mofo.com

Eric D. Lawson
250 West 55th Street
New York, NY 10019
Telephone: 212-336-4067
Facsimile: 212-468-7900
Email: ELawson@mofo.com

*Attorneys for Defendant Canaccord Genuity LLC*

**KATTEN MUCHIN ROSENMAN LLP**

 /s/ *Peter G. Wilson* (with permission)
Peter G. Wilson
Christian T. Kemnitz (admitted *pro hac vice*)
Leigh Brissenden (admitted *pro hac vice*)
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
peter.wilson@katten.com
christian.kemnitz@katten.com
leigh.brissenden@katten.com

*Attorneys for Defendant GTS Securities LLC*

**GREENBERG TRAURIG, LLP**

 /s/ *Richard A. Edlin* (with permission)
Richard A. Edlin
Daniel P. Filor
Nicholas T. Barnes
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
edlinr@gtlaw.com
filord@gtlaw.com
barnesn@gtlaw.com

*Attorneys for Defendant Instinet, LLC*

**KEESAL, YOUNG & LOGAN**
A Professional Corporation

 /s/ *Stephen Young* (with permission)
Jon W. Zinke
Stephen Young (admitted *pro hac vice*)
Elizabeth H. Lindh (admitted *pro hac vice*)
400 Oceangate Avenue, Suite 1400
Long Beach, California  90802
Telephone:  (562) 436-2000
jon.zinke@kyl.com
steve.young@kyl.com;
elizabeth.lindh@kyl.com

*Attorneys for Defendant Lime Trading Corp.*

| | |
|---|---|
| **BALLARD SPAHR LLP** | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
| /s/ *Marjorie J. Peerce* (with permission)<br>Marjorie J. Peerce<br>1675 Broadway, 19th Floor<br>New York, NY 10019-5820<br>Tel: (212) 223-0200<br>Fax: (212) 223-1942<br>peercem@ballardspahr.com<br><br>Norman Goldberger (*pro hac vice* forthcoming)<br>Laura Krabill (*pro hac vice*)<br>J. Chesley Burruss<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>Tel: (215) 665-8500<br>Fax: (215) 864-8999<br>goldbergerm@ballardspahr.com<br>krabilll@ballardspahr.com<br>burrussc@ballardspahr.com<br><br>*Attorneys for Defendant*<br>*G1 Execution Services LLC* | /s/ *Andrew G. Gordon* (with permission)<br>Andrew G. Gordon<br>Audra J. Soloway<br>Jessica S. Carey<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>Phone: (212) 373-3000<br>Fax: (212) 757-3990<br>agordon@paulweiss.com<br><br>*Attorneys for Defendant Virtu Americas LLC* |