| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>295 Fifth Ave<br>New York, New York 10016<br>Tel.: (212) 849-7000<br>Fax: (212) 849-7100 | SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Tel.: (212) 455-0000<br>Fax: (212) 455-2502 | COHEN MILSTEIN SELLERS & TOLL PLLC<br>88 Pine Street, 14th Floor<br>New York, NY 10005<br>Tel.: (212) 838-7797<br>Fax: (212) 838-7745 |
|---|---|---|

June 16, 2025

**VIA ECF**

Hon. Gary Stein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 9A
New York, NY 10007

Re:   *Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC, et al.*,
          No. 1:22-cv-10185-GHW-GS

Dear Magistrate Judge Stein:

We write jointly on behalf of Plaintiff Northwest Biotherapeutics Inc. ("NWBO") and all Defendants[1] (together, the "Parties") to submit to the Court the Parties' outstanding disputes regarding the ESI Protocol.

The Parties have reached agreement on certain, but not all, aspects of the ESI Protocol.[2] Pursuant to the Court's instruction during the Initial Case Management Conference (ECF No. 216 at 21:21-22:19), the Parties' positions on the disputed issues are set forth below[3] and reflected in the Parties' proposed ESI Protocols, which are attached as Exhibits 1 (Defendants) and 2 (Plaintiff).

      **A.**    **ESI Data Fields To Be Included In Forthcoming Productions Of Trading and Order Data**

**NWBO'S POSITION**

While the Parties have agreed on the data fields to be provided for certain forms of ESI (*see* Appendix A), and Defendants have agreed to produce trading and order data "with the relevant

---

[1]  Defendants are Canaccord Genuity LLC, Citadel Securities LLC, G1 Execution Services LLC, GTS Securities LLC, Instinet LLC, Lime Trading Corp., and Virtu Americas LLC.

[2]  The Parties held meet and confers via Zoom on May 7, 2025 and June 3, 2025, exchanged several drafts of the ESI Protocol, and appeared before Your Honor on June 5, 2025 for a Case Management Conference.

[3]  Consistent with Rule II.C of Your Honor's Individual Practices, the Parties have each devoted no more than three single-spaced pages to their respective positions.

data fields maintained by the producing party in the ordinary course," Defendants refuse to agree to produce any specific ESI data fields or even a data dictionary that defines those ESI data fields ("Trading Data Field Detail"). Indeed, despite multiple opportunities and requests to do so, Defendants even refuse to identify which proposed ESI Trading Data Field Detail they deem "irrelevant" or burdensome to produce. The ESI Protocol should require Defendants to produce Trading Data Field Detail for all trading and order data to the extent they were maintained in the normal course of business and are responsive to Plaintiff's requests.

First, this Court has made clear "the importance of counsel fashioning clear and comprehensive agreements when navigating the perils and pitfalls of electronic discovery" before the start of production. *See We the Protesters, Inc. v. Sinyangwe*, 2024 WL 5154077 (S.D.N.Y. 2024) (Stein, M.J.). To that end, in both Plaintiff's Requests for Production served more than a month ago on May 13, 2025, and in connection with the parties meet and confers on this protocol, Plaintiff provided to Defendants the Trading Data Field Detail (attached hereto as Exhibit 3). Defendants refused to negotiate or even discuss this Trading Data Field Detail during any of the parties' meet and confers. Notably, however, in their responses and objections to Plaintiff's request for production of trading and order data, Defendants state that they will only provide the information and fields agreed to in the ESI Protocol.[4] *See, e.g.,* Instinet R&O ("To the extent Instinet produces documents or communications in this Action, Instinet will produce said documents and/or communications in accordance with a mutually-agreeable or Court-ordered ESI stipulation."); GTS R&O ("GTS objects to the Requests to the extent they purport to require GTS to identify, retrieve, and produce documents other than as agreed in the Stipulated Agreement and Order Regarding Protocol for Electronically Stored Information ("ESI Protocol") entered in this Action."); G1X R&O ("G1X's document productions will be in accordance with a mutually-agreeable or Court-ordered ESI stipulation."). As such, it is critical that the ESI Protocol address the Trading Data Field Detail.

