| | | |
|---|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>295 Fifth Ave<br>New York, New York 10016<br>Tel.: (212) 849-7000<br>Fax: (212) 849-7100 | SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Tel.: (212) 455-0000<br>Fax: (212) 455-2502 | COHEN MILSTEIN SELLERS & TOLL PLLC<br>88 Pine Street, 14th Floor<br>New York, NY 10005<br>Tel.: (212) 838-7797<br>Fax: (212) 838-7745 |

June 16, 2025

**VIA ECF**

Hon. Gary Stein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 9A
New York, NY 10007

Re:   *Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC, et al.*,
       No. 1:22-cv-10185-GHW-GS

Dear Magistrate Judge Stein:

We write jointly on behalf of Plaintiff Northwest Biotherapeutics Inc. ("NWBO") and all Defendants[1] (together, the "Parties") to submit to the Court the Parties' outstanding disputes regarding the Confidentiality Stipulation and Protective Order ("Protective Order").

The Parties have reached agreement on certain, but not all, aspects of the Protective Order.[2] Four disputes remain. Pursuant to the Court's instruction during the Initial Case Management Conference (ECF No. 216 at 21:21-22:19), the Parties' positions on these disputed issues are set forth below[3] and reflected in the Parties' proposed Protective Orders, which are attached as Exhibits 1 (Defendants) and 2 (Plaintiff). Pursuant to Rule II.B of Your Honor's Individual Practices, the Parties have also attached as Exhibits 3 (Defendants) and 4 (Plaintiff) redline versions of their proposed Protective Orders, which reflect proposed changes from Your Honor's Model Stipulation and Protective Order.

---

[1]   Defendants are Canaccord Genuity LLC, Citadel Securities LLC, G1 Execution Services LLC, GTS Securities LLC, Instinet LLC, Lime Trading Corp., and Virtu Americas LLC.

[2]   The Parties held meet and confers via Zoom on May 7, 2025 and June 3, 2025, exchanged several drafts of the Protective Order, and appeared before Your Honor on June 5, 2025 for a Case Management Conference.

[3]   Consistent with Rule II.C of Your Honor's Individual Practices, the Parties have each devoted no more than three single-spaced pages to their respective positions.

### A.  Confidentiality Tiers and Procedures for Trading Algorithms and Source Code

**NWBO'S POSITION**

*Highly Confidential Designation*

Plaintiff acknowledges that Defendants have an interest in protecting their currently applicable trading algorithms and source code, as well as any other trade secrets, from competitors, including each other, and have accordingly proposed a second, "Highly Confidential" category that would cover this information and prohibit its disclosure to employees *of other Defendants*. (*See* Plaintiff's Proposal at 3, 9).

Defendants, by contrast, take the position that a "Highly Confidential" designation is required for a much broader, but unspecified and undefined, set of categories and types of documents and must be indiscriminately applied both to Defendants – who are direct competitors – and Plaintiff, despite Defendants' acknowledgement that Plaintiff does not compete in any way with any Defendant. Specifically, Defendants' proposed "Highly Confidential" designation would restrict disclosure of such discovery materials to a party's in-house counsel, hampering Plaintiff's ability to fully evaluate its claims.

The imposition of a boundless Highly Confidential category that restricts Plaintiff's officers and executives from viewing documents would have severe and detrimental implications for Plaintiff's ability to participate meaningfully in this litigation. *See Doe v. District of Columbia*, 697 F.2d 1115, 1119 (D.C. Cir. 1983) ("District courts must be equally chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor."); *DeFazio v. Hollister, Inc.*, No. Civ-5-04-1358, 2007 WL 2580633, at *2 (E.D. Cal. Sept. 5, 2007) ("Moreover, the very real specter of over-designation of attorneys' eyes only information exists, and plaintiffs should not be put in a position where they are essentially kept in the dark about the important facts of the case"); *Motorola, Inc. v. Lemko Corp.*, No. 08 CV 5427, 2010 WL 2179170, at *5 (N.D.Ill. June 1, 2010) ("there is a legitimate need for Motorola's outside counsel to be able to consult with client representatives other than lawyers.").

