**MEMO ENDORSED**

KASOWITZ LLP

October 16, 2025

Hon. Gary Stein, U.S.M.J.
United States District Court, Southern District of New York

      Re:    *Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 1:22-cv-10185

Dear Judge Stein:

      We represent Plaintiff Northwest Biotherapeutics, Inc. We write in response to Defendants' letter motion to compel Plaintiff to produce calculations of trading data underlying the Second Amended Complaint ("SAC"). Defendants' letter is just their latest attempt to force discovery of work product—here, mathematical analyses of the data—from Plaintiff's non-testifying experts. Plaintiff has produced (or will produce) the trading data underlying the SAC,[1] Defendants admit they already have the data, and Defendants can equally analyze it. Defendants' motion should thus fail for at least four reasons.

      ***Defendants already have the information they seek.*** The SAC explains how "Baiting Orders" were *calculated* by reference to changes in quote and order volume in the data, and how Defendants can replicate these *calculations*. *See* SAC Ex. 1 nn.1-5. In short, Plaintiff analyzed increases in sell-side quote and order volumes in the two minutes before an Executing Purchase and decreases within two minutes after, and took the lesser of the two. *See* SAC Ex. 1 n.4. Plaintiff cannot "identify" cancelled orders/quotes because the "cancellations" often reflect changes in quote and order volumes over time.[2] Fundamentally, Defendants ask Plaintiff to copy-and-paste the quotes and order events that appear in the data within the two minutes around the Executing Purchases identified in SAC Exhibit 1, and perform for them the calculations described therein. This is nothing more than an attempt to shift the burden of expert labor onto Plaintiff for something that Defendants can do themselves with the data Plaintiff provided (or will provide), and which they already possess. *E.g.*, *Rovi Guides, Inc. v. Comcast Corp.*, 2017 WL 11711674, at *5 (S.D.N.Y. June 30, 2017) ("[W]here the burden would be the same for either party, the interrogating party should bear the responsibility of compiling the information.").

      Defendants' claim that the data does not "align" with the SAC only confirms that they have the data at issue but misunderstand the SAC. For example, Defendants complain they cannot always identify "sell-side orders at the alleged prices during the 'Baiting Period.'" But the SAC explains that the prices for Baiting Orders are of the quotes or orders reduced or cancelled *after* the purchase. *E.g.*, SAC ¶84 n.17; SAC Ex. 1 n.5. Plaintiff also explains that it drew inferences based on matching the limited publicly available data, and thus a divergence between the SAC's allegations and Defendants' nonpublic data is to be expected. *See* SAC ¶75 n.14. If Defendants disagree with Plaintiff's analysis of the limited data underlying the SAC—despite Plaintiff's intent to replace it with testifying expert reports after discovery yields more fulsome data (*see infra*)—

---

[1] Plaintiff produced NYSE data and, hours before Defendants filed their letter, informed Defendants that OTC Markets agreed to permit production of its data provided that Defendants agree to confidentiality protections. They have not.

[2] On the interdealer quotation system that informed the SAC, unlike on a limit order book, participants display quotes (not orders) of only their best bid/ask prices, and cannot display multiple quotes. The SAC treats the change in the quantity of a "quote" the same as placement and/or cancellation of an "order." *See* SAC ¶8 n.4; *id.* ¶64 n.11.

they can submit an expert report at the appropriate time. But they cannot use interrogatories to demand that Plaintiff engage in time-consuming expert analyses.[3]

***Defendants mischaracterize Harrington by omitting critical facts and a subsequent Order.*** Unlike here, the *Harrington* complaint only listed examples of manipulative activity and lacked an exhibit alleging all known Spoofing Episodes based on the available data. *Compare Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, No. 21-cv-761-LGS-VF, ECF 133 at 38-40 (S.D.N.Y. Dec. 19, 2022), *with* SAC Ex. 1 (200+ pages). After defendants sought identification of the orders underlying the complaint, Judge Schofield ordered plaintiff to "provide information identifying each trade, including the date and times of placement and cancellation (*with the specificity possessed by Plaintiff*), the quantity, the price, the trading venue and the broker-dealer that entered the order." *Harrington*, ECF 167 at 2 (emphasis added). But Defendants here ignore that the *Harrington* court later found that plaintiff's production of trading data immediately preceding and following Executing Purchases satisfied its Order.[4] *Harrington*, ECF 193 at 2 (denying subsequent motion to compel identification of specific orders within the data produced, where plaintiff possessed no further specificity and analyzed activity in the period surrounding Executing Purchases). Like the *Harrington* plaintiff, Plaintiff has produced (or will produce) the data used in the SAC to calculate Baiting Orders with the same specificity it possesses.

