# EXHIBIT 3

quinn emanuel trial lawyers | new york          Simpson Thacher & Bartlett LLP

**VIA EMAIL**

November 19, 2025

Stephen W. Tountas
1633 Broadway
New York, NY 10019
Stountas@kasowitz.com

Re:     *Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 1:22-cv-10185

Dear Counsel:

We write in response to your November 2, 2025 letter ("Letter") in regard to Citadel Securities' ("Citadel Securities") June 12, 2025 Responses and Objections to Plaintiff's First Set of Requests for Production of Documents ("R&Os") and in follow-up to our November 10, 2025 email.

Almost five months after Citadel Securities timely served its R&Os, Plaintiff belatedly contends that the R&Os and Citadel Securities' August 18, 2025 production ("First Production") suffer from asserted deficiencies. Not so. In its discovery responses, Citadel Securities agreed to provide relevant and proportional discovery, consistent with its obligations. To the extent the Letter criticizes Citadel Securities for having not yet made additional productions, Plaintiff's own failure to engage in discovery is to blame. Indeed, Citadel Securities has repeatedly convened meet-and-confer sessions with Plaintiff regarding Plaintiff's discovery deficiencies and requested that Plaintiff engage in discussions over search terms, but to date Plaintiff has been entirely unwilling to do so, even walking back its initial agreement to simply determine a date for the exchange of search terms. *See, e.g.*, June 5, 2025 Hr'g Tr. at 43:1-8 (indicating that Plaintiff's counsel will provide a "list of search terms" for Defendants' productions). Plaintiff has also been unwilling to enter into an ESI protocol, again reneging on its prior agreement regarding Section 9.3, and rejecting Defendants' three attempts to reach a compromise.

Citadel Securities responds to the specific items raised in the Letter as follows:

**Time Period:** The Letter contends that Citadel Securities must produce documents from December 5, 2017 to the present so that Plaintiff can assess "scienter and manipulative conduct." Letter at 2. Plaintiff's demand for documents from *years* after the alleged "relevant period" is baseless and highlights Plaintiff's attempt to use discovery to fish for additional theories and claims. Following the Court's rulings on the motions to dismiss, only 134 alleged episodes of spoofing by Citadel Securities remain at issue in this case. *See* Dkt. No. 188. These episodes occurred on 44 days between December 19, 2017 and March 14, 2022. *See id.*; Dkt. No. 150-1. Citadel Securities has therefore agreed to produce documents from a ***more than four-year*** period—from December 5, 2017 to March 28, 2022—including two weeks before the first alleged spoofing episode and two weeks after the last alleged spoofing episode that survived the Court's ruling on the motion to dismiss. *See* Dkt. No. 188. That is more than sufficient for the needs of

the case and proportional to the de minimis "amount in controversy."  Fed. R. Civ. P. 26(b)(1); *see* June 5, 2025 Hr'g Tr. at 27:2-5 ("I am not sure that this is an eight-figure or even a seven figure case, in terms of alleged damages, in light of the loss causation rulings to date."); *see also id.* at 30:8-10 ("I do have to take into account, under Rule 26, not only relevance but proportionality and including specifically the amount in controversy.").  Documents post-dating the alleged spoofing episodes are not relevant to Plaintiff's claims, and Citadel Securities should not be subjected to the disproportionate and undue burden of collecting, reviewing, and producing documents generated between March 2022 and the present.  *See* Fed. R. Civ. P. 26(b)(1).  Plaintiff, as the party seeking discovery, bears "[t]he burden of demonstrating relevance." *Perkins v. Chelsea Piers Mgmt.*, 2012 WL 4832814, at *1 (S.D.N.Y. Oct. 10, 2012).  Plaintiff has failed to meet its burden.

**Communications:**  The Letter asserts that Defendants refuse to produce communications regarding trading activity, among other subjects, across the relevant period as requested in Plaintiff's First Set of Requests for Production of Documents ("RFPs").  *See* Letter at 2.  This complaint is baseless.  As set forth in the R&Os, and subject to the limitations described therein, Citadel Securities will conduct a proportional search with reasonable custodians for responsive, non-privileged communications in response to RFPs 4, 5, 8, 12, 13, 16, 18, 20, 21, and 31.  As discussed at the June 5 hearing, Citadel Securities does not intend to limit its search for and production of communications to specific days within the relevant period.  *See* June 5, 2025 Hr'g Tr. at 43:16-18.  But such search and review cannot occur until an agreement is reached on search terms, and Plaintiff inexplicably continues to refuse to engage in such negotiations.  It is also notable that Plaintiff purports to demand that Citadel Securities produce communications while Plaintiff itself has not produced a single communication to date.

