```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NORTHWEST BIOTHERAPEUTICS, INC.,           :
                                           :
                                           :
                    Plaintiff,             :    22 Civ. 10185 (GHW) (GS)
                                           :
           - against -                     :          ORDER
                                           :
CANACCORD GENUITY LLC, et al.,             :
                                           :
                    Defendants.            :
------------------------------------------------------------X
```

**GARY STEIN, United States Magistrate Judge:**

On June 9, 2025, Defendants served interrogatories on Plaintiff Northwest Biotherapeutics, Inc. ("NWBO"), requesting, *inter alia*, that NWBO:

> Identify all Baiting Orders, Executing Purchases, and cancellations of Baiting Orders that [NWBO] allege[s] [Defendant] engaged in during the Relevant Period, including (i) the date and time of each such order, purchase, or cancellation; (ii) the price and volume of each such order or purchase; and (iii) the data sources [NWBO] relied upon to identify each such order or purchase.

(Dkt. No. 233 Ex. A, Interrogatory No. 4). In response, NWBO objected on various grounds and referred Defendants to Exhibit 1 to the Second Amended Complaint ("SAC"), which NWBO stated identified the relevant "Spoofing Episodes" based on "publicly available trading and quote data." (*Id.*, Response to Interrogatory No. 4).

Dissatisfied with NWBO's response, and after meet-and-confer efforts failed, on October 13, 2025, Defendant Citadel Securities LLC, on behalf of all Defendants, moved the Court to compel NWBO to produce information identifying "the purported 'Baiting Orders' that are the critical component of the 'spoofing episodes'

1

alleged in the Second Amended Complaint." (Dkt. No. 233 at 1). As alleged in the SAC and described in the Court's ruling on Defendants' motion to dismiss NWBO's prior pleading, "spoofing" is a form of market manipulation where a market participant "submi[ts] and cancel[s] [] buy and sell orders without the intention to trade in order to manipulate other traders." (Dkt. No. 150 ("SAC") ¶ 59; citation omitted). Those orders, designed to create the illusion of excess supply or demand, are referred to as "Baiting Orders" in the SAC. (*Id.* ¶ 55). The purpose of the Baiting Orders is "to generate a response from other market participants to follow the artificial selling or buying trend that the Baiting Orders created." (*Id.*). If the spoofer's goal is to drive the stock price downward, which is what NWBO alleges was Defendants' aim here, the spoofer enters Baiting Orders to sell, which are intended to "bait" or "trick" other market participants to enter their own sell orders (to avoid suffering losses in a seemingly downward trending market). (*Id.* ¶ 57; quotation omitted). Once the price of the security has been lowered, the spoofer completes "Executing Purchases," whereby the spoofer buys at the artificially low price. (*Id.*). Immediately thereafter, the spoofer cancels the Baiting Orders and thus "completes the spoofing cycle." (*Id.*). (*See also* Dkt. No. 137 at 3-5).

The spreadsheet attached as Exhibit 1 to the SAC contains a list of "Defendants' Spoofing Episodes During [the] Relevant Period." (SAC Ex. 1 at 1). The footnotes in Exhibit 1 purport to explain how Plaintiff identified the relevant Baiting Orders underlying each Spoofing Episode. (*See id.* nn.1-5). Nevertheless, Defendants maintained in their October 13 letter that the "SAC and Exhibit 1 do

not align with the trading data NWBO claims to have relied on, making it impossible for Defendants to identify the 'Baiting Orders.'" (Dkt. No. 233 at 1).

On October 16, 2025 NWBO submitted its response to Defendants' letter motion, contending that "Defendants already have the information they seek" because the SAC explains how Baiting Orders were calculated, and NWBO has produced all relevant trading data upon which the SAC was based. (Dkt. No. 234 at 1). Essentially, NWBO argued that Defendants, through their motion, sought to shift the burden of "expert labor" to uncover the Baiting Orders that they are fully capable of uncovering on their own. (*Id.*).

