May 29, 2026

**VIA ECF**

Hon. Gary Stein
United States Magistrate Judge
United States District Court
Southern District of New York

Re:    *Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC, et al.*,
        No. 1:22-cv-10185-GHW-GS—Joint Letter Regarding Discovery

Dear Judge Stein:

Plaintiff Northwest Biotherapeutics, Inc. ("NWBO") and all Defendants[1] respectfully submit this joint letter pursuant to the Court's May 20, 2026 order directing the parties to advise the Court as to the status of certain discovery disputes.  ECF 282.  The parties held a meet-and-confer on May 27, 2026 and reached agreement as to the search terms that NWBO will use to identify documents for review.  Disputes remain, however, concerning the discovery schedule and document production, which the parties address below.

---

[1]    Defendants are Citadel Securities LLC ("Citadel Securities"), G1 Execution Services LLC ("G1X"), GTS Securities LLC ("GTS"), Instinet LLC ("Instinet"), Lime Trading Corp. ("Lime"), and Virtu Americas LLC ("Virtu").

**Defendants' Position**

The premise of NWBO's extension request is that the parties need "time to resolve outstanding disputes and prepare for further discovery." That premise is wrong. Defendants respectfully request that the Court order NWBO to complete productions and serve a privilege log by June 26, 2026.

NWBO also suggests that the parties share responsibility for the current state of discovery. They do not. Defendants will not again catalog NWBO's numerous failures to engage, which have been detailed in prior submissions. *E.g.*, ECF 270; ECF 274. The pattern is clear: NWBO has repeatedly failed to participate meaningfully and produce responsive documents. It is telling that NWBO does not identify a single affirmative step it took to advance discovery during this period. NWBO cannot now burden Defendants with new or long-abandoned discovery demands untethered to its surviving allegations. More than sufficient time remains for NWBO to complete the productions it agreed to more than nine months ago, and for Defendants to make any additional agreed-upon productions, well in advance of the current August 28, 2026 fact discovery deadline.

## I.     NWBO Should Complete Productions by June 26

NWBO has produced zero electronic communications, barely any non-public documents, and none of the analyses underlying the SAC, which constitute the sole basis for NWBO's market manipulation allegations. Ex. A at 13-14. NWBO stated at the May 27 meet-and-confer that it planned to make a production on Thursday May 28 (it did not) and also previously represented that it would meet the May 18 substantial completion deadline (it did not). *Id.* NWBO's production today does not provide comfort that additional documents will be timely produced. Defendants therefore request that the Court order NWBO to complete its productions by June 26, 2026 to permit sufficient time for depositions prior to the close of fact discovery on August 28, 2026. *See Simmons v. Casella*, 2020 WL 1026798, at *2 (E.D.N.Y. Mar. 3, 2020) (denying "application to prolong discovery" as "[t]his case has lingered for far too long, and it is time to move it forward").

## II.    NWBO Should Provide Privilege Logs by June 26

The Court recognized that Defendants are "entitled to adequate discovery that will enable [them] to understand the analyses in question." ECF 281 at 5. At the May 27 meet-and-confer, NWBO appeared to assert that all such analyses are privileged, but refused to state which analyses will appear on the Court-ordered June 9 categorical log (for work product of its consulting expert), ECF 281—and refused to commit to providing any privilege log for the remaining analyses before July 31.

These analyses are integral to Defendants' ability to test and respond to NWBO's allegations. For example, Defendants cannot understand or replicate NWBO's analysis of the purported average price impact of spoofing episodes, ECF 150 ¶ 311, without the trading data, benchmark index data, and methodology used to construct the confidence intervals. Yet NWBO refuses to explain whether any of the data produced relates to any of the analyses in the SAC, claiming only that everything related to the analyses is privileged. As the Court noted, it is difficult to see how that underlying data could be privileged. ECF 281 at 5-6. The Court should order NWBO to (1) produce all non-privileged documents concerning the analyses referenced in the SAC, (2) for each analysis, produce and identify all underlying data, and (3) serve a complete

2

privilege log—including any analyses not covered by the June 9 log—no later than June 26, 2026, so that Defendants may raise any deficiencies promptly, as the Court contemplated. *Id.*

### III.    NWBO's Belated Search Terms Do Not Require an Extension and are Overbroad

As the Court has noted (ECF 282 at 4), Defendants reasonably understood the terms they proposed in February 2026 to be agreed, ran them, and completed their productions by May 18. It was not until May 21—one day after the Court's May 20 order on NWBO's extension request—that NWBO first proposed search strings for Defendants, as well as expanded date ranges and additional custodians. Ex. B. In addition to being untimely, NWBO's proposal is overbroad and technically flawed.

