Hon. Gary Stein                                                    August 12, 2026
United States District Court, Southern District of New York

Re:    *Northwest Biotherapeutics, Inc. v. Citadel Securities LLC, et al.*, No. 1:22-cv-10185—
       <u>Reply in Support of Request for Pre-Motion Conference</u>

Dear Judge Stein:

NWBO's opposition confirms why clarification or reconsideration of Paragraph 5 of the July 10 Order is warranted.

The July 10 Order provided that evidence about algorithms is relevant "if the algorithms were used to conduct the trading in NWBO stock at issue." ECF 293 at 2. The Court's relevance determination was conditional, and that condition has not been met. Defendants did not use "algorithms," as that term is defined by the SEC, to trade NWBO. They ████████████ ████████████████████████████████████ ████████████. *See* ECF 299-2 ¶¶ 2-5. Tellingly, NWBO has never identified what in the code is relevant, or why it needs this code, simply demanding it be produced "in full." Even putting aside this issue, NWBO has no answer to *Ximuos*, which held that even where source code is relevant, it need not be produced where, as here, the information can be obtained through less intrusive means. It is undisputed that the parties have not exhausted the less intrusive means of discovery that *Ximuos* requires. And NWBO's own critique of the trading data proves the point: source code is not the answer to a data question, and producing millions of lines of code that were used to trade every OTC security would add nothing to the analysis of what happened in the market.

## I.    NWBO's own authorities defeat its position.

NWBO claims to identify a civil spoofing case in which code was produced, *CFTC v. Thakkar*, No. 18-cv-619 (N.D. Ill.). This is wrong. The code in *Thakkar* was produced in a pre-suit criminal investigation. *See* 18-cv-619, ECF 28 at 5; *United States v. Thakkar*, No. 18-cr-36, ECF 1 (N.D. Ill.). And it was custom software built for one trader and intentionally designed to spoof—a manipulative purpose confirmed by a statement of work, "email correspondence, multiple phone calls, and several web meetings." *Thakkar*, 18-cv-619, ECF 67 ¶¶ 23-30. Defendants' code is the opposite: general-purpose routing and quoting infrastructure used with thousands of securities, with nothing specific to NWBO and no facts supporting an assertion that the code was intended to spoof. *See, e.g.*, ECF 299-1 ¶ 6. Significantly, even in *Thakkar*, where the government had the code in hand, the complaint was based on the government's "analysis of trade and order data." *Thakkar*, 18-cr-36, ECF 1 ¶¶ 31-33.

*Harrington* is also instructive. There, the plaintiff's spoofing expert did not rely on any source code or algorithms and testified that they "were not necessary for him to reach his conclusions." *Harrington Glob. Opportunity Fund, Ltd. v. BofA Sec., Inc.*, 21-cv-761, ECF 532 at 11 (S.D.N.Y.). He stated that he was "comfortable with the conclusions he drew based on the data that was available to him." *Id.* at 11-12. The court denied the motion to exclude, noting that the algorithms no longer existed when the plaintiff sought them and rejecting the argument that the expert needed algorithms or code to opine on spoofing. 2026 WL 836248, at *1, *18. The alleged spoofing was analyzed based on the trading data alone—just as can be done here.

## II.    NWBO's critique of the trading data confirms that source code is unnecessary.

NWBO builds its opposition around three trading-data examples it says cannot be explained without source code. Yet each of those examples can be explained with trading data, and none of them implicates Defendants' source code.

Two of the examples—the quote activity between ███████████████████████ ████████████████████████████████████████—fall outside any surviving baiting period and thus were not produced. NWBO itself acknowledges the December 19 activity occurred after the alleged executing purchase. ECF 303 at 2 n.2. As to the ████████████████ example, Citadel Securities produced everything NWBO says is missing. NWBO references a client sell order and questions why Citadel Securities did not interact with the best bid posted on OTC Link to fill that client's order. The data show that ██████████████████████ ████████████████████████████████████████████████████████████████████████ ████[1]████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████—showing that the order was genuine and executed, the opposite of a fictitious order placed with no intent to trade. NWBO has not identified any purportedly missing data that bears upon any surviving spoofing episode—or any way in which Defendants' source code would fill a gap.

To the extent NWBO has genuine questions about the data, the answer is a conferral and, if needed, targeted discovery—not the wholesale production of Defendants' most sensitive proprietary asset. Source code would not answer these questions in any event, and NWBO has not explored less intrusive means of discovery. That NWBO raises these data questions for the first time in Opposition, on issues the parties have never conferred on, is itself reason to let the data process run before any source-code production is considered.

