UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTHWEST BIOTHERAPEUTICS, INC., Plaintiff, v. CITADEL SECURITIES LLC, G1 EXECUTION SERVICES LLC, GTS SECURITIES LLC, INSTINET LLC, LIME TRADING CORP., AND VIRTU AMERICAS LLC, Defendants. | Case No. 1:22-cv-10185-GHW-GS |

**DECLARATION OF JOE PLEFFNER**

I, Joe Pleffner, state that I am over 18 years of age, and declare as follows:

1. I make this declaration based on my personal knowledge and experience. If called as a witness, I could and would testify competently thereto.

2. I make this declaration in response to the Court's August 27, 2026 Order ("Order") (Dkt. 326), and for the purpose of aiding the Court's decision on the Defendants' letter-motion for reconsideration. (Dkt. 300).

3. This declaration pertains to the period of September 9, 2020 through December 10, 2021, which spans the dates of the first and last alleged "spoofing episodes" specific to GTS alleged in the Second Amended Complaint (Dkt. 150) ("SAC"), and that survived the Court's Memorandum Opinion & Order Adopting Report and Recommendations. See Dkt. 174, 188. ("Relevant Period").

4. I am Head of Wholesale Market Making and a Principal at GTS Securities LLC ("GTS"). I have held this role since May 2019. As Head of Wholesale Market Making, I am responsible for overseeing the trading desk and traders who facilitate GTS' Wholesale Market

Making line of business. This includes providing liquidity in both exchange-listed and over-the-counter ("OTC") securities. During the Relevant Period, I managed a team of approximately eight (8) traders.

5. Northwest Biotherapeutics, Inc. common stock ("NWBO") is an OTC security that, like tens of thousands of other symbols, GTS stood ready to buy and sell continuously during the Relevant Period in connection with its Wholesale Market Making business. I have personal knowledge about GTS' trading practices in the OTC market during the Relevant Period, including the electronic processes, automated order handling systems, and manual trading that GTS employed in connection with its trading in NWBO stock (and any other OTC security during the Relevant Period). All of GTS' trading in NWBO stock during the Relevant Period was conducted as part of its Wholesale Market Making business.

6. To directly answer the questions the Court raised in the Order, and as explained in further detail below, GTS did not engage in any algorithmic trading of NWBO during the Relevant Period, nor did GTS use any algorithm or source code that altered the timing, price, volume, or any other instructions received with GTS' client orders in NWBO.

**<u>GTS' Wholesale Market Making Business</u>**

7. GTS is a broker-dealer registered with the SEC and is a member of the Financial Industry Regulatory Authority ("FINRA"). GTS offers market-making and execution services to clients. This includes serving as an NYSE designated market maker, as a market maker in exchange-traded funds (or "ETFs"), a market maker in exchange listed securities, and as relevant here, as a Wholesale Market Maker in OTC securities.

8. As a Wholesale Market Maker in OTC securities like NWBO, GTS provides liquidity to the OTC market by standing ready to buy or sell OTC securities at any time. To achieve this end, GTS publishes quotes to buy or sell OTC securities.

9. GTS' Wholesale Market Making business aims to achieve the best execution results for its clients, which are primarily retail brokerage firms (*i.e.*, broker-dealers that have direct relationships with individual retail investors). Put succinctly, GTS is a service provider to these

clients. Retail investors want to trade OTC securities, and GTS makes markets in those OTC securities to service that investor interest. This process consists of GTS' retail brokerage clients directing "Order Flow" at their sole discretion to GTS. GTS' Wholesale Market Making business receives Order Flow in thousands of different OTC securities on a daily basis, and in large quantities.

10. GTS receives orders from its clients and may execute those client orders in a principal capacity (i.e., with its own capital and for its own account) or riskless principal capacity. Riskless principal trading is the functional equivalent of agency trading; GTS is functioning purely as an intermediary (i.e., riskless principal trades occur when GTS executes a trade as principal to fill a client order and immediately and at the same price fills the order for the client in a riskless capacity, such that there is no trading risk to GTS). In the marketplace, GTS sends and receives OTC Link orders on the OTC Link platform to trade in a principal capacity often with the sole purpose to fill unexecuted client orders in a riskless principal capacity.

11. Traders on the Wholesale Market Making desk are responsible for managing specific "names," (securities), throughout a given day. This includes managing quotes in those names and facilitating execution. Given the substantial volume of orders across thousands of names, GTS' traders do not manually place every market making order (whether to facilitate a client fill or otherwise provide liquidity to the market). Instead, GTS uses automated client order handling and quote management systems, and traders provide a manual element to the trading and trade facilitation processes.

**<u>GTS Used Automation in Connection with Client Order Handling and Quote Management. It Does Not (and Did Not) Deploy Algorithmic Trading Strategies.</u>**

12. "Algorithmic trading" should be understood to mean the use or deployment of computer programming specifically designed to place orders and execute trades when certain conditions are met (*e.g.*, timing, price, or quantity) as a computer-driven trading *strategy* designed to generate profits from specific market trends.

13. GTS does not have, and has never used, any such algorithmic trading strategies to trade NWBO during the Relevant Period. To be clear, GTS does not have any computer model dictating its trading decisions in NWBO or automatically quoting NWBO based on market conditions.

14. GTS does utilize automated order handling systems to trade OTC securities and did so during the Relevant Period in connection with NWBO. These tools are not "algorithms" as that term is set forth above. Instead, they simply facilitate basic order handling functions, including auto-execution when eligible, riskless principal executions, sending quotes to OTC Markets for display, sending OTC Link orders to other market participants, and ensuring compliance with regulatory requirements like limit order display and firm quote obligations. Such automated procedures were used for operational or regulatory compliance functions only. None of GTS' electronic processes or automation utilized to facilitate the filling of client orders—or the source code underlying those functions—altered the timing, price, volume, or any other instructions received with clients' orders. To be clear, GTS does not deploy any algorithmic strategies to manage GTS's principal trading interest in NWBO.

15. The only decisionmakers at GTS determining the trading strategy in NWBO during the Relevant Period were humans – i.e., the GTS traders filling client orders and market making.

16. More specifically, I reviewed GTS' internal trade execution data and OTC Link quote data for the Relevant Period in an attempt to identify the purported "Executing Purchases" attributable to GTS during the so-called "Baiting Periods" alleged in the SAC. While I could not reconcile the two datasets with the allegations in the SAC, I was able to confirm that the vast majority of GTS' purchases in NWBO on the dates of purported "Executing Purchases" that were effected during the "Baiting Periods," involved trades effected to facilitate the execution of client orders and no transactions in NWBO were effected in furtherance of an algorithmic strategy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 9, 2026
New York, NY

Joe Pleffner