**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NORTHWEST BIOTHERAPEUTICS, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>CANACCORD GENUITY LLC, CITADEL SECURITIES LLC, G1 EXECUTION SERVICES LLC, GTS SECURITIES LLC, INSTINET LLC, LIME TRADING CORP., SUSQUEHANNA INTERNATIONAL GROUP LLP, and VIRTU AMERICAS LLC,<br><br>Defendants. | No. 1:22-cv-10185-GHW-GS<br><br>**INSTINET DECLARATION OF MARK FRANCINI SUBMITTED PURSUANT TO COURT ORDER DATED AUGUST 27, 2026** |

I, Mark Francini, declare as follows:

1. I am Co-Head of Sales and Trading Supervision at Instinet LLC. As Co-Head of Sales and Trading Supervision, my team is responsible for supervision of the Firm's sales and trading personnel and activities including, among other things, review of trading activity, including algorithmic trading, effected through the Firm. I have personal knowledge of the facts stated below.

2. This declaration pertains to the "Relevant Period" alleged in the Second Amended Complaint (December 5, 2017 to August 1, 2022), and the alleged approximately sixteen incidents of alleged spoofing claims against Instinet, LLC ("Instinet") on dates October 20, 2020, October 27, 2020, November 27, 2020, and April 1, 2021 (the "Remaining Instinet Alleged Spoofs"), which were not dismissed by the Court in its Memorandum Opinion and Order, dated March 26, 2025 (adopting Report and Recommendation, dated January 27, 2025) (the "Motion to Dismiss Ruling"). *See* Exhibits 1, 3 and 6 to Second Amended Complaint.

3. Among broker-dealers "algorithm" has a specific meaning that generally refers to programmed logic that automatically makes and implements decisions relating to securities trading to achieve a desired strategy. An algorithm may, for example, determine whether, when, where, at what price or in what quantity an order is routed, modified or executed. For instance, the SEC's *Staff Report on Algorithmic Trading in US. Capital Markets*, dated August 5, 2020, refers to an automated system that utilizes a rich array of market information to very quickly assess the state of the market, to determine when, where, and how to trade, and then to implement the resulting trading decision(s) in the marketplace, including, for example, determining the instrument to be invested in or traded, the price of a bid or offer, the risk of a trade appropriate to a firm's available capital, or the broker to which an order should be sent.

4. Instinet did not engage in any proprietary trading of NWBO during the Relevant Period using any algorithm or otherwise.

5. The Remaining Instinet Alleged Spoofs involved processing directed orders on behalf of clients. No Instinet algorithm was used in the Remaining Instinet Alleged Spoofs. Any source code of Instinet which was used did not alter or affect the timing, price, volume, or any other characteristic of the client's orders in the Remaining Instinet Alleged Spoofs.

6. Non-broker-dealer laypeople occasionally refer to "algorithm" to mean any electronic process or automation that simply automates basic order handling functions or that is designed to comply with regulatory requirements such as limit order display. In this broad layperson interpretation of "algorithm," Instinet used an order management system to route quote messages in the thousands of different securities, including NWBO, on behalf of its customers. Instinet used this order management system to transmit orders to NYSE Arca or OTC Link for display, to route messages to access the quotes of other market participants displaying quotes on

the platforms, and for other non-algorithmic trade management purposes.

7. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
September 9, 2026

*Mark Francini*

MARK FRANCINI
Co-Head of Sales and Trading Supervision
Instinet LLC