**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NORTHWEST BIOTHERAPEUTICS, INC.,

Plaintiff,

v.

CANACCORD GENUITY LLC, CITADEL SECURITIES LLC, G1 EXECUTION SERVICES LLC, GTS SECURITIES LLC, INSTINET LLC, LIME TRADING CORP., AND VIRTU AMERICAS LLC,

Defendants.

Case No. 1:22-cv-10185 (GHW) (GS)

I, Brian Rorke, declare as follows:

1. I submit this declaration in response to the Court's August 27, 2026 Order (Dkt. No. 326), which directed each Defendant, including G1 Execution Services LLC ("G1X"), to submit a sworn declaration "affirmatively stating whether Defendant did or did not engage in any algorithmic trading of [Northwest Biotherapeutics, Inc. ("NWBO")] during the relevant time period and, if it did not do so, offer a detailed explanation on how the trading was conducted," and, "[t]o the extent the trading involved processing orders on behalf of clients," to "discuss whether any algorithm or source code of Defendant may have altered or affected the timing, price, volume, or any other characteristic of the client's orders." (Dkt. No. 326 at 3).

2. I am the Chief Compliance Officer of G1X, a position I have held since January 2015. I make this declaration based on my personal knowledge.

3. The information in this declaration pertains to G1X's trading in the common stock of NWBO during the period December 5, 2017 to August 1, 2022, which I understand is the alleged "Relevant Period" in Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC, et al., No. 1:22-cv-10185 (GHW)(GS) (S.D.N.Y.) (the "Litigation").

4. G1X did not engage in any algorithmic trading of NWBO stock during the Relevant Period. This is consistent with G1X's Response to Interrogatory No. 3 of Plaintiff's First Set of Interrogatories, served November 5, 2025, in which G1X stated that it "did not use Algorithms to trade NWBO during the Relevant Period" and that, during that period, G1X "used a system that routed orders in NWBO entirely to OTC Link for display, linked out to other market participants displaying quotes on OTC Link, or principally filled the order," and that "[t]his system was not specific or unique to NWBO." (Dkt. No. 324-2 at 45).

5. During the Relevant Period, NWBO traded in the over-the-counter ("OTC") market. OTC trading involves market participants buying and selling securities directly from one another, rather than through a centralized, anonymous exchange such as the New York Stock Exchange or Nasdaq.

6. The only venue on which G1X traded NWBO stock during the Relevant Period was OTC Link, an interdealer quotation system operated by OTC Markets Group, and not a centralized exchange that automatically matches buyers and sellers.

7. OTC Link allows dealers such as G1X to post quotations reflecting the prices at which they are willing to buy or sell a given security. If another market participant wishes to trade at a posted price, that participant sends an electronic message — commonly referred to as a "link" — directly to the dealer that posted the quote, requesting to trade at the quoted price and size. The trade is executed only if the dealer that posted the quote agrees. OTC Link does not automatically pair buyers and sellers; it simply displays each participant's posted prices and relays messages between participants.

8. G1X utilized a combination of third party and internal electronic systems to receive client orders in NWBO, format each order's price and quantity for transmission to OTC Link, and execute the order — whether by filling it as principal from G1X's own inventory, posting a quotation to buy or sell on OTC Link, or "linking" to another market participant's posted quotation on OTC Link.

9. Whether an incoming client order in NWBO was processed as a "marketable" order (i.e., one priced so that it could execute immediately against the prevailing OTC consolidated quote) or a "non-marketable" order (i.e., one that could not execute immediately against the prevailing OTC consolidated quote) depended on the price of the order relative to prevailing quotations on OTC Link — not on any algorithmic trading strategy.

10. When G1X received a marketable client order in NWBO, G1X's systems — or, at times, an individual trader — could fill the order as principal from G1X's own inventory or "link" to another market participant's quote on OTC Link. When G1X received a non-marketable order, G1X's systems would either display the order as a quotation on OTC Link or hold it until it could be displayed as a quotation consistent with the provisions of FINRA Rule 6460.

11. These processing steps reflected the mechanics of OTC Link — including that OTC Link permits a dealer to post only one quotation per side (buy and sell) per symbol — and did not involve any algorithmic trading strategy.

12. G1X's systems did not alter the timing, quantity, side, price, or any other relevant characteristics of a client's NWBO order. Moreover, for trading in OTC securities like NWBO, G1X does not offer clients services such as algorithmic trading tools that would alter the client's order.

13. At times, G1X was able to provide a client with a better execution price than the price the client specified in its order. For example, if a client submitted an order to sell NWBO shares at a given price, and another market participant on OTC Link was displaying a bid to buy at a higher price, G1X could "link" to that higher bid and pass some or all of that better price back to the client, resulting in an execution price more favorable to the client than the price the client had specified.

14. Improved client executions of this kind did not involve any change to the price displayed on OTC Link with respect to the client's order. It occurred only in connection with the execution of the order and reflected G1X's ability to access better-priced trading interest available in the market at the time.

15. In addition, G1X may display a quote representing only a portion of a block-sized non-marketable order, consistent with FINRA Rule 6460.

16. G1X trades for its own account in connection with its market making activity.

17. During the relevant period, G1X bought or sold NWBO shares for its own account in connection with processing client orders or manually managing inventory risk.

18. The steps described above by which G1X processed, routed, and executed client orders in NWBO — filling orders as principal, posting or updating quotations on OTC Link, and "linking" to other market participants' quotations — included automation by G1X's systems, but each such step could also be performed manually by an individual trader. There was no algorithmic trading involved in any of these steps.

19. Examples of automation utilized by G1X's systems include order routing, crossing of matching orders, internalization in response to external triggers (e.g., upon receipt of client orders), responding to inbound links, updating quotations, and limit order protection pursuant to FINRA Rule 5320.

20. G1X's automated systems for processing NWBO orders did not independently determine when, at what price, or in what manner to trade based on an assessment of market conditions.

21. The systems G1X used to process NWBO orders were not unique or specific to NWBO; they were the same systems G1X used to process orders in other OTC-traded securities on OTC Link.

22. In sum, G1X did not engage in any algorithmic trading of NWBO stock during the Relevant Period. Except for trading conducted in connection with G1X's market making obligations, G1X's NWBO trading was conducted on behalf of clients using the order-processing and price improvement practices described above, which involved automation but not algorithmic trading.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 9, 2026

____________________________
Brian Rorke
Chief Compliance Officer
G1 Execution Services LLC