Hon. Gary Stein
United States District Court, Southern District of New York

September 9, 2026

Re: *Northwest Biotherapeutics, Inc. v. Citadel Securities LLC, et al.*, No. 1:22-cv-10185—Defendants' Letter Regarding Documents Confirming the Statements in Defendants' Declarations

Dear Judge Stein:

We write on behalf of all Defendants pursuant to the Court's August 27, 2026 Order (ECF 326) concerning the documents Defendants have produced, or are willing to produce, to confirm the statements made in Defendants' declarations.

As set forth in the declarations, no Defendant used algorithms to trade NWBO stock. With respect to the trading at issue, the declarations confirm that it was overwhelmingly on behalf of clients, explain how it was conducted, and confirm that no algorithm or source code of any Defendant altered the timing, price, quantity, side, or other substantive terms of client orders that were displayed in the market. The declarations further explain that the limited trading that was not on behalf of clients was directed by individual employees and confirm that this trading also did not use algorithms.

Contrary to NWBO's statements at the hearing, *see* ECF 327 at 28:12-16, the client-trading nature of the NWBO orders is not a new characterization. Defendants raised it repeatedly, and have explained that "Defendants are market makers and broker-dealers that frequently trade on behalf of clients" and that "it is the clients that set the terms of those orders," ECF 86 at 16, 24; *see also* ECF 115 at 14, 21-23; ECF 124 at 13-15; ECF 156 at 5. The trading data Defendants produced to NWBO months ago confirm that the trading is overwhelmingly on behalf of clients rather than on behalf of Defendants' own proprietary accounts.

Defendants' confirmatory productions or planned productions are set forth on a per-Defendant basis in further detail below. With respect to algorithms, firms do not typically create records regarding the tools they have not deployed for a given security, and the absence of records concerning the use of algorithms to trade NWBO further corroborates that Defendants did not use algorithms to trade NWBO stock. Defendants remain willing to address any residual questions through the depositions contemplated by the Court's order, targeted interrogatories, or stipulations.

***Citadel Securities LLC***

Citadel Securities filed the Supplemental Declaration of Dan Yara, Citadel Securities' Head of Client Trading Operations, who is responsible for overseeing the electronic trading systems through which Citadel Securities receives, routes, and executes orders (the "Supplemental Yara Declaration"). The Supplemental Yara Declaration states that Citadel Securities did not use algorithms to trade NWBO and that over 95% of the trading was on behalf of clients rather than Citadel Securities' proprietary trading. *See* Supp. Yara Decl. ¶¶ 5, 8, 34, 41. As Mr. Yara explains, although Citadel Securities uses algorithms to trade certain other, non-OTC securities, it did not use any algorithms for trading in NWBO.

Confirming Mr. Yara's statements, Citadel Securities so stated in its sworn responses to NWBO's first set of interrogatories, served November 5, 2025. *See* ECF 324-2 at 17, 27. Citadel

Securities has also produced internal order-level trading data identifying whether the order was a client or proprietary order, together with the order's complete lifecycle from placement to disposition, as well as trading data from FINRA and OTC Link. Citadel Securities' internal trading data—produced in April 2026—shows that over 95% of Citadel Securities' trading in NWBO during the alleged spoofing episodes at issue in this litigation was on behalf of clients; the limited remainder was conducted by Citadel Securities' individual traders.

Citadel Securities searched for and produced documents concerning Citadel Securities' compliance programs, policies, and practices pertaining to spoofing of NWBO shares. It also searched for communications related to algorithms or code used to trade NWBO stock, and located no such communications. Citadel Securities also searched for documents describing how it traded securities on OTC Link. Citadel Securities does not, in the ordinary course, create documents detailing how its OTC trading occurs. Trading on OTC Link represents only a small part of Citadel Securities' broader equities business, which is conducted primarily on exchanges such as Nasdaq and the NYSE. Given the limited role of OTC Link trading within its broader equities business, Citadel Securities located no documentation describing how it trades securities on OTC Link.

***G1 Execution Services LLC***

G1 Execution Services LLC ("G1X") filed the Declaration of Brian Rorke ("Rorke Declaration"). Brian Rorke is Chief Compliance Officer at G1X, and is responsible for implementing and maintaining G1X's compliance program. The Rorke Declaration states that G1X did not use algorithms to trade NWBO. *See* Rorke Decl. ¶¶ 4, 22.