Second, Defendants have not identified any particular aspect of Plaintiff's proposed Trading Data Field Detail as being burdensome or irrelevant to the claims and defenses in this action, nor could they.[5] To be clear, Plaintiff is only seeking data fields that are relevant and responsive to Plaintiff's requests for production. But, Defendants have not identified any of the Trading Data Field Detail as irrelevant or burdensome, choosing instead to improperly punt that question to a later undefined time (while simultaneously objecting to Plaintiff's document requests as exceeding the scope of this protocol). Notably, it is axiomatic – and, indeed, required under federal regulations – that Defendants' trading and order flow systems contain the Trading Data Field Detail and that Defendants maintain the Trading Data Field Detail in the normal course of

---

[4] Defendants' reference to Plaintiff's production of *Defendants' trading data* is not relevant at all to this dispute – the only "trading data" at issue is Defendants' trade and order activity. The only trading data of Defendants that Plaintiff has is trading data Plaintiff received from OTC Markets and NYSE Global OTC subject to a license agreement prohibiting its distribution and which equally (if not more so) available to Defendants.

[5] Defendants assert for the first time in this letter that "data fields maintained by Defendants ***could include*** fields like the price or FX rate of foreign stocks," but this only illustrates that Defendants continue to decline to even identify any Trading Data Field Detail that they do or do not in fact maintain or believe is irrelevant to Plaintiff's claims.

2

business given its essential nature to Defendant's trading systems for production to regulators.  *See* 17 C.F.R. 240.17a-3.[6]  As such, there can be no burden to its production here.

Moreover, the prospect of Plaintiff receiving seven different sets of trading and order data with seven different sets of different and undefined and unexplained data fields necessitates that the Court require the production of this critical information.

Finally, there can be no justifiable reason for Defendants to not provide the dictionaries, keys or other code explanations relevant to Defendants' trading and order data and maintained in the normal course of business, as without such information, the data fields and codes are meaningless and undecipherable.  The purpose of an ESI protocol is to prevent the very piecemeal ESI requests and negotiations that would inevitably result under Defendants' proposal, and would lead to significant additional delays, costs and disputes between the parties.

**DEFENDANTS' POSITION**

Defendants have agreed to include relevant data fields maintained in the ordinary course of business in their productions of trading and order data.  However, NWBO's demand that Defendants produce "all data fields"—regardless of relevance—for every trading data production (Ex. 2 ¶ 4.3) is both legally impermissible and practically unworkable.[7]

It is a fundamental principle that litigants must only produce material relevant to a party's claims or defenses.  Fed. R. Civ. P. 26(b)(1).  That should end this dispute.  NWBO has articulated no basis to require the production of non-relevant data fields for every single trading and order dataset produced, and there is none.  *See, e.g.*, *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1996 WL 22976, at *2 (S.D.N.Y. Jan. 23, 1996) (denying request that would require "defendants to 'dump' their computer files including irrelevant data"); *O'Garra v. Northwell Health*, 2018 WL 502656, at *5 (E.D.N.Y. Jan. 22, 2018) (denying request for entire personnel files where the full files "likely contain irrelevant information").  For example, data fields maintained by Defendants could include fields like the price or FX rate of foreign stocks, which are clearly irrelevant in this litigation concerning NWBO stock.  NWBO's citation to *We the Protesters, Inc. v. Sinyangwe*, 2024 WL 5154077 (S.D.N.Y. 2024) (Stein, M.J), offers NWBO no support.  In that case, the Court observed that parties would be well-served to come to an agreement regarding the production of text messages (which the parties here have done); the Court did not hold that parties should be forced to produce vast amounts of irrelevant information in data dumps for no articulated basis.  To the extent there is a disagreement among the Parties regarding whether certain data fields are relevant, the Parties can meet and confer regarding those specific fields in the context of specific data sets

---

[6] The ESI Protocol could alternatively state that Defendants are to produce all ESI data fields required to be kept and maintained under 17 C.F.R. 240.17a-3.