*Proprietary Source Code/Attorneys Eyes Only Designation*

Defendants' proposed "Proprietary Source Code" designation, would cover trading algorithms and source code that are indisputably at the core of this litigation. *See* June 5, 2025 Tr. at 41: 3-7 ("So it would seem to me, again, just off the top of my head, that -- and I think your letter indicated as much, the defendant —— the plaintiff would be entitled to see the relevant trading algorithms that may have played a role in the transactions that remain in the case."); at 42: 2-6 ("certainly, if there was a trading algorithm that was guiding transactional activity during one of the days that everybody agrees is in play, it seems to me plaintiffs are entitled to that whether the algorithm was generated during that time period or two months or two years before.")  Yet Defendants' late proposed "Proprietary Source Code" restriction first raised at 7pm this evening, would prohibit disclosure of this material not only to Plaintiff's officers and executives, but also to Plaintiff's in-house counsel and potentially to even its outside counsel or experts.  *See* Defendants' ¶ 24 (suggesting that only an independent expert could review it).

As set forth above, Plaintiff's proposed Protective Order permits a Defendant to designate trading algorithms or other trade secrets as "Highly Confidential".[4]  Defendants insist, however, that such materials must have a separate tier of confidentiality and be restricted *from not only Plaintiff's officers, but also its in-house counsel*, even though Plaintiff – a biotechnology company – is not a broker-dealer or a competitor to Defendants in any way whatsoever, and is not capable of making any commercial use at all of information regarding Defendants' trading operations.  *See ABH Nature's Prods., Inc. v. Supplement Mfg. Partner, Inc.*, 2020 WL 13542014, at *1 (E.D.N.Y. July 20, 2020) (explaining that the purpose of an attorneys' eyes only designation "is to prevent injury to the designating party flowing from disclosure of its trade secrets to a competitor.").  Restricting the Plaintiff, a non-competitor, from accessing discovery material that goes directly to the core of the merits and prosecution of this lawsuit, is entirely unnecessary and would pose a severe burden on Plaintiff's ability to prosecute this action.

As the party seeking these restrictions, Defendants have the burden to justify the restrictions, and general conclusory statements of potential harm from disclosure fail to meet this standard.  *Cerco Bridge Loans 6 LLC v. Schenker*, No. 23-CV-11093, 2024 WL 3319509, at *1 (S.D.N.Y. June 13, 2024) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test …. The moving party must establish particular and specific facts rather than conclusory assertions that justify the imposition of a protective order.") *Nanjing CIC*, 2023 WL 6958787, at *5-*7 ("To demonstrate entitlement to AEO treatment, the disclosing party must provide specific demonstrations of fact, supported where possible by affidavits and concrete examples.").  This is particularly true, where as here, Defendants' proposed restrictions would bar Plaintiff's counsel from disclosing and discussing "Proprietary Source Code" material with its client's officers, executives and in-house counsel, at a minimum.  *See, e.g., Austin v. Fordham Univ.*, No. 23 CV 4696, 2024 WL 749636 (S.D.N.Y. Feb. 23, 2024) (Stein, M.J.) at *3 ("every litigant has a powerful interest in being able to retain and consult freely with an attorney and to participate in the process whereby justice is done, rather than passively awaiting the outcome of the proceeding" and "when a party seeks a limitation in a protective order designating certain documents as 'attorneys' eyes only,' it is that party's burden to establish good cause for the AEO designation").  While Defendants reference a handful of cases in which the parties agreed to certain confidentiality restrictions, courts are hesitant to impose such restrictions over the objections of opposing parties because "an [AEO] designation…is considered the most restrictive (and thus least often justified) tier of discovery." *Nanjing CIC Int'l Co. v. Schwartz*, 2023 WL 6958787, at *5-7 (W.D.N.Y. Oct. 20, 2023).