***The calculations Defendants seek are irrelevant.*** Plaintiff has disclaimed reliance on the limited data available for, and analyses underlying, the SAC in favor of anticipated productions from Defendants and third parties that will provide a fulsome view of the relevant activity upon which Plaintiff will pursue its claims. *See* Ltr. Ex. B at 9. As Defendant Citadel Securities LLC's counsel, Quinn Emanuel, successfully argued in another action before Judge Schofield, a motion to compel analyses is even more inappropriate in such circumstances. *See Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, No. 1:18-cv-10364-LGS, ECF 321 (S.D.N.Y. Nov. 4, 2019) (holding "[p]rinciples of fairness do not require production" of analyses and materials consultants used to prepare complaint's economic analyses, and further noting no prejudice where plaintiffs "disclaimed future reliance on the at-issue analyses").

***Defendants seek to compel protected non-testifying consulting expert methodology, calculations, and analyses.*** As Citadel's counsel here successfully argued for plaintiffs in *Allianz*, requests for "'assumptions, models, codes, reports, or other materials' that Plaintiffs' non-testifying consultants used to prepare their economic analyses in the complaint" seeks "pure work product" that "would reveal how Plaintiffs' non-testifying consultants interpreted the raw data to produce the charts and allegations in the complaint." *Allianz*, ECF 321 at 1; *see also In re Nat. Gas Commodities Litig.*, 232 F.R.D. 208, 211-12 (S.D.N.Y. 2005) (finding "third-party consultants' analysis and comparison of . . . trades" to be opinion work product).

---

[3] Defendants' reliance on *Cohalan v. Genie Indus., Inc.*, 276 F.R.D. 161, 164 (S.D.N.Y. 2011) to argue waiver is inapposite because defendant there failed for months to respond in writing to discovery requests. Plaintiff's original, timely response to Rog No. 4 raised privilege and work-product objections, among others. Ltr. Ex. A at 7.

[4] This data included spreadsheets containing more than one million market events, which had already been produced by third parties, without the additional analysis that defendants sought. *Harrington*, ECF 187 at 2; ECF 193 at 1.

Despite Defendants' contention that they "do not seek expert analysis," their letter boldly seeks protected work product analyzing the limited public data used in the SAC, as do their other interrogatories. *E.g.*, Ltr. Ex. A (Rog 3, 6) (seeking methodologies, calculations, and analyses). That Citadel recently served a subpoena *to Plaintiff's consultant (and attorney)* seeking production of protected materials dispels any doubt as to Defendants' intentions. Pl. Ex. 1. Through SAC Exhibit 1 and Plaintiff's production of underlying trading data, it will have provided non-privileged responses to Rog 4 as pertains to the SAC data with the level of specificity it possesses.[5]

Plaintiff has not waived its protections. As Citadel's counsel well knows from *Allianz*, Plaintiff's reference to pre-litigation analyses in complaints does not waive work-product protection. ECF 321 (declining to find waiver). *Felder*—which considered an employer's withheld investigation and interview materials containing factual statements not available to plaintiff—does not require a contrary ruling. *See Felder v. Warner Bros. Discovery Inc.*, 2025 WL 1718098, at *13-15 (S.D.N.Y. June 20, 2025) (Stein, M.J.). Here, Defendants have the factual data Plaintiff used in the SAC. And unlike here, the party in *Felder* "made plain that it intends to continue to use the factual content of [investigation materials] in . . . litigating this action." *Id.* at *15.

Defendants also cannot meet the "particularly stringent" "substantial need" test of Fed. R. Civ. P. 26(b)(3), because they are not "unable to obtain the substantial equivalent of the materials by other means without 'undue hardship.'" *In re Nat. Gas*, 232 F.R.D. at 212. Movants fail to meet their burden to breach work product when they "can perform their own analysis of the trading data" because they have "all of the factual documents underlying the work product analysis." *See e.g.*, *id.*[6] As Defendants admit, "all of the information needed to identify the specific orders, including time stamps, prices, and quantities, is available in the trading data NWBO claims to have relied on." Defendants will receive all the data Plaintiff receives, and "will receive [Plaintiff's] current analyses of the data during the expert discovery period." *In re Nat. Gas Commodities Litig.*, 2005 WL 1457666, at *8 (S.D.N.Y. June 21, 2005).[7]

---

[5] After Citadel switched tack and employed Interrogatory 4 to demand *immediate* analysis of data *Citadel* produced, Plaintiff responded that that it would provide analysis at the appropriate time, that analysis of data produced (and to-be-produced) by Defendants and third parties was a topic for expert discovery, and agreed to amend its written responses to clarify. *E.g.*, Ltr. Ex. B at 1-5, 7-9; Pl. Ex. 2 (amended responses). Though Defendants knew they would receive amended responses by today (when others are due), Ltr. Ex. B at 1, Defendants chose to file their letter first.