**Trading Data (RFP 1):**  The Letter erroneously suggests that Citadel Securities' First Production is deficient because Citadel Securities has declined to produce trading data for every single day during the relevant period.  The R&Os and First Production are consistent with the Court's rulings on the motions to dismiss and the Court's order on Defendants' motion to compel. *See* Dkt. No. 235 (ordering Plaintiff to identify baiting orders "limited to the Spoofing Episodes that survived the motion to dismiss practice"); June 5, 2025 Hr'g Tr. at 26:3-5 ("I agree with defendants that the ruling on the motion to dismiss does have consequences for the scope of discovery in this case."); *see also id*. at 26:9-10 ("[A]s to many of [the alleged spoofing episodes]—I believe most of them—one essential element, namely loss causation, was missing."); Dkt. No. 188.  For these reasons, Citadel Securities will produce trading records limited to the 44 days that remain at issue.  It need not produce irrelevant trading data for days on which there are no alleged spoofing episodes that survived Defendants' motions to dismiss.  With respect to the OTC Link trade history data contained in the First Production, Citadel Securities made a replacement production on November 12, 2025 that resolves the discrepancy identified in the Letter.

**Anonymization of Client Information & Production of Trades on Behalf of Clients (RFPs 2 & 3):**  The Letter contends that Citadel Securities has not produced any "customer identifying information," "records concerning client-side activity," or "internal records" reflecting information regarding "parties, traders, and accounts."  Letter at 5-6.  Plaintiff asserts that it is "entitled to know the information concerning the parties on whose behalf orders were placed,

quinn emanuel trial lawyers | new york                    Simpson Thacher & Bartlett LLP

modified, or cancelled" and asks Defendants to "clarify if they have anonymized or intend to anonymize, any other information in their productions." *Id.* at 3, 7. With respect to the First Production, Citadel Securities did not anonymize any data—it produced the data in the form it was received from OTC Link and FINRA.

To the extent any future productions include information regarding clients, Citadel Securities will anonymize the client identifying information, consistent with the Court's guidance in the June 27 hearing and as acknowledged by you in the Letter. *See* Letter at 5; June 27, 2025 Hr'g Tr. at 56:8-57:16 (permitting Defendants to anonymize "client identifying information" and acknowledging that Plaintiff would have to make the "appropriate showing" in order to justify further disclosure).

**Borrowing, Lending, and Hypothecating (RFP 14):** The Letter states that information regarding Citadel Securities' borrowing, lending, and hypothecating in Plaintiff shares is relevant to "profit motive" and "manipulative trading strategies." Letter at 9. Not so. As set forth in the R&Os, Plaintiff does not allege that Citadel Securities engaged in such conduct. Plaintiff's reference to a single sentence in the SAC does not indicate otherwise—indeed, the sentence merely underscores Plaintiff's failure to allege any specifics. *See* SAC ¶ 89 (alleging that Citadel Securities profited from spoofing activity "*regardless of whether* the Executing Purchases established a long position in Plaintiff or were used to close out a previously established short position"). Indeed, the Court previously noted that this exact allegation was "hypothetical" and insufficient to "allege that Defendants engaged in such short sales, nor does it allege that engaging in short sales in anticipation of a spoofing episode is a feature of spoofing schemes in general or Defendants' spoofing in particular." Dkt. No. 137 at 11 n.9. Particularly in light of Plaintiff's admission that it intends to replead its case based on discovery from Defendants and third parties, this request is clearly an unjustified fishing expedition to concoct new claims. As set forth in the R&Os, Citadel Securities has agreed to produce certain documents pertaining to its profit and loss in response to RFP 16 and has also agreed to conduct a proportional search for documents pertaining to Citadel Securities' trading strategies in NWBO shares responsive to RFP 5.

**External Inquiries & Investigations (RFP 21):** The Letter purports to challenge Citadel Securities' position that it will produce documents regarding regulatory or exchange inquiries or investigations only insofar as they concern Plaintiff, instead insisting that any and all investigations are "highly relevant." Letter at 9-10. They are not. The irrelevant information regarding unrelated securities Plaintiff seeks is not probative of any claim or defense in this action and disproportionate to its limited scope. Further, naming examples of regulatory enforcement actions that do not concern the conduct at issue in this litigation provides zero basis for any discovery in this case; such actions do not concern Plaintiff or its claims. The mere fact of prior enforcement matters is not a basis for expansive discovery into unrelated topics. Citadel Securities will conduct a proportional search with reasonable custodians for responsive, non-privileged documents and communications regarding regulatory inquiries or investigations regarding market manipulation in connection with NWBO shares, to the extent any exist. Again, this search is more than sufficient for the needs of the case and proportional to the de minimis "amount in controversy." Fed. R. Civ. P. 26(b)(1).

quinn emanuel trial lawyers | new york          Simpson Thacher & Bartlett LLP

Citadel Securities is willing to meet and confer on any outstanding issues regarding the R&Os.

SIMPSON THACHER & BARTLETT LLP

/s/ Jonathan K. Youngwood
Jonathan K. Youngwood
Alison M. Sher
425 Lexington Avenue
New York, NY 10017
Tel: 212-455-3539
Fax: 212-455-2502
jyoungwood@stblaw.com
alison.sher@stblaw.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

William A. Burck
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com


Christopher D. Kercher
Peter H. Fountain
Leigha Empson
295 Fifth Avenue
New York, New York 1001640
Tel: 212-849-7000
Fax: 212-849-7100
christopherkercher@quinnemanuel.com
peterfountain@quinnemanuel.com
leighaempson@quinnemanuel.com

*Attorneys for Defendant Citadel Securities
LLC*