The Court issued an order on October 17, 2025, granting Defendants' motion and directing Plaintiff to "identify the Baiting Orders and cancellations of Baiting Orders as alleged in the SAC (limited to the Spoofing Episodes that survived the motion to dismiss practice)." (Dkt. No. 235 at 4). In rejecting Plaintiff's arguments that it should not have to do this, the Court relied on an order rejecting similar arguments in an earlier-filed spoofing case in this District, *Harrington Global Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, No. 21 Civ. 761 (LGS) (VF) (S.D.N.Y.). (*Id.*). Like Judge Schofield in *Harrington*, the Court concluded that Defendants were "entitled to 'identification of the orders on which the [SAC] is based.'" (*Id.* (quoting *Harrington*, Dkt. No. 167 at 2)).

On November 4, 2025, Defendants requested a discovery conference to address NWBO's purported failure to comply with the October 17 Order, moving the Court to compel NWBO to identify with specificity the alleged "Baiting Orders" and

3

cancellations thereof.  (Dkt. No. 237).  Defendants state that NWBO's production pursuant to the Court's October 17 Order consists of "hundreds of thousands of 'quote modifications and order events' that occurred in the 'two minutes preceding and following an Executing Purchase' for all alleged spoofing episodes in the SAC," but fails to identify which of these orders and cancellations are the alleged Baiting Orders (and cancellations thereof).  (*Id.* at 1-2).  In addition, Defendants claim that NWBO produced the trading data from all days, rather than limiting it to those Spoofing Episodes which survived the motion to dismiss, as the October 17 Order directed.  (*Id.*).  Attached as Appendix A to Defendants' motion, filed under seal, Defendants provide three illustrations of discrepancies between the data produced and NWBO's pleadings which, as before, allegedly make it "impossible for Defendants to discern which, if any, of the hundreds of thousands of orders NWBO has produced are alleged to be 'Baiting Orders.'"  (*Id.* at 3).

On November 12, 2025, NWBO submitted its response, explaining that it had created and produced two files "which contain the market events that occurred within the four-minute timeframe of each Spoofing Episode alleged in the SAC, with a column identifying the relevant Executing Purchase."  (Dkt. No. 243 at 1). According to NWBO, "[t]hese excerpts, along with the raw data, allow Defendants to identify the volumes and prices of Baiting Orders."  (*Id.*).  NWBO represents that it has no additional responsive documents to produce and contends it has complied with the Court's October 17 Order with the level of specificity it possesses, and that any further production would require the creation of new work product.  (*Id.* at 1-2).

In Appendix A attached to Plaintiff's letter, also filed under seal, Plaintiff goes through each of the illustrations in Defendants' Appendix A in order to show how the Baiting Order calculations in the SAC can, in fact, be deduced via the trading data produced and proper application of the methods outlined in the footnotes of the SAC and Exhibit 1.  (*Id.* Ex. A).

On November 13, 2025, Defendants moved for leave to file a reply letter, attached as Exhibit A to their letter motion.  (Dkt. No. 247 & Ex. A ("Rep.")).[1]  The proposed reply contends that NWBO's explanatory Appendix A confirms that "NWBO possesses the specificity, and is not *unable* to identify the orders—but is *unwilling* to do so." (Rep. at 2 (emphasis in original)).  Defendants argue that if NWBO can identify the relevant orders for the illustrative Spoofing Episodes featured in Appendix A, then it must do so for all relevant Spoofing Episodes.  (*Id.* at 1).  Defendants therefore request that the Court order NWBO to provide "the same color-coded, calculation-explained identification it provided in its Appendix" for all the Spoofing Episodes that survived the motion to dismiss.  (*Id.* at 3).

The Court denies Defendants' application.  Interrogatory No. 4, and this Court's October 17 Order, directs NWBO to "[i]dentify" the relevant Baiting Orders, Executing Purchases, and cancellations of Baiting Orders.  (Dkt. No. 233 Ex. A, Interrogatory No. 4; Dkt. No. 235 at 4).  NWBO has now done so.  It has provided Defendants with all of the relevant data it possesses, and represents it has no more

---

[1] The Court hereby grants Defendants' motion for leave to file the reply letter attached as Exhibit A, which was not opposed by NWBO.

to provide. When the defendants in *Harrington* similarly complained about the plaintiff's response to Judge Schofield's order requiring plaintiff to identify the Baiting Orders in that case, Judge Schofield declined to direct the plaintiff to provide further information, because the plaintiff "does not possess information with a greater level of specificity than has already been provided." (*Harrington*, Dkt. No. 193 at 2).