As a threshold matter, NWBO has provided no basis for seeking additional documents. Defendants' proposed terms were tailored to capture communications discussing NWBO in conjunction with the spoofing conduct NWBO has pleaded. *See, e.g.*, Exs. C-D. That the resulting productions are modest is unsurprising: Defendants are sophisticated market-making firms that trade thousands of securities, and there is no reason any would be frequently discussing a single over-the-counter penny stock like NWBO.

Each Defendant's production of communications was tailored to the surviving claims, using the methodology each Defendant disclosed in its June 2025 R&Os and that NWBO did not challenge. The variation in production volumes across Defendants therefore reflects the case as it survived the motion to dismiss: a Defendant alleged to have engaged in fewer or more concentrated surviving spoofing episodes has a narrower universe of potentially responsive documents. Lime's surviving episodes, for example, span less than a year; the production volume reflects that limited remaining alleged conduct, not any deficiency in its search.

In any event, Defendants remain willing to negotiate additional search terms, but NWBO's proposed search strings cannot be executed as drafted and are facially overbroad. Ex. E. String 1 alone contains more than one hundred terms, and all three use nested proximity operators that Defendants' e-discovery vendors must attempt to decompose to generate any hit count. String 1 sweeps in plainly nonresponsive material through expansive wildcards (*e.g.*, "data*" which broadly captures any document discussing data) and targets forms of alleged manipulation NWBO has not pleaded, including theories this Court has expressly held are not at issue in this case, such as naked short selling ("naked*"). ECF 137 at 11 n.9.

Strings 2 and 3 contain no NWBO-related limiter, which means they capture every discussion of automated trading across every security Defendants trade, and every compliance document referencing any SEC rule, surveillance, or supervisory function. That is precisely the overbreadth Judge Schofield rejected in *Harrington*. *See Harrington v. Bank of Am.*, No. 22-cv-2754 (LGS), Dkt. No. 278 at 1 (S.D.N.Y. May 28, 2024) (ordering a stock-symbol-specific limiter; plaintiff "is not entitled to all documents relating to the adequacy of Defendants' compliance program, policies and procedures," only those that "relate to spoofing or [the security at issue]").

Compounding these issues, NWBO now asks Defendants to review documents from December 2017 to present—an 8.5-year period when NWBO itself is reviewing documents only for the alleged "Relevant Period" ending August 1, 2022—despite not raising the issue until *after* Defendants conducted their searches and completed their productions in reasonable reliance on that unchallenged position. This position is both unreasonable and untimely.

NWBO has rejected Defendants' efforts to engage on these issues. Some Defendants have agreed to attempt to assess hit counts using a version of NWBO's proposed terms that are possible to run. For example, Citadel Securities' attempt to run slightly modified versions resulted in hundreds of thousands of hits. Ex. A at 3. NWBO has complained about these attempts rather than try to reasonably engage. Defendants nevertheless believe these issues can be swiftly addressed if NWBO agreed to discuss modified terms.

The remaining items do not require an extension of the May 18 deadline. To the extent Defendants agree to additional searches or further agree to add custodians, they will do so promptly and complete any supplemental productions by June 26, 2026.

## IV. Defendants' Trading-Data Productions Are Complete and Consistent with the Court's Rulings

Defendants have produced trading data for the alleged spoofing episodes that survived the motion to dismiss—for example, some Defendants produced data from FINRA and trading venues showing what was displayed to the market for the full day for every one of its surviving spoofing episodes. Defendants also produced internal order and execution data showing all sell-side orders active during the two-minute window preceding each surviving Executing Purchase (when the Baiting Orders were allegedly placed, *see* SAC ¶ 276) and corresponding alleged "Executing Purchases." This data is more than sufficient to analyze the precise order patterns, cancellation rates, and price impacts for NWBO's surviving episodes, including by providing ample periods of trading to compare to the alleged spoofing.

Although NWBO previously raised Defendants' production of trading data as a disputed issue, NWBO did not raise the issue during the parties' meet and confer convened specifically to address the issues in this submission, leaving Defendants to understand NWBO no longer intended to pursue the issue. NWBO's request for trading data spanning all days "from December 2017 to the present day," is untethered to the scope of the case that survived the motion to dismiss, extends years beyond NWBO's own alleged Relevant Period, and is disproportionate to the "eight-figure[s] [] or even [] seven-figure[s]" remaining in controversy.