## III.    Production of source code is not proportional.

NWBO has no answer to *Xinuos*, which is directly on point. There, as here, the plaintiff sought source code and argued it was relevant. The court agreed it was relevant—but denied production anyway, finding that relevance was not enough: production of "inherently sensitive" source code must also be "necessary and proportional to the needs of the case," weighing sensitivity, burden, and "the potential availability of alternate means to obtain the information." *Xinuos v. IBM Corp.*, 2024 WL 5010717, at *2-4 (S.D.N.Y. Nov. 13, 2024) (citations omitted). The court directed the plaintiff to pursue less intrusive alternatives first, with leave to renew only if those proved inadequate—precisely the sequence Defendants propose. *Xinuos* even identifies those alternatives: "interrogatories, deposition testimony, and potential stipulations"—not the production of source code. *Id.* (citation omitted).

NWBO's authority, *Radio Music License Comm. v. BMI*, addressed only how to protect business documents a party had already agreed to produce—not whether inherently sensitive, disproportionate source code must be produced in the first place. 347 F.R.D. 262, 267 (S.D.N.Y. 2024). The same is true of the Protective Order: Section 4 governs *how* sensitive material is handled once it is producible; it does not make a disproportionate demand proportional. And

---

[1]  Unlike trading on Nasdaq or the NYSE, where orders are automatically matched by a centralized matching engine, executions on OTC Link are not automatic—participants must link out to an identified counterparty's displayed quote and wait for that counterparty to respond before a trade can occur.

NWBO does not engage with Defendants' unrebutted showing that reconstructing the operative code would be tremendously burdensome. *See* ECF 299-1 ¶¶ 9-11, 14.

For these reasons, Defendants respectfully request that the Court clarify that the July 10 Order does not require production of firm-wide source code absent a further showing by NWBO or, in the alternative, reconsider that portion of the Order. At a minimum, Defendants request the opportunity to brief the issue fully, and that the parties be directed to confer on the trading data NWBO contends it needs before any source-code production is considered.

Respectfully submitted,

/s/ *William A. Burck*
William A. Burck
Peter H. Fountain
Leigha Empson
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, New York 10016
Tel: 212-849-7000
Fax: 212-849-7100
williamburck@quinnemanuel.com
peterfountain@quinnemanuel.com
leighaempson@quinnemanuel.com

Jonathan K. Youngwood
Meredith Karp
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
jyoungwood@stblaw.com
meredith.karp@stblaw.com

*Counsel for Defendant Citadel Securities
LLC*

/s/ *Lauren W. Engelmyer* (with permission)
Lauren W. Engelmyer
J. Chesley Burruss
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
T: (212) 223-0200
engelmyerl@ballardspahr.com
burrussc@ballardspahr.com

M. Norman Goldberger (admitted *pro hac
vice*)
Ballard Spahr LLP
1735 Market Street, 51st Fl.
Philadelphia, PA 19103
T: 215-665-8500
goldbergerm@ballardspahr.com

*Counsel for Defendant G1 Execution Services
LLC*

/s/ *Peter G. Wilson* (with permission)
Peter G. Wilson
Christian T. Kemnitz (admitted *pro hac vice*)
Benjamin C. Levine (admitted *pro hac vice*)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
peter.wilson@katten.com
christian.kemnitz@katten.com
benjamin.levine@katten.com

*Counsel for Defendant GTS Securities LLC*

/s/ *Richard A. Edlin* (with permission)
Richard A. Edlin
Daniel P. Filor
Stephen Day
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
edlinr@gtlaw.com
filord@gtlaw.com
days@gtlaw.com

*Counsel for Defendant Instinet LLC*

4

/s/ *Kevin P. Broughel* (with permission)
Kevin P. Broughel
Zoe Lo
Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Phone: (212) 940-6343
Fax: (212) 940-8776
kevin.broughel@katten.com
zoe.lo@katten.com

*Counsel for Defendant Lime Trading Corp.*

/s/ *Andrew G. Gordon* (with permission)
Andrew G. Gordon
Audra J. Soloway
Jessica S. Carey
Alison R. Benedon
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
agordon@paulweiss.com
asoloway@paulweiss.com
jcarey@paulweiss.com
abenedon@paulweiss.com

*Counsel for Defendant Virtu Americas LLC*

cc:     All counsel of record via ECF