G1X also stated in its sworn response to NWBO's first set of interrogatories, served on November 5, 2025, that it did not use algorithms to trade NWBO stock, which supports the Rorke Declaration. *See* ECF 324-2 at 44-45. G1X produced available documents from OTC Link of orders and trades in NWBO shares for the specified days of alleged G1X spoofing episodes that remain in the case. G1X also produced all available internal order and execution data showing that all but one of the trades were client orders. As explained in the Rorke Declaration, even the one trade that was not a client order did not involve the use of algorithms.

G1X searched for and produced documents concerning G1X's compliance programs, policies, and practices pertaining to spoofing of NWBO shares. It also searched for communications related to algorithms used to trade NWBO stock, and located no such communications.

***GTS Securities LLC***

GTS Securities LLC ("GTS") filed the Declaration of Joe Pleffner, the Head of Wholesale Market Making and a Principal at GTS, who is responsible for overseeing the trading desk and traders who facilitate GTS' Wholesale Market Making line of business, which provides liquidity in over-the-counter securities like NWBO. In his Declaration, Mr. Pleffner states that GTS did not use algorithms to trade NWBO.

Confirming Mr. Pleffner's statements that GTS did not use algorithms to trade NWBO, GTS so stated in its sworn responses to NWBO's first set of interrogatories, served November 5, 2025. *See* ECF 324-2 at 56, 66-68. Further, GTS has produced internal compliance materials that draw a distinction between "algorithms" and "order handling systems." Those compliance materials also note that GTS' Wholesale Market Making team may provide automated or manual

order execution in OTC securities like NWBO. Additionally, GTS searched for communications related to algorithms or code used to trade NWBO stock, and located no such communications.

GTS also produced internal trade execution data showing that the vast majority of GTS' purchases in NWBO on the dates of purported "Executing Purchases" that were effected during the "Baiting Periods," involved trades effected to facilitate the execution of client orders. Those data include columns denoting related client information.

***Instinet LLC***

Instinet LLC ("Instinet") filed the Declaration of Mark Francini (the "Francini Decl."), Instinet's Co-Head of Sales and Trading Supervision, who is responsible for supervising the review of trading activity effected through Instinet. The Francini Decl. states that "Instinet did not engage in any proprietary trading of NWBO during the Relevant Period using any algorithm;" "No Instinet algorithm was used in the Remaining Instinet Alleged Spoofs. Any source code of Instinet which was used did not alter or affect the timing, price, volume, or any other characteristic of the client's orders in the Remaining Instinet Alleged Spoofs." *Id.* at ¶¶ 4-5.

Confirming Mr. Francini's statements, Instinet so stated in its sworn responses to NWBO's first set of interrogatories, served November 5, 2025. *See* ECF 324-2 at 74, 88-92. Instinet has also produced internal trading data identifying whether the order used any algorithm or was simply routed as a client directed order (which was reflected by a "G-" in the "route" data field).

Instinet searched for communications related to any algorithms used to trade NWBO stock and located no such communications.

***Lime Trading Corp.***

As stated in the Declaration of Lime Trading's Chief Technology Officer, Sergey Bolberov ("Bolberov Declaration"), Lime Trading is an agency-only broker and has never traded NWBO securities for its own account, much less used any algorithms to do so. Lime Trading also does not offer algorithms for trading over-the-counter securities, including NWBO.

The statements in the Bolberov Declaration are supported by Lime Trading's response to NWBO's first set of interrogatories which states that Lime Trading did not use algorithms to trade NWBO. *See* ECF 324-2 at 109-110. Lime Trading also searched for and produced documents pertaining to compliance as well as Lime Trading's policies and procedures, including Lime Trading's Compliance and Written Supervisory Policies and Procedures Manual (LIME_0000000007), which further support the statements made in the Bolberov Declaration pertaining to Lime Trading's role as an agency-only firm that provides DMA access to its clients. *See, e.g.*, LIME_0000000136 ("As a 'broker/agent' (executing orders on an 'agency' basis for customers on an exchange or in the OTC market), the Firm is compensated via commissions on customer trades."); LIME_0000000181 ("SPC [Score Priority Corp. d/b/a Lime Trading] is an agency only broker dealer that provides its customers with technology and access to the markets"); LIME_0000000182 ("SPC is an agency only brokerage firm that provides connectivity for others (our clients) to the markets under our exchange membership"). The internal order-level trading data produced by Lime Trading (LIME_0000000190) also reflects that all of Lime Trading's activity in NWBO during the alleged spoofing episodes at issue in this litigation was made by Lime Trading's clients, not Lime Trading, and that none of these trades were routed using a Lime Trading algorithm. *See, e.g.*, columns AB and AC reflecting empty "Algo Parent ID" and

"Algo Strategy" fields. Finally, Lime Trading conducted a search for documents pertaining to algorithms or code used to trade NWBO stock—including by running search strings proposed by Plaintiff containing words like "algorithm*," "high frequency," "HFT," and "Sungard," which located no responsive, non-privileged documents.