[7]  NWBO makes reference to Exhibit 3, which sets forth a laundry list of 50 data fields to be provided with trading and order data, but NWBO's proposed ESI Protocol makes reference only to "all data fields" maintained in the ordinary course of business, without limitation. Ex. 2 ¶ 4.3; *see also id.* ¶ 7.2(ii).  Further, despite NWBO's purported position that it only seeks "fields that are relevant and responsive to Plaintiff's requests for production," NWBO rejected Defendants' proposed language in the ESI Protocol providing that Defendants would produce "relevant" data fields.

3

at the appropriate time. But NWBO should not be permitted to use the ESI Protocol to circumvent its obligation to request only relevant information.

NWBO's attempt to incorporate Exhibit 3 (originally attached to its requests for production) into the ESI Protocol is procedurally improper and substantively unreasonable. The ESI Protocol governs production formats and processes—not the scope of substantive discovery, which should be addressed through meet-and-confer discussions in the context of the discovery requests. Exhibit 3 itself represents an extraordinary overreach, demanding 50 distinct data fields for "every" trading and order data production regardless of relevance. This includes impermissibly broad categories prefaced with "all information available" and "any and all" qualifiers, as well as technical specifications that would require Defendants to create new datasets and attempt to manufacture information—demands that contravene the applicable rules.

NWBO mischaracterizes Defendants' discovery responses—asserting that "Defendants refuse to agree to produce any specific data fields"—in an attempt to bootstrap its unreasonable demands into the ESI Protocol. Defendants have agreed to produce *relevant* data fields, but cannot agree to a unified set of fields in the abstract because data is maintained in different formats and some data is maintained by third-parties. NWBO's argument further establishes that the ESI Protocol is the wrong vehicle for defining what substantive data fields must be produced; those determinations should be made in the context of specific document requests after assessing relevance and proportionality. And NWBO's claim rings particularly hollow given NWBO's own indefensible position that it will not produce the trading data it relied on for its allegations in the Complaint.

Further, although Defendants agreed that NWBO "may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields" (Ex. 2 ¶ 4.3), NWBO demands that Defendants produce "code explanations" or other information, again regardless of their relevance to the litigation and without consideration of proportionality. NWBO is entitled to seek relevant and proportionate discovery from Defendants, but its attempts to use the ESI Protocol to bootstrap in additional requirements that Defendants be required to search for and produce vague and sweeping information, such as "[i]nformation on how to connect messages together for a complete view of an order's lifecycle" and "any other relevant information relating to data production" should be rejected. *See, e.g.*, *Weisshaus v. Port Auth'y of N.Y. and N.J.*, 2024 WL 3904591, at *2 (S.D.N.Y. Aug. 22, 2024) (production sufficient where "Defendant complied with Rule 34 by producing spreadsheets from the General Ledger in the form in which they are ordinarily maintained, and, in any event, nothing indicates that the spreadsheets provided to Plaintiff are not in a reasonably usable form."); *Babakhanov v. Ahuja*, 2023 WL 6977394, at *2 (S.D.N.Y. Oct. 23, 2023) (similar); *Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, No. 1:18-cv-04476-LJL-JW, ECF No. 243 (Discovery Conference Transcript) at 15:14-17 ("requiring the City to resort the data in the way that you want it if it is not kept that way in the ordinary course, that's beyond what the rules require").[8]

---

[8]   *See also, e.g., Barton Grp., Inc. v. NCR Corp.*, 2009 WL 6509348, at *1 (S.D.N.Y. July 22, 2009) ("Defendant is only required to produce documents that exist; it has no obligation to create documents . . . . If, on the basis of those records, plaintiff cannot figure out what claims it is owed, or cannot otherwise prove its case, that is not defendant's fault."); *R.F.M.A.S., Inc. v. So*, 271