Defendants have not and cannot meet their burden here.  Defendants have presented no reason why any "Proprietary Source Code" (or even "Highly Confidential") restrictions should apply *to Plaintiff* rather than solely to other Defendants who are direct competitors with each other, particularly where the "Confidential" designation will sufficiently protect sensitive information from public disclosure.  There is simply no trace of any competitive harm of the type courts require to enforce such extreme restrictions *against Plaintiff* and Defendants have identified none.  *Cf. Pedinol Pharmacal, Inc. v. Rising Pharmaceuticals, Inc.*, No. CV 06-2120, 2007 WL 9710392, at *1 (E.D.N.Y. Apr. 13, 2007), ("Courts have concluded that disclosure to a competitor is more harmful than disclosure to a non-competitor and therefore a more restrictive protective order is justified"); *Gerffert Co., Inc. v. Dean*, No. 09 CV 266, 2012 WL 2054243, at *5 (E.D.N.Y. Jun. 6,

---

[4] Defendants provide no substantive explanation for why stale and out of use trading algorithms or source code somehow also necessitate heightened designation.

3

2012) ("the purpose of 'Attorneys' Eyes Only' designations is generally to protect one party from injury—usually injury to the party's business—that might occur if the information is revealed to the party's competitor").

Finally, while Plaintiff agrees with Defendants that ensuring that there is no "unauthorized disclosures of protected information" is the goal of any protective order, Defendants do not explain – and their cited cases provide no support – for why the tiers proposed by Plaintiffs are insufficient to meet that need here.

**DEFENDANTS' POSITION**

*Confidentiality Tiers*

The Parties agree that this case requires at least a two-tier protective order. Defendants maintain, however, that both a "Highly Confidential" and a "Proprietary Source Code" tier are necessary for proper protection of highly sensitive information that could be subject to disclosure:

<u>Highly Confidential</u>. A "Highly Confidential" tier is essential for materials the producing Party in good faith believes are so sensitive that their unauthorized disclosure would result in competitive, commercial, or financial harm. Ex. 1 ¶ 3. Access to these materials should be restricted to the Parties' in-house and outside counsel, experts and other consultants, litigation vendors and court staff, any mediator or arbitrator, and persons who authored or received the document(s). *Id.* ¶ 10. Examples of Highly Confidential materials are (i) trade secrets, (ii) trading strategies, and (iii) certain customer or client lists, identities, and agreements. *Id.* ¶ 3. NWBO incorrectly frames this tier as barring its access to discovery—it does not. As is typical, in-house counsel can access all Highly Confidential material. NWBO has failed to articulate any legitimate need for its non-lawyer employees to access this sensitive business information, and this protection is particularly important here where the Defendants are competitors.

Courts routinely approve similar Highly Confidential tiers in cases involving the exchange of sensitive, proprietary business information. *See, e.g.*, Protective Order ¶ 2, *Hub Group, Inc. v. SPL Group, Inc.*, No. 1:23-cv-08728 (JGK), ECF 50 (Aug. 8, 2024) (Stein, M.J.) (Attorneys' Eyes Only tier); Protective Order ¶ 3, *In re: Deva Concepts Prods. Liab. Litig.*, No. 1:20-cv-01234-GHW, ECF 73 (Aug. 19, 2020) (Woods, J.) (Highly Confidential/Attorneys' Eyes Only tier); Joint Protective Order ¶ 2, *Zesty Paws LLC v. Nutramax Laboratories, Inc.*, No. 1:23-cv-10849, ECF 80 (Feb. 5, 2024) (Schofield, J.; Stein, M.J.) (same).