[6] *Granite* does not support waiver, as the withheld interview notes there were used during depositions. *Granite Partners v. Bear, Stearns & Co.*, 184 F.R.D. 49, 55 (S.D.N.Y. 1999). Nor does it support "substantial need" as, unlike here, the adversary did not have the data experts used and could not replicate analyses. *Id.* at 55-56. Moreover, *Granite*—and its authority for the at-issue waiver test—has been criticized and rejected. *In re County of Erie*, 546 F.3d 222, 226-29 (2d Cir. 2008) (holding the authority *Granite* used "cuts too broadly"); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2009 WL 3334365 at *3 (E.D.N.Y. Oct. 14, 2009) (employing *Granite* for waiver argument was an "aggressive litigation tactic[]" which "ignore[d] controlling caselaw" that "expressly rejected" *Granite*'s standards).

[7] Defendants ignore that Fed. R. Civ. P. 26(b)(4)(D) protects against interrogatories seeking "facts known or opinions held" by a non-testifying expert. As explained above, Defendants cannot breach this protection because they cannot show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." *Subramanian v. Lupin Inc.*, 2020 WL 4707268 at *3 (S.D.N.Y. Aug. 13, 2020) (test not met where movant has the underlying information and could have engaged experts to opine on it).

3

Respectfully,

Stephen W. Tountas

*Counsel for Plaintiff*

cc: All counsel of record (via ECF)

Defendants' application is GRANTED. Plaintiff shall identify the Baiting Orders and cancellations of Baiting Orders as alleged in the SAC (limited to the Spoofing Episodes that survived the motion to dismiss practice). Plaintiff's arguments in opposition to Defendants' application—including that Defendants already have this information, that the information is irrelevant because Plaintiff has "disclaimed reliance" on the SAC's allegations, and that Defendants improperly seek non-testifying consulting expert analysis protected by the work-product doctrine—mirror the arguments made when similar information was sought by the defendants in *Harrington Global Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, No. 21 Civ. 761 (LGS) (VF) (S.D.N.Y.). Judge Schofield rejected those arguments, and properly so.  (*See Harrington,* Dkt. No. 167 at 2). The Court agrees with Judge Schofield's reasoning and likewise concludes that Defendants are entitled to "identification of the orders on which the [SAC] is based." (*Id.*).

Plaintiff attempts to distinguish *Harrington* on the ground that the SAC pleads the Spoofing Episodes more fulsomely than was the case in *Harrington*, but the Court finds this to be an insufficient reason for nullifying Defendants' right to know the basis for the allegations against them. As was made clear during Defendants' first motion to dismiss, Plaintiff's pleading alleges that Baiting Orders were placed during two-minute windows "signify[ing] a range of time *within which* Baiting Orders were placed," not when (or in what quantity or at what price) particular Baiting Orders were placed. (Dkt. No. 137 at 52 & n.24 (emphasis in original)). Indeed, Plaintiff argued—successfully—that this level of detail was not required at the pleading stage. (*Id.* at 44-45). Likewise unpersuasive is Plaintiff's reliance on a subsequent order in the *Harrington* case denying the defendants' request for additional information after the plaintiff complied with Judge Schofield's original order and represented that it did not possess any information with a greater level of specificity than what it had already provided. (*See Harrington*, Dkt. No. 193 at 2). Plaintiff admits it has not yet produced all the trading data and there is no basis to relieve them of the obligation to identify the Baiting Orders in the first instance. Whether they have adequately complied with that obligation can, if necessary, be taken up at a later date.

The Court also notes the recent passing of NWBO's General Counsel, as referred to in the correspondence submitted on this application. The Court expresses its sincere condolences to Mr. Goldman's family and colleagues.

The Clerk of Court is respectfully directed to close the open motion at Docket No. 233.

SO ORDERED

Date:  October 17, 2025

New York, New York

Gary Stein
United States Magistate Judge
Southern District of New York

4