The Court reaches a similar conclusion here. To be sure, Defendants' November 4 letter and accompanying Appendix A indicated that, based on the information provided by NWBO, Defendants were unable to discern how NWBO calculated the volume and price of Baiting Orders relevant to Spoofing Episodes. (Dkt. No. 237 & Ex. A). This information is central to understanding Plaintiff's spoofing allegations, and if it were true that Defendants could not ascertain where the numbers in the SAC come from, the Court would be inclined to direct NWBO to tell them. But in its response, NWBO has now explained precisely how it calculated the Baiting Order volume and price numbers in the SAC for the illustrative Spoofing Episodes covered by Appendix A. (Dkt. No. 243 Ex. A). Moreover, by explaining the methodology underlying its calculations, NWBO has now enabled Defendants to apply that methodology to all the other relevant Spoofing Episodes alleged in the SAC.

Defendants argue that NWBO should be compelled to do this work, "instead of requiring Defendants to attempt to reverse engineer NWBO's analysis." (Rep. at 1). This argument is unpersuasive. "[U]nder the rationale of Rule 33(d), where the

6

burden would be the same for either party, the interrogating party should bear the responsibility of compiling the information." *Sadofsky v. Fiesta Prod., LLC*, 252 F.R.D. 143, 149 (E.D.N.Y. 2008). Courts have therefore declined to require a responding party to produce additional analyses that would otherwise be readily available to the requesting party based on factual material already produced. *See, e.g., Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18 Civ. 11386 (VSB) (KHP), 2021 WL 1660684, at *2 (S.D.N.Y. Apr. 28, 2021) (explaining that a business record may be produced in response to an interrogatory where the relevant answer may be derived from the business record and "the burden of deriving or ascertaining the answer will be substantially the same for either party").

Defendants do not seriously dispute that they are now in a position to replicate NWBO's calculations. They do argue that they should not have to "shoulder this burden" because NWBO has already admitted making "at least three" errors in Exhibit 1 to the SAC and if more errors are lurking, Defendants could be stymied in performing the calculations themselves. (Rep. at 2). But the solution to this potential problem is not to shift the entire responsibility for conducting the required analyses to Plaintiff, in derogation of the usual rule described above. A more targeted solution is at hand: If, as, and when Defendants are unable to reconcile their own calculations with the allegations of the SAC with respect to a particular Spoofing Episode based on the methodology NWBO has explained, Defendants may bring the issue to NWBO's attention and ask NWBO to

7

identify how the particular calculation(s) were derived. The Court hereby orders NWBO to provide such identifications to Defendants upon request.

Defendants also contend that NWBO's methodology, as explained, involves looking to orders placed *after* the Executing Purchase was effected and that such orders by definition "cannot be 'Baiting Orders.'" (Rep. at 3). This contention may well have merit. But to the extent that it does, it is a contention that goes to the merits—not to the scope of NWBO's discovery obligations. As Judge Schofield aptly observed in *Harrington*: "Ultimately, it will be Plaintiff's burden, on either summary judgment or at trial, to prove its allegations using data is has provided to Defendants." (*Harrington*, Dkt. No. 193 at 2). But for now, Defendants must "comply with their discovery obligations to the best of their ability based on the information Plaintiff has provided." (*Id.*).

Accordingly, Defendants' motion to compel is **DENIED**. The unopposed motions to seal at Docket Numbers 236, 242, and 246 are hereby **GRANTED** as the relevant documents contain confidential business information designated as confidential pursuant to the Protective Order governing this action (Dkt. No. 232) and of a nature which courts in this Circuit regularly maintain under seal. *See e.g., Iacovacci v. Brevet Holdings, LLC*, No. 18 Civ. 08048 (MKV), 2022 WL 101907, at *2 (S.D.N.Y. Jan. 11, 2022) (collecting cases).

The Clerk of Court is respectfully requested to maintain under seal Docket Numbers 238, 244 and 248, and to close the motions pending at Docket Numbers 236, 237, 238, 242, 246, 247 and 248.

**SO ORDERED.**

DATED:   New York, New York
         February 13, 2026

_____
GARY STEIN
United States Magistrate Judge