The same is true for NWBO's belated request for "algorithms." NWBO has not demonstrated why the Defendants' proprietary source code—which is highly sensitive—is relevant to its claims. Defendants have explained that the routing systems at issue were not unique to NWBO securities but operated uniformly across all OTC Link securities. NWBO's request is neither reasonably tailored nor proportional to the needs of the case.

## V. Conclusion

NWBO's attempt to blame Defendants for the present state of discovery is unsupported by the record. At every stage, Defendants have engaged constructively and pursued discovery relevant to their defenses through the mechanisms available under the Rules, including RFPs and RFAs—a proper exercise of their discovery rights and a good-faith effort to secure information reasonably necessary to litigate this case. To the extent discovery has stalled, it is not because Defendants have sought information to which they are entitled, but because those efforts have not been met with meaningful engagement or timely production. Defendants seek only to move this case forward in an efficient and orderly manner. For these reasons, Defendants respectfully request that the Court (i) order NWBO to complete its document production and serve a complete privilege log by June 26, 2026, and (ii) deny NWBO's request for a further extension of the case schedule.

**Plaintiff's Position**

On May 27, pursuant to the Court's order, the parties conducted a 90-minute meet-and-confer. They resolved some issues. But significant disputes remain that require the Court's guidance. Even so, NWBO believes it can substantially complete its document productions by July 31, 2026, as per the Court's order on May 20.

***NWBO Has Made Significant Productions and Resolved the Search-Term Dispute.*** To date, NWBO has produced 4,508 documents. NWBO's production on May 29 consisted of 1,042 documents, more than <u>all</u> of Defendants' combined productions to date.

Still, NWBO has agreed to produce more documents. Following significant compromises by NWBO, the parties reached an agreement on search terms that NWBO will run for additional review and production. The total hit count for that review universe is 61,413 documents. That review is ongoing and NWBO's productions will continue on a rolling basis.

***Defendants Have Not Satisfied Their Discovery Obligations with a Few Hundred Documents and Unilateral Search Limits.[2]*** The parties remain at a fundamental impasse over Defendants' productions. To date, the remaining Defendants have only produced 823 documents:

| Defendant | Citadel | G1X | GTS | Instinet | Lime | Virtu | Total |
|---|---|---|---|---|---|---|---|
| Production Count | 257 | 156 | 229 | 69 | 20 | 92 | 823 |

The Court noted that it is improbable that "so few" relevant documents exist in this type of case. ECF No. 282. Yet Defendants claim they substantially completed their productions.

Defendants' searches were wholly deficient. Defendants unilaterally selected terms that do not fairly capture NWBO's Requests for Production or the allegations at issue. NWBO has tried to narrow the disputes. It condensed its proposed searches into three search strings:[3] (1) (NWB* OR [other NWBO name and cusip variations]) w/25 (trad* OR buy* OR [other market related terms]); (2) (algorith* OR "high frequency" OR [other trading terms]) w/25 (trad* OR order* OR [other similar limiting terms]); (3) ("rule 2020" OR "rule 5210" OR [other regulatory terms]) w/25 (spoof* OR layer* OR [other related manipulation terms]).

Defendants agreed to provide hit counts—while insisting that no further productions are required. Only Citadel has so far provided a hit report, which provides by-string hit counts for the three searches. While NWBO believes these numbers are reasonable given the complexity and

---

[2] The parties have also made progress in discussions regarding custodians. NWBO proposed only minor modifications, with only one Defendant asked to include more than one additional custodian.

[3] NWBO is willing to discuss remedies to technical issues that do not alter the substance of the terms. Defendants also claim that an NWBO-related limiter is necessary for all terms. But there are many materials, however, that would not be expected to mention NWBO such as materials related to general compliance procedures and automated algorithmic trading strategies and protocols.

scope of the case,[4] it is willing to further limit its proposed search in good faith—assuming Defendants are also willing to negotiate in good faith and will agree to make further productions.

**_Defendants Refuse to Search for Documents Across the Relevant Period._**  Defendants' limited productions were restricted by unreasonably short, self-imposed relevant periods:

| Defendant | Plaintiff's Proposal | Citadel | G1X | GTS | Instinet | Lime | Virtu |
|---|---|---|---|---|---|---|---|
| Date Range | December 5, 2017 - Present | December 5, 2017 - March 28, 2022 | August 15, 2018 - March 8, 2021 | August 26, 2020 - December 24, 2021 | December 31, 2019 - April 15, 2021 | November 30, 2020 - April 15, 2021 | February 28, 2019 – March 26, 2021 |

The operative complaint alleges spoofing up through August 1, 2022.  However, NWBO also seeks injunctive relief for alleged, ongoing harm.  Discovery in connection with that claim should necessarily extend from December 5, 2017 to the present day.  Defendants' attempt to limit their searches is unsupported and contrary to their prior representations.  As the parties are at an impasse, NWBO anticipates it will need to bring a motion to compel in the coming weeks.