***Virtu Americas LLC***

Virtu filed the Declaration of Robert Verderese, the head of cash trading at Virtu who oversees a team of more than a dozen traders, including eight traders who specifically trade in over-the-counter securities. Mr. Verderese confirms Virtu did not engage in any proprietary algorithmic trading of NWBO during the relevant time period, and that Virtu did not use any algorithm or source code that altered or affected the timing, price, volume, or any other characteristic of Virtu's client orders in NWBO.

Consistent with the statements in the Declaration of Robert Verderese, Virtu's sworn responses to NWBO's first set of interrogatories, which it served on November 5, 2025, stated that "it did not use any automated trading strategy or Algorithm to trade NWBO during the Relevant Period." *See* ECF 324-2 at 122-123, 132-133. Virtu has also produced internal order-level trading data identifying whether the order was a client or proprietary order, as well as trading data from OTC Link. Virtu's internal trading data—produced in April 2026—shows that most of Virtu's trading in NWBO during the alleged spoofing episodes at issue in this litigation was on behalf of clients.

Virtu searched for documents and communications concerning its trading of OTC securities generally, as well as NWBO stock in particular, and produced responsive custodial emails as well as non-custodial compliance- and training-related materials as well as NWBO-specific order and trade data. Virtu also conducted targeted searches for documents and information concerning any automated trading strategy or algorithm allegedly used by Virtu to trade NWBO stock during the relevant period, including by performing a NWBO-related keyword search through the source code underlying the order routing and management system that Virtu uses for OTC securities, and located no such documents. Virtu is also going to produce its Order Handling and Execution Protocol, which provides a comprehensive description of how Virtu conducts trading in both OTC and NMS securities, including the automation that Virtu utilizes to facilitate routing and handling client orders.

Respectfully submitted,

/s/ *William A. Burck*
William A. Burck
Peter H. Fountain
Leigha Empson
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, New York 10016
Tel: 212-849-7000
Fax: 212-849-7100
williamburck@quinnemanuel.com
peterfountain@quinnemanuel.com
leighaempson@quinnemanuel.com

Jonathan K. Youngwood
Meredith Karp
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
jyoungwood@stblaw.com
meredith.karp@stblaw.com

*Counsel for Defendant Citadel Securities LLC*

/s/ *Lauren W. Engelmyer* (with permission)
Lauren W. Engelmyer
J. Chesley Burruss
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
T: (212) 223-0200
engelmyerl@ballardspahr.com
burrussc@ballardspahr.com

M. Norman Goldberger (admitted *pro hac vice*)
Ballard Spahr LLP
1735 Market Street, 51st Fl.
Philadelphia, PA 19103
T: 215-665-8500
goldbergerm@ballardspahr.com

*Counsel for Defendant G1 Execution Services LLC*

/s/ *Peter G. Wilson* (with permission)
Peter G. Wilson
Christian T. Kemnitz (admitted *pro hac vice*)
Benjamin C. Levine (admitted *pro hac vice*)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
peter.wilson@katten.com
christian.kemnitz@katten.com
benjamin.levine@katten.com

*Counsel for Defendant GTS Securities LLC*

/s/ *Richard A. Edlin* (with permission)
Richard A. Edlin
Daniel P. Filor
Stephen Day
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
edlinr@gtlaw.com
filord@gtlaw.com
days@gtlaw.com

*Counsel for Defendant Instinet LLC*

/s/ *Kevin P. Broughel* (with permission)
Kevin P. Broughel
Zoe Lo
Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Phone: (212) 940-6343
Fax: (212) 940-8776
kevin.broughel@katten.com
zoe.lo@katten.com

*Counsel for Defendant Lime Trading Corp.*

/s/ *Andrew G. Gordon* (with permission)
Andrew G. Gordon
Audra J. Soloway
Jessica S. Carey
Alison R. Benedon
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
agordon@paulweiss.com
asoloway@paulweiss.com
jcarey@paulweiss.com
abenedon@paulweiss.com

*Counsel for Defendant Virtu Americas LLC*

cc: All counsel of record via ECF