B.     **Pre-Litigation Communications With Counsel And Work Product**

**NWBO'S POSITION**

Defendants propose that the Parties must engage in the resource-intensive process of logging privileged pre-filing communications with their outside counsel regarding and in anticipation of this action. Defendants' proposal is both unnecessary and burdensome since such communications are inherently privileged and logging them will not further any reasonable discovery interest in this case. Plaintiff proposes instead that the Parties need not create or produce privilege logs for privileged communications with their counsel in anticipating of this action or protected work product regarding this action.

Contrary to Defendants' assertion, notably bereft of any citation, communications with outside counsel for the purpose of legal advice regarding a potential claim and work product conducted in anticipation of the filing of a claim, are not subject to production, regardless of whether they might somehow be relevant to a claim. Indeed, Defendants concede as much, acknowledging that parties in litigation regularly agree not to require the logging of such communication in order "to reduce the burden associated with continuously logging privileged communications with counsel about the litigation as it goes on." Further, as even Defendants cited cases acknowledge, requiring parties to log such communications would be "wasteful." There is no magical bright line when a complaint is filed that suddenly transforms the logging of such privileged communications and work product into wasteful and burdensome, whereas forcing a party to do so prior to the filing of a complaint, but in preparation for such a filing, is not.

**DEFENDANTS' POSITION**

Defendants propose the standard practice of not logging communications with outside counsel dated after litigation commenced. Ex. 1 ¶ 9.3. On Thursday, June 12, NWBO for the first time took the position that the Parties should not have to log *any* communications with outside counsel in this action or work product created for this litigation, even for communications or work product that pre-dated the filing of this litigation. Ex. 2 ¶ 9.3. This overbroad position would shield potentially crucial information and run contrary to the long-standing practices of courts in this Circuit.

Parties are required to log responsive privileged communications as a general rule. Local Rule 26(a). However, "as a matter of convention, litigation counsel of record often stipulate informally that neither party need prepare a privilege log with respect to communications with litigation counsel that occurred *after the lawsuit commenced*." *Safety Mgmt. Sys. v. Safety Software Ltd.*, 2011 WL 4898085, at *5 (S.D.N.Y. Oct. 5, 2011) (emphasis added). Such

---

F.R.D. 13, 44 (S.D.N.Y. 2010), *adopted*, 271 F.R.D. 55 ("The [federal rules] do not provide any obvious basis for plaintiff to serve defendants with a request to create new documents to help plaintiff understand the existing evidence . . . . the Federal Rules evince a concern that discovery tools not be used to unduly shift the burden of analyzing evidence from the requesting party to the responding party."); *Nunez v. City of N.Y.*, 2013 WL 2149869, at *6 (S.D.N.Y. May 17, 2013) ("[A] request for documents does not include the obligation to create information o[r] documents which a party does not control or posses[s].") (citation omitted).

agreements are intended to reduce the burden associated with continuously logging privileged communications with counsel about the litigation as it goes on.  *See, e.g.*, *Towner v. Cnty. of Tioga*, 2018 WL 1089738, at *6 (N.D.N.Y. Feb. 27, 2018) ("[P]arties should not be required to list on a privilege log, on an ongoing basis, communications between attorney and client *once litigation has commenced*.") (emphasis added); *see also Maruzen Intern. Co., Ltd. v. Bridgeport Merchandise, Inc.*, 1991 WL 130170, at *3 (S.D.N.Y. July 10, 1991) ("it would be wasteful to require counsel to log every document produced by counsel *after the litigation had commenced*") (emphasis added).