<u>Proprietary Source Code</u>. An additional confidentiality tier—"Proprietary Source Code"—is necessary for the most sensitive materials whose disclosure the producing party in good faith believes would result in *immediate and irreparable* competitive or commercial harm. Ex. 1 ¶ 4. This designation specifically protects proprietary source code used to conduct automated trading activity, including trading algorithms and the executable code underlying those algorithms. *Id.* ¶ 4. Access to these materials should be restricted to a limited group of individuals determined through the meet-and-confer procedure outlined in Section B below. Ex. 1 ¶ 24. This additional protection is not an attempt to hide evidence, but instead is necessary given the uniquely sensitive nature of source code—the "crown jewels" of Defendants' businesses.

Trading algorithms and source code are among "the most valuable assets a company possesses." *Opternative, Inc. v. Jand, Inc.*, 2019 WL 3050891, at *1 (S.D.N.Y. July 12, 2019) (citation omitted); *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016). Special protections for Defendants' algorithms and source code are vital because unauthorized

4

disclosure would cause significant, irreparable harm to their business interests, particularly given that the Defendants are competitors.

Courts across this District have recognized that source code requires special protection beyond standard two-tier confidentiality designations. *See, e.g., Kewazinga Corp. v. Google LLC*, 2020 WL 2129393, at *1 (S.D.N.Y. May 5, 2020) ("Highly Confidential—Source Code" tier); Stipulated Protective Order ¶ 8, *New York Times Co. v. Microsoft Corp.*, No. 23-CV-11195 (SHS) (OTW), ECF 127 (S.D.N.Y. May 31, 2024) (same); Revised Confidentiality Order ¶ 4, *Salsburg v. Invesco Capital Management, LLC*, No. 1:21-cv-06343, ECF 158 (N.D. Ill. Apr. 25, 2024) ("Extra Highly Confidential Information" tier for trading algorithm and source code).

NWBO's contrary arguments fail. ***First***, whether NWBO competes with Defendants is irrelevant. The primary purpose of heightened confidentiality tiers, which restrict dissemination, is to lower the risk of *unauthorized disclosures* of protected information. *See* Ex. 1 ¶¶ 3-4; Protective Order ¶ 5(d), *Hub Group,* No. 1:23-cv-08728 (JGK), ECF 50 (Stein, M.J.) (heightened designation required for documents whose "unauthorized disclosure … would result in irreparable harm to the disclosing party"); Protective Order ¶¶ 7-8, *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Markts. Corp.*, No. 1:21-cv-761-LGS-VF, ECF 111 (S.D.N.Y. Apr. 12, 2022) (similar). NWBO's cases are inapposite. Most of them (*ABH*, *Nanjing*, and *Pedinol*) address whether specific, challenged documents qualified for heightened confidentiality treatment—not whether heightened confidentiality tiers should exist in the first place. The sole remaining case (*Gerffert*) establishes, at most, that courts will adopt Attorneys Eyes' Only tiers in cases between competitors. It does not establish that courts will *not* adopt heightened tiers absent such circumstances—and they routinely do, as shown above. ***Second***, NWBO's attempt to limit protection to algorithms "still" in use ignores industry reality. Ex. 2 ¶ 3. Trading algorithms undergo continuous refinement, with each iteration building upon previous versions. All versions remain valuable intellectual property requiring protection. *See Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 384 (S.D.N.Y. 2023) (trade secrets must be kept reasonably secret and derive economic value from such secrecy).[5] NWBO cites no authority to the contrary. ***Third***, NWBO complains that Defendants' proposed confidentiality tiers have "unspecified and undefined categories." Not so. Defendants' proposed tiers contain limited, specific categories of highly sensitive information, as set forth above. By contrast, NWBO has failed to provide any specific justification for its vague concerns that Defendants' narrow confidentiality tiers will somehow "hamper[] Plaintiff's ability to fully evaluate its claims."