**_Defendants Confine Trading Data Productions to a Narrow Window._**  Beyond search terms, there are issues with respect to Defendants' targeted review and production of trading data. Defendants have previously represented that "Defendants' position is not that all discovery will be limited to the specific trading at issue in the 'spoofing episodes' that survived the motion to dismiss."  ECF No. 216 at 44:5–6.  Their current position does exactly that.[5]

In denying Defendants' motion to dismiss, the Court relied on cancellation rates alleged across the entire relevant period to hold that NWBO adequately pleaded that Defendants did not intend to fill the Baiting Orders.  ECF No. 137 at 62.  The second Report and Recommendation reiterated that it had "upheld the sufficiency of NWBO's pleading [as to manipulative act, scienter and reliance] as to the entire scheme."  ECF No. 174 at 50; *see also* ECF No. 188 at 13–14. Defendants' review and production of trading data should be from December 2017 to the present day.  Courts have emphasized that scienter can be established through a consistent pattern of spoofing behavior.  Defendants have acknowledged that complete production of trading data allows plaintiffs to search for "patterns of spoofing that you can point to, actual patterns of spoofing."  ECF No. 225, 29:4-14.  Without access to Defendants' complete trading data, Plaintiff is unduly restricted in evaluating Defendants' bona fide market-making trading patterns versus their manipulative spoofing tactics and unduly limited in proving scienter or furthering its claim for injunctive relief for alleged, ongoing harm.

---

[4] Defendants suggest that by searching for terms related to shorting, NWBO is fishing.  Not so. While the Court stated that short selling was not required among the mechanisms of the spoofing scheme, short selling is directly tied to profit motive incentives underlying the alleged activity.

[5] *See* ECF No. 274 at 2 (stating Defendants' productions are "tailored" to the spoofing episodes that survived the motion to dismiss and that data limited to the dates of the spoofing episodes is "far more" than sufficient).

6

***Defendants' Blanket Objections Leave RFP Categories Unanswered.*** Defendants' productions do not include documents responsive to significant portions of NWBO's Requests for Production. NWBO raised this issue several times, including during the May 27, 2026 meet and confer. But compromise efforts failed and Defendants have refused to produce these documents.

For example, Defendants have yet to produce algorithms underlying the relevant trading. No party has produced these algorithms despite the Court's prior acknowledgment that they are discoverable,[6] with Citadel asserting it did not use trading algorithms at all.[7] NWBO has also raised the absence of materials regarding regulatory and internal investigations, including SEC investigations, into potential related misconduct, as well as data regarding short sales.

***Defendants' Discovery Tactics are Impeding Meaningful Progress.***[8] Defendants have both stonewalled meaningful discovery and misused discovery devices to force NWBO to spend time and resources on frivolous requests, often relitigating issues settled by court order.

For example, the Court denied Defendants' motion to compel the production of certain underlying calculations, as it unreasonably shifted Defendants' investigative burden to NWBO. Despite the Court's direction that Citadel could ask NWBO questions if it could not validate specific calculations, Citadel sent NWBO both a letter and Requests for Admission that ask Plaintiff to validate over 200 pages of Citadel's replicated calculations and to admit to their accuracy – attempting once again to shift the burden to NWBO.

Similarly, after the Court granted NWBO's request for a protective order as to its non-testifying legal expert, Mr. Mitts, Defendants asserted that based on a limited caveat in that order, they are broadly entitled to "materials supporting [various] analyses and methodologies underlying the complaint… along with related documents and communications." The sweeping requests for supporting materials fall squarely within the scope of the Court's protective order.[9]

***Defendants Misconstrue Purported Delay.*** Defendants have mischaracterized recent discovery activity between the parties to further a false narrative that NWBO implicitly acquiesced

---

[6] *See* ECF No. 216, 40:23-35 ("Do you disagree that Defendants should have to produce their trading algorithms for NWBO during the entire relevant period? I'm not sure how that gets limited, frankly."); *id.* 41:3-7; *id.* 42:2-5.