      The critical distinction is timing:  pre-litigation communications may contain information directly relevant to this case, but are likely limited in number such that their probative value outweighs the burden of logging them.  Pre-litigation communications regarding Defendants' purported spoofing are relevant at least to the elements of manipulative acts and damages, and the timing of such communications may also be relevant to NWBO's purported reliance on a market free of spoofing at the time of its relevant sales.  Indeed, the timing of when parties first sought legal advice about potentially manipulative trading is itself highly relevant evidence.  Despite NWBO's assertions that such pre-litigation communications and documents are "inherently privileged," the question here is whether they should be logged.  They should; the Parties should be permitted to test NWBO's assertions of privilege as to pre-litigation documents, as is standard and consistent with the rules.

Respectfully submitted,

*/s/ Laura H. Posner* (with permission)
Laura H. Posner
Michael B. Eisenkraft
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
lposner@cohenmilstein.com
meisenkraft@cohenmilstein.com

Raymond M. Sarola
COHEN MILSTEIN SELLERS & TOLL PLLC
100-120 N. 18th Street, Suite 1820
Philadelphia, PA 19103
Tel: (267) 479-5700
Fax: (267) 479-5701
rsarola@cohenmilstein.com

*Counsel for Plaintiff Northwest Biotherapeutics, Inc.*

*/s/ William A. Burck*
William A. Burck
Christopher G. Michel (admitted *pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
christophermichel@quinnemanuel.com

Christopher D. Kercher
Jesse Bernstein
Peter H. Fountain
Leigha Empson
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, New York 10016
Tel: 212-849-7000
Fax: 212-849-7100
christopherkercher@quinnemanuel.com
jessebernstein@quinnemanuel.com

peterfountain@quinnemanuel.com
leighaempson@quinnemanuel.com

Jonathan K. Youngwood
jyoungwood@stblaw.com
Stephen P. Blake
sblake@stblaw.com
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York  10017
Telephone: (212) 455-0000
Facsimile:  (212) 455-2502

*Counsel for Defendant Citadel Securities LLC*


*/s/ Anthony S. Fiotto* (with permission)
Anthony S. Fiotto
Julia C. Koch
Morrison & Foerster LLP
200 Clarendon Street
Boston, MA 02116
Telephone: 617-648-4700
Facsimile: 617-830-0142
Email: AFiotto@mofo.com
Email: JKoch@mofo.com

Eric D. Lawson
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
Telephone: 212-336-4067
Facsimile: 212-468-7900
Email: ELawson@mofo.com

*Counsel for Defendant Canaccord Genuity LLC*

*/s/ Marjorie J. Peerce* (with permission)
Marjorie J. Peerce
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Tel: (212) 223-0200
Fax: (212) 223-1942
peercem@ballardspahr.com

Norman Goldberger (*pro hac vice* forthcoming)
Laura Krabill (admitted *pro hac vice*)
J. Chesley Burruss
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500
Fax: (215) 864-8999
goldbergerm@ballardspahr.com
krabilll@ballardspahr.com
burrussc@ballardspahr.com

*Counsel for Defendant G1 Execution Services LLC*


/s/ Peter G. Wilson (with permission)
Peter G. Wilson
Christian T. Kemnitz (admitted *pro hac vice*)
Benjamin C. Levine (admitted *pro hac vice*)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
peter.wilson@katten.com
christian.kemnitz@katten.com
benjamin.levine@katten.com

*Counsel for Defendant GTS Securities LLC*


/s/ Richard A Edlin (with permission)
Richard A. Edlin
Daniel P. Filor
Nicholas T. Barnes
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
edlinr@gtlaw.com
filord@gtlaw.com
barnesn@gtlaw.com

*Counsel for Defendant Instinet LLC*

/s/ *Kevin Broughel* (with permission)
Kevin P. Broughel
Zoe Lo
Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Phone: (212) 940-6343
Fax: (212) 940-8776
kevin.broughel@katten.com
zoe.lo@katten.com

*Counsel for Defendant Lime Trading Corp.*


/s/ *Andrew G. Gordon* (with permission)
Andrew G. Gordon
Audra J. Soloway
Jessica S. Carey
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
agordon@paulweiss.com

*Counsel for Defendant Virtu Americas LLC*

cc:     All counsel of record