### *Procedures for Potential Discovery of Algorithms and Source Code*

Defendants propose a meet-and-confer process to establish appropriate procedures if proprietary trading algorithms and underlying source code become subject to discovery. Ex. 1 ¶ 24. As noted, trading algorithms and source code are among "the most valuable assets a company possesses." *Opternative*, 2019 WL 3050891, at *1 (citation omitted). Courts also consistently recognize that production of source code and algorithms is exceptionally burdensome, and deny discovery into such materials absent a compelling showing of relevance and proportionality. *See, e.g., Xinuos, Inc. v. IBM Corp.*, 2024 WL 5010717, at *3 (S.D.N.Y. Nov. 13, 2024).

---

[5]   If necessary, Defendants can provide sworn declarations detailing the extensive security protocols and substantial investments made to safeguard their proprietary trading algorithms from unauthorized disclosure.

When necessary, courts typically order secure inspection rather than direct production. *See, e.g., Opternative*, 2019 WL 3050891, at *1; *Samsung Display Co. v. Solas Oled Ltd.*, 2021 WL 5154142, at *3-4 (S.D.N.Y. Nov. 5, 2021); *see also Xinuos*, 2024 WL 5010717, at *3 ("in patent or copyright litigation … parties routinely produce code under extremely controlled conditions"). After inspection, parties may request limited paper copies of specific portions as needed for court filings or depositions. *E.g., Opternative*, 2019 WL 3050891, at *1.

The Court has already noted the limited damages at issue in this case. *See* June 5, 2025 Case Management Conference Hr'g Tr. 26:17-27:5, ECF No. 216 ("[A]s narrowed by the ruling … I am not sure that this is an eight-figure case or even a seven-figure case, in terms of the alleged damages, in light of the loss causation rulings to date."). Given these circumstances and the nascent stage of discovery, Defendants' proposal for a meet-and-confer process to establish the scope and protections for the production of their "crown jewels" is both necessary and efficient, allowing the parties to address discovery needs as they arise with better information about what specific materials may be relevant. *See, e.g., Kewazinga*, 2020 WL 2129393, at *9 (parties will meet and confer to determine appropriate provisions to protect source code or algorithms).

### B.  Anonymizing Client-Identifying Information

**NWBO'S POSITION**

Defendants' proposed Protective Order would also improperly allow Defendants to completely anonymize their produced trading data to shield the identity of their clients from Plaintiff. This is entirely inappropriate, as unlike in *Harrington*, Defendants have argued throughout this litigation and asserted as affirmative defenses that they are not liable for spoofing activity they engaged in on behalf of unidentified clients and the statutes of limitation have not expired on potential claims against Defendants' clients. *See Harrington* at ECF #120 and 207. Plaintiff needs to know on whose behalf Defendants were purportedly spoofing or which of their clients were using Defendants' trading infrastructure to spoof themselves to both address Defendants' defenses[6] and to identify potential claims against Defendants' clients, and Plaintiff's counsel needs to consult with its own client to evaluate those claims. *Global Material Technologies, Inc. v. Dazheng Metal Fibre Co., Ltd.,* 133 F. Supp. 3d 1079 (N.D. Ill. 2015) at 1088 (need to share facts with client is "especially" important where "the disputed documents are relevant to helping it determine the scope of its claims"); *see* June 5 Hearing Tr. At 10:20-11:02 ("If discovery reveals documents, at whatever juncture, that present new facts that you feel warrant the inclusion of additional defendants … you would be free to seek that relief; and, as a general rule, where there are new facts that warrant amendment to pleadings, the Court would be inclined to grant that relief.").

**DEFENDANTS' POSITION**

Defendants propose a balanced approach that allows full analysis of trading patterns while protecting non-party clients' legitimate privacy interests. This would permit any Party producing trading data or other documents reflecting client-identifying information to anonymize client information with a unique anonymizer (e.g., CSCLIENT001) consistently across that Party's productions. Ex. 1 ¶ 25. The consistent identifiers would enable NWBO to track whether the

---

[6] Defendants have argued repeatedly that they merely transmit trade and order instructions from their clients, but without learning the identity of those clients, Plaintiff will have no way to seek discovery from those clients to test Defendants' claims that they were merely following orders.

6

same client placed multiple orders, addressing NWBO's purported need while respecting privacy interests. This approach aligns with *Harrington*, where the Court permitted defendant CIBC to anonymize client names in document productions, with the limited exception (not relevant here) that CIBC was ordered to "provide deanonymized data for specific trades Harrington identifies that occurred in the same millisecond and that may be relevant to Plaintiff's allegations of coordination." *Harrington*, No. 1:21-cv-761-LGS-VF, ECF 207.

NWBO has failed to demonstrate any legitimate need for client-identifying information. These non-party clients have compelling confidentiality interests, not only in their identities but also in their trading positions and trading activity. They are not parties to this litigation, and while NWBO has alluded to potentially adding more defendants, *e.g.*, ECF No. 205 at 4, the purpose of discovery is to investigate adequately pled claims—not ways of amending those claims. *See, e.g., In re AOL Time Warner, Inc.*, 2004 WL 1810661, at *2 (S.D.N.Y. Aug. 12, 2004).

NWBO fundamentally mischaracterizes Defendants' position regarding client trading. Defendants have never claimed their clients engaged in spoofing through Defendants' platforms. Rather, one of Defendants' actual defenses is that NWBO's spoofing allegations collapse when examining the reality of client-directed trading—specifically, that what NWBO labels as coordinated "baiting orders" and "executing purchases" were actually unrelated orders from different clients acting independently. Consistent anonymization (e.g., CLIENT001, CLIENT002) would preserve this critical information while protecting client privacy. NWBO's citation to an out-of-Circuit case (*Global Material*) finding disputed documents were relevant to determining the scope of asserted claims is misplaced. NWBO has provided no reason why Defendants' client information is necessary for NWBO to pursue the claims it has asserted against *Defendants*.

### C. Inadvertent Production of Privileged Materials

**NWBO'S POSITION**

Plaintiff proposes that a Party claiming that it inadvertently produced privileged documents must produce a privilege log identifying the basis for its asserted privilege, and if the receiving Party moves to compel, it must submit the subject documents to the Court for *in camera* review. Defendants' proposal would eliminate these steps, effectively shielding from the receiving party the specific justification for the asserted privilege and impeding the Parties' and the Court's ability to efficiently and effectively evaluate the claim of privilege. Plaintiff's proposed process is not only significantly more practical and efficient for both the parties and the Court, who, under Defendants' proposal would be forced to argue and rule in the dark, but it is routinely agreed-to by parties and this Court. *See* Stipulated Confidentiality Agreement and Protective Order at 17, ECF #105, *In re Wells Fargo & Co. Securities Litig.*, No. 1:20-cv-04494 (S.D.N.Y.) (Woods, J.). *See also, e.g.*, Stipulated Protective Order at 12, ECF #157, *Set Capital LLC, et al. v. Credit Suisse Group AG, et al.*, No. 1:18-cv-02268 (S.D.N.Y.).

**DEFENDANTS' POSITION**

The Parties agree that inadvertent production of privileged materials should not constitute a waiver, provided the producing party promptly notifies the receiving party. Ex. 1 ¶ 21; *see also* Fed. R. Civ. P. 502(d). However, NWBO seeks three unduly burdensome provisions that should be rejected. ***First***, requiring a privilege log simultaneously with providing notice of inadvertent production would impose needless burden. Ex. 2 ¶ 19. Defendants' position is not, as NWBO claims, that the justification of the asserted privilege should be "shield[ed]," but rather that inadvertently produced materials should be included in regular privilege logs. ***Second***, prohibiting

7

parties from using the fact or circumstance of inadvertent production as a basis for challenging privilege claims unduly restricts legitimate advocacy. *Id.* If the fact or circumstance of a production provides grounds for a motion to compel, those grounds should not be ignored. **Third**, mandatory *in camera* review whenever a party challenges privilege would waste judicial resources. The Court should determine whether such review is necessary based on the specific circumstances. NWBO's citation to protective orders in other actions where its counsel has convinced other parties to agree to NWBO's preferred provisions does not establish that Defendants should be forced to accept the same unduly burdensome provisions here.

Respectfully submitted,

<u>*/s/ Laura H. Posner* (with permission)</u>
Laura H. Posner
Michael B. Eisenkraft
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
lposner@cohenmilstein.com
meisenkraft@cohenmilstein.com

Raymond M. Sarola
COHEN MILSTEIN SELLERS & TOLL PLLC
100-120 N. 18th Street, Suite 1820
Philadelphia, PA 19103
Tel: (267) 479-5700
Fax: (267) 479-5701
rsarola@cohenmilstein.com

*Counsel for Plaintiff Northwest Biotherapeutics, Inc.*

<u>*/s/ William A. Burck*</u>
William A. Burck
Christopher G. Michel (admitted *pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com
christophermichel@quinnemanuel.com

Christopher D. Kercher
Daniel R. Koffmann
Jesse Bernstein
Peter H. Fountain
Leigha Empson
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, New York 10016
Tel: 212-849-7000
Fax: 212-849-7100
christopherkercher@quinnemanuel.com
danielkoffmann@quinnemanuel.com
jessebernstein@quinnemanuel.com
peterfountain@quinnemanuel.com
leighaempson@quinnemanuel.com

Jonathan K. Youngwood
jyoungwood@stblaw.com
Stephen P. Blake
sblake@stblaw.com
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York  10017
Telephone: (212) 455-0000

Facsimile: (212) 455-2502

*Counsel for Defendant Citadel Securities LLC*


/s/ Anthony S. Fiotto (with permission)
Anthony S. Fiotto
Julia C. Koch
Morrison & Foerster LLP
200 Clarendon Street
Boston, MA 02116
Telephone: 617-648-4700
Facsimile: 617-830-0142
Email: AFiotto@mofo.com
Email: JKoch@mofo.com

Eric D. Lawson
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
Telephone: 212-336-4067
Facsimile: 212-468-7900
Email: ELawson@mofo.com

*Counsel for Defendant Canaccord Genuity LLC*

/s/ Marjorie J. Peerce (with permission)
Marjorie J. Peerce
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Tel: (212) 223-0200
Fax: (212) 223-1942
peercem@ballardspahr.com

Norman Goldberger (*pro hac vice* forthcoming)
Laura Krabill (admitted *pro hac vice*)
J. Chesley Burruss
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500
Fax: (215) 864-8999
goldbergerm@ballardspahr.com

9

krabilll@ballardspahr.com
burrussc@ballardspahr.com

*Counsel for Defendant G1 Execution Services LLC*

*/s/ Peter G. Wilson* (with permission)
Peter G. Wilson
Christian T. Kemnitz (admitted *pro hac vice*)
Benjamin C. Levine (admitted *pro hac vice*)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
peter.wilson@katten.com
christian.kemnitz@katten.com
benjamin.levine@katten.com

*Counsel for Defendant GTS Securities LLC*

*/s/ Richard A. Edlin* (with permission)
Richard A. Edlin
Daniel P. Filor
Nicholas T. Barnes
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
edlinr@gtlaw.com
filord@gtlaw.com
barnesn@gtlaw.com

*Counsel for Defendant Instinet LLC*

*/s/ Kevin P. Broughel* (with permission)
Kevin P. Broughel
Zoe Lo
Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Phone: (212) 940-6343
Fax: (212) 940-8776
kevin.broughel@katten.com

10

zoe.lo@katten.com

*Counsel for Defendant Lime Trading Corp.*

<u>*/s/ Andrew G. Gordon* (with permission)</u>
Andrew G. Gordon
Audra J. Soloway
Jessica S. Carey
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
agordon@paulweiss.com

*Counsel for Defendant Virtu Americas LLC*

cc:     All counsel of record