[7] Citadel's answer is inconsistent with public representations. *See, e.g.*, *Markets & Trading*, Citadel Sec. (May 29, 2026 at 3:42 ET), https://www.citadelsecurities.com/careers/markets-and-trading/. Citadel has also represented that "there are not ticker-specific algorithms. It is one giant model that governs market-making… the model is what determines how orders are routed and handled and everything else." ECF No. 225 30:8-13.

[8] Rather than attempting to justify their inadequate productions, Defendants' submission seeks only to throw stones. NWBO firmly rejects Defendants' characterization of the discovery process to date. It is Defendants who refuse to produce more than 300 documents. NWBO has been making meaningful productions.

[9] Defendants misstate NWBO's position. NWBO made clear during the May 27 Meet and Confer that it intends to produce the data underlying these analyses. Nor has NWBO asserted that it will not produce relevant non-privileged materials. But the caveat in the Court's protective order relates to materials necessary to understand the analyses in the Complaint, not all underlying analysis in connection with the Complaint.

to Defendants' deficient search terms.  For example, Plaintiff had notified Defendants that it intended to raise discovery issues during a March 19 and confer, only for Defendants to cut the call short after addressing their own contentions.  NWBO's subsequent efforts to schedule meet and confers with Defendants individually and revisit those same issues were rejected.

Similarly, the parties agreed to exchange search hit counts on April 17, with NWBO highlighting deficiencies in one Defendant's search that same night.  Defendants asserted that they had substantially completed their productions barely two weeks later on May 4.[10]  Any assumption that NWBO implicitly acquiesced to Defendants' search terms between those dates is baseless.

---

[10] Defendants misleadingly describe the parties' April 28 call as a "meet and confer to discuss search terms."  ECF No. 274.  But the scope of that call was limited to issues relating exclusively to NWBO's search terms.  The call offers no basis to assert implicit acceptance of Defendants' proposed terms.

Respectfully submitted,

/s/ Stephen W. Tountas (with permission)
Stephen W. Tountas
Andrew L. Schwartz
Andrew C. Bernstein
KASOWITZ LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
stountas@kasowitz.com
aschwartz@kasowitz.com
abernstein@kasowitz.com

*Counsel for Plaintiff Northwest Biotherapeutics, Inc.*

/s/ William A. Burck
William A. Burck
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel: 202-538-8000
Fax: 202-538-8100
williamburck@quinnemanuel.com

Christopher D. Kercher
Peter H. Fountain
Leigha Empson
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, New York 10016
Tel: 212-849-7000
Fax: 212-849-7100
christopherkercher@quinnemanuel.com
peterfountain@quinnemanuel.com
leighaempson@quinnemanuel.com

Jonathan K. Youngwood
Meredith Karp
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
jyoungwood@stblaw.com
meredith.karp@stblaw.com

*Counsel for Defendant Citadel Securities LLC*

/s/ Marjorie J. Peerce (with permission)
Marjorie J. Peerce
Lauren W. Engelmyer
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
T:  (212) 223-0200
peercem@ballardspahr.com
engelmyerl@ballardspahr.com

M. Norman Goldberger (admitted *pro hac vice*)

9

J. Chesley Burruss
Ballard Spahr LLP
1735 Market Street, 51st Fl.
Philadelphia, PA 19103
T:  215-665-8500
goldbergerm@ballardspahr.com
burrussc@ballardspahr.com

*Counsel for Defendant G1 Execution Services LLC*

/s/ *Peter G. Wilson* (with permission)
Peter G. Wilson
Christian T. Kemnitz (admitted *pro hac vice*)
Benjamin C. Levine (admitted *pro hac vice*)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
peter.wilson@katten.com
christian.kemnitz@katten.com
benjamin.levine@katten.com

*Counsel for Defendant GTS Securities LLC*

/s/ *Richard A. Edlin* (with permission)
Richard A. Edlin
Daniel P. Filor
Nicholas T. Barnes
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
edlinr@gtlaw.com
filord@gtlaw.com
barnesn@gtlaw.com

*Counsel for Defendant Instinet LLC*

/s/ *Kevin P. Broughel* (with permission)
Kevin P. Broughel
Zoe Lo

10

Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Phone: (212) 940-6343
Fax: (212) 940-8776
kevin.broughel@katten.com
zoe.lo@katten.com

*Counsel for Defendant Lime Trading Corp.*


*/s/ Andrew G. Gordon* (with permission)
Andrew G. Gordon
Audra J. Soloway
Jessica S. Carey
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
agordon@paulweiss.com
asoloway@paulweiss.com
jcarey@paulweiss.com

*Counsel for Defendant Virtu Americas LLC*

cc:     All